1

2

**FILED**
CLERK, U.S. DISTRICT COURT

**SEP 26 2024**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ rsm _____ **DEPUTY**

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10               October 2023 Grand Jury

11 | UNITED STATES OF AMERICA,          C**2:24-CR-00570-WLH**

12 |          Plaintiff,          I N D I C T M E N T

13 |          v.          [18 U.S.C. § 1962(d): Racketeer
                              Influenced and Corrupt
14 | CLAIRE PATRICIA HAVILAND,          Organizations Conspiracy; 21
        aka "Trish,"                    U.S.C. § 846: Conspiracy to
15 |    aka "SFV Mama,"                 Distribute and to Possess with
      BRIAN GLENN EKELUND,             Intent to Distribute Controlled
16 |    aka "Rascal,"                   Substances; 18 U.S.C. § 1349:
      JOHN MICHAEL REED,               Conspiracy To Commit Bank Fraud;
17 |    aka "Johnny Boi SFV,"           18 U.S.C. § 1344: Bank Fraud; 18
      KENNETH CRISWELL,                 U.S.C. § 1028A: Aggravated
18 |    aka "Spinner,"                   Identity Theft; 21 U.S.C.
      STEVEN MICHAEL SILVERBERG,        §§ 841(a)(1), (b)(1)(A),
19 |    aka "Meat SFV,"                  (b)(1)(B), (b)(1)(C), (b)(2):
      DONALD EVERETT CUNNINGHAM,        Possession with Intent to
20 |    aka "DJ,"                        Distribute and Distribution of
        aka "Monster,"                  Controlled Substances; 18 U.S.C.
21 | CORY DANIEL SIMS,                   § 922(g)(1): Felon in Possession
        aka "Sicko SFV,"                of a Firearm and Ammunition; 18
22 | BRIANNE BREWER,                     U.S.C. § 924(c)(1)(A): Possess a
        aka "Bri,"                       Firearm in Furtherance of a Drug
23 |    aka "Brianne Brewer Gill,"       Trafficking Crime; 18 U.S.C.
      ZACHARY S. WINTERS,               § 1029(a)(3): Possession of
24 |    aka "Boogie SFV,"                Fifteen or More Unauthorized
      COLIN NICHOLAS SLACK,             Access Devices; 18 U.S.C. § 2(a):
25 |    aka "Shorty SFV,"               Aiding and Abetting; 18 U.S.C.
      ROBERT M. SLAYTON,               §§ 924(d)(1), 981(a)(1)(C),
26 |    aka "Bezerker,"                  982(a)(2)(A), 1963(a)(3), 21
      MICHAEL VITANZA,
27 |    aka "Suspect,"
      PAUL JOHN PICHIE,
28 |    aka "Sinister,"

|    |                                           |                                             |
|----|-------------------------------------------|---------------------------------------------|
| 1  | ERIC STEVE SCHULTZ,                        | U.S.C. §§ 853, 881(a)(6) and (11),          |
|    | GUY MANNING WILLS,                         | & 28 U.S.C. § 2461(c): Forfeiture]          |
| 2  |    aka "FedEx,"             |                                             |
|    | CHARISSA MARIE CHOTARD,                    |                                             |
| 3  |    aka "Brat,"             |                                             |
|    | JULIE ANN ROMERO,                          |                                             |
| 4  | CYNTHIA VAN VLYMEN,                        |                                             |
|    |    aka "Siren,"            |                                             |
| 5  | PAUL ERIC ATKINSON,                        |                                             |
|    |    aka "Pork Chop,"        |                                             |
| 6  | ERNEST HILL,                               |                                             |
|    |    aka "Badger,"           |                                             |
| 7  | PAGET GARY EKELUND,                        |                                             |
|    | SCOTT JOSHUA VENNUM,                       |                                             |
| 8  | MICHAEL ANTHONY CHATTERTON,                |                                             |
|    |    aka "Reckless,"         |                                             |
| 9  | CODY JENE SMITH,                           |                                             |
|    |    aka "Codie Smith Gigliello," |                                        |
| 10 |    aka "Shifty,"          |                                             |
|    | CHRISTOPHER CRAIG,                         |                                             |
| 11 | GABRIELA IBARRA,                           |                                             |
|    |    aka "Gabby,"           |                                             |
| 12 | ASHLEE NICOLE SWINK,                       |                                             |
|    | KEVIN D. FRANCIS,                          |                                             |
| 13 | RICHARD KEVIN RILEY,                       |                                             |
|    | KENNETH DANIEL PAYER,                      |                                             |
| 14 |    aka "Tower,"           |                                             |
|    |    aka "Sugg White,"      |                                             |
| 15 | KENNETH RICHARD MACDONALD,                 |                                             |
|    |    aka "Misfit SFV,"      |                                             |
| 16 |    aka "Kenny Mac,"       |                                             |
|    | ADAM L. RODNEY,                            |                                             |
| 17 | WILLIAM SCOTT POLLAY,                      |                                             |
|    | CHRISTOPHER PATRICK POLLAY,                |                                             |
| 18 | DANIEL YACOUB,                             |                                             |
|    |    aka "Danny Boy,"       |                                             |
| 19 | TARA JANE BECKWITH,                        |                                             |
|    | JULIO ABNER GAITHER,                       |                                             |
| 20 |    aka "Indio,"           |                                             |
|    | SIMON R. FREEMAN,                          |                                             |
| 21 |    aka "Grumpy,"          |                                             |
|    | MICHAEL ANDREW MORENO,                     |                                             |
| 22 | EARL EDDSON WATTS,                         |                                             |
|    | ELMER ROLANDO VILLATORO,                   |                                             |
| 23 |    aka "Wacky,"           |                                             |
|    | ALBERT ETHAN EKLUND,                       |                                             |
| 24 | KEVIN DANIEL MULVIHILL,                    |                                             |
|    |    aka "Mo,"              |                                             |
| 25 | CIARA JACOBS,                              |                                             |
|    |    aka "Simba Jay,"       |                                             |
| 26 | CURTIS WATSTEIN,                           |                                             |
|    |    aka "Stretch,"         |                                             |
| 27 | ROBERT ANTHONY BAKER,                      |                                             |
|    | RYAN SCOTT HARBAND,                        |                                             |
| 28 | NISHANT RAMACHANDRAN,                      |                                             |

```
CHASE AUSTIN FLACK,
TAYLOR C. BINGAMAN,
    aka "Scummy,"
    aka "Scumfuck,"
JAMES ALLEN THAEMERT,
    aka "JT,"
    aka "Big Foot,"
DAVID MITCHELL SHAPIRO,
SEAN CRAIG GLUCKMAN,
JEREMY RUSSEL SCHWARTZ,
    aka "Ironman,"
JUSTIN DANIEL DIETZEN,
CHRISTOPHER MARK PREVEDELLO,
    aka "Mouse,"
    aka "Evil,"
MASON EDWARD HEINTZ,
CYNTHIA MARIE MUNOZ,
    aka "Thumper,"
HENISI UTSLER,
    aka "Henisi Montoya,"
REBEKA ANNA BENEDICT,
    aka "Lazy Egg,"
MEGAN MEJIA,
WALTER HUBERT LEIMERT,
    aka "Creepz,"
AMANDA JOY RAVIN,
TANYA NURRIA RESNICK,
MARIA ANNA JAMES,
    aka "Maria Daizy,"
MATT THOMAS POWERS,
    aka "Oso,"
CODY SEAN CHAN, and
JOI UNGAMRUNG,

         Defendants.
```

The Grand Jury charges:

## COUNT ONE

### [18 U.S.C. § 1962(d)]

**A.    THE ENTERPRISE**

1.    At all relevant times, defendants CLAIRE PATRICIA HAVILAND, aka "Trish," aka "SFV Mama" ("HAVILAND"), BRIAN GLENN EKELUND, aka "Rascal" ("B. EKELUND"), JOHN MICHAEL REED, aka "Johnny Boi SFV" ("REED"), ROBERT M. SLAYTON, aka "Bezerker" ("SLAYTON"), KENNETH CRISWELL, aka "Spinner" ("CRISWELL"), STEVEN MICHAEL SILVERBERG, aka

"Meat SFV" ("SILVERBERG"), DONALD EVERETT CUNNINGHAM, aka "DJ," aka "Monster" ("CUNNINGHAM"), CORY DANIEL SIMS, aka "Sicko SFV" ("SIMS"), BRIANNE BREWER, aka "Bri," "Brianne Brewer Gill," ("BREWER"), ZACHARY S. WINTERS, aka "Boogie" ("WINTERS"), COLIN NICHOLAS SLACK, aka "Shorty SFV" ("SLACK"), and unindicted co-conspirator #3, unindicted co-conspirator #9, unindicted co-conspirator #12, unindicted  co-conspirator #23, unindicted co-conspirator #31, unindicted co-conspirator #39, unindicted co-conspirator #41, unindicted co-conspirator #42, unindicted co-conspirator #43, unindicted co-conspirator #44, unindicted co-conspirator #45, unindicted co-conspirator #46, unindicted co-conspirator #48, and others known and unknown to the Grand Jury, were members and associates of the San Fernando Valley Peckerwoods ("SFV"), a criminal organization engaged in, among other things, conspiracy to traffic in narcotics, narcotics trafficking, wire fraud, financial institution fraud, and fraud and related activity in connection with identification documents and access devices.  The SFV criminal organization operated in the Central District of California and elsewhere.

    2.    The SFV, including its leaders, members, and associates, constituted an enterprise as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce (hereinafter referred to as the "SFV enterprise," "SFV criminal enterprise," "SFV," or the "SFV Peckerwoods").  The SFV enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

1    **B.**     <u>**GENERAL DEFINITIONS**</u>

2         1.     The **San Fernando Valley**, known locally as "the Valley," is

3    an urbanized valley in Los Angeles County, California. It is situated

4    to the north of the Los Angeles Basin and contains a large portion of

5    the city of Los Angeles, several unincorporated areas, and the

6    incorporated cities of Burbank, Calabasas, Glendale, Hidden Hills, and

7    San Fernando. Neighborhoods within the San Fernando Valley include

8    Canoga Park, Granada Hills, North Hollywood, Northridge, Pacoima,

9    Reseda, Sherman Oaks, Studio City, Sun Valley, Toluca Lake, Valley

10   Village, Van Nuys, and Woodland Hills. Notable streets within the San

11   Fernando Valley include Ventura Boulevard, Laurel Canyon Boulevard,

12   Coldwater Canyon Boulevard, Mulholland Drive, and Riverside Drive.

13        2.     **Signal** is an encrypted messaging service for instant

14   messaging, voice calls, and video calls. The instant messaging

15   function includes sending text, voice notes, images, videos, and other

16   files. Communication may be one-to-one between users or may involve

17   group messaging.

18        3.     **Telegram Messenger**, commonly known as **Telegram**, is a cloud-

19   based, cross-platform, encrypted instant messaging service. It allows

20   users to exchange messages, share media and files, and hold private

21   and group voice or video calls as well as public livestreams.

22   Telegram also offers end-to-end encryption in voice and video calls,

23   and in optional private chats, which Telegram calls Secret Chats.

24        4.     **Facebook Messenger** is an American proprietary instant

25   messaging app and platform developed by Meta Platforms. Messenger is

26   used to send messages and exchange photos, videos, stickers, audio,

27   and files, and to react to other users' messages and interact with

28   bots. The service also supports voice and video calling.

5.    **Cash App** is a mobile payment service available in the United States and the United Kingdom that allows users to transfer money to one another using a mobile phone app.

6.    **Zelle** is a United States-based digital payments network that enables individuals to electronically transfer money from their bank accounts to another registered user's bank account using a mobile device or the website of a participating banking institution.

7.    The **California Department of Corrections and Rehabilitation** or ("**CDCR**") manages the State of California's prison system.  Each incarcerated inmate is assigned to a CDCR facility with a security level that corresponds to their calculated placement score range. Placement scores are determined by the incarcerated person's age, crime committed and if violence was used, prior incarcerations, and gang involvement.  The highest placement range is a Level IV.  Level IV CDCR facilities have a secure perimeter with internal and external armed coverage and housing units or cell block housing with cells non-adjacent to exterior walls.

8.    The **Federal Bureau of Prisons** or ("**BOP**") manages federal prisons for individuals incarcerated in connection with violations of federal criminal law.

9.    Inmates in BOP and CDCR custodial facilities are not permitted to have cellular telephones.  A **contraband cellular telephone** is a cellular telephone that an inmate has unauthorized access to while in a BOP or CDCR custodial facility.

10.    A **happy card** is a greeting card that is saturated in a controlled substance, including methamphetamine, heroin, or fentanyl, and sent to an inmate who is incarcerated in a CDCR or BOP facility. The card will resemble a normal greeting card, however, inmates are

able to ingest the drugs in custody by chewing on small pieces of the card.  The recipient of the **happy card** may also generate money while in custody by selling portions of the card to other inmates.

11.    "**Taxes**" are a portion of profits generated by criminal activity, including drug distribution activity, that must be paid to a criminal organization in exchange for the ability to engage in crime in the "**territory**" overseen by that criminal organization.

12.    The SFV criminal enterprise is a white criminal street gang primarily located in the San Fernando Valley, and is alternatively known as the San Fernando Valley Peckerwoods, "SFV," and/or "SFV Peckerwoods."  Peckerwoods also have factions in cities and communities such as Chatsworth, Granada Hills, Canoga Park, Tujunga, North Hollywood, Burbank, Reseda, and Tarzana.

13.    The name "Peckerwoods" was originally a derogatory term for white people developed in the prison system that has since been adopted by white supremacist groups themselves.  Presently, a Peckerwood, or "Wood," is what a white inmate is known as in prison. Peckerwoods take pride in being a "Wood," and no longer consider the term to be derogatory.

14.    Peckerwoods use the symbol of a woodpecker to represent their Peckerwood status, as depicted below:



1      15.   Unindicted co-conspirator #3 is one of the founding members

2 of SFV.  He is presently housed in federal custody at FCI Florence.

3      16.   SFV members often refer to the SFV as the "Family" or the

4 "Car" and refer to fellow SFV members as "Brothers."  The leaders of

5 the SFV criminal enterprise are referred to as the "Key Holders" or

6 having "the keys to the car."  These leaders have ultimate authority

7 in all SFV matters.

8      17.   Female Peckerwoods are known as "Featherwoods."  The most

9 common symbol for Featherwoods is simply the word "Featherwood," or an

10 image of a feather.  Female Peckerwoods refer to themselves as

11 "Featherwoods" in Internet messages and memes, such as the image

12 depicted below:



18.   The letters SFV are the most popular tattoo by SFV Peckerwoods, as well as the 818-area code.  The name variation Peckerwood Gangsters ("PWG") is often attached or identified with in relation to SFV Peckerwoods.  In addition to "SFV" referring to the geographic location of the "San Fernando Valley," SFV members also use the letters to refer to the acronym of "Searching for Victims."  SFV members often demonstrate their membership in SFV through tattoos such as those depicted below:






1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21



22     19.   The Peckerwoods support white nationalist ideas and use

23 symbols like the swastika and "88," the white supremacist numerical

24 code for "Heil Hitler."  SFV members often demonstrate their support

25 for SFV's ideology through tattoos, clothing, and other items

26
27
28

1  bearing the swastika, such as in the pictures below:

  





20.  SFV members engage in a wide variety of criminal activity, including drug trafficking, crimes of violence, and fraud.  In 2016, the Los Angeles City Attorney's Office filed nuisance abatement orders against SFV members and associates and identified properties in Granada Hills and Canoga Park as havens for SFV criminal activity. According to those filings, Los Angeles police officers recovered stolen vehicles and credit cards, heroin, and methamphetamine on multiple occasions at the Granada Hills home of defendant REED, an SFV member.  Photographs from inside one of the residences that was the subject of the filings showed swastikas and Confederate flags adorning the walls, as well as an SFV symbol, as depicted below:

21.   In the past decade, Facebook has become one of the most common methods that SFV members use to communicate regarding their shared criminal activities.  Most defendants and unindicted co-conspirators identified in this Indictment have one or more personal Facebook profiles and have used Facebook Messenger to engage in drug trafficking, fraud, and witness intimidation, and/or to plot details of future criminal activity with other co-conspirators.

22.   Additionally, SFV members and associates established a private Facebook group on January 6, 2013 (the "SFV Facebook Page"). The SFV Facebook Page has remained active since that time.  Members of this private Facebook group use the SFV Facebook Page to:

a.   Affirm with others their active SFV membership, including by sharing their SFV monikers and pictures of their SFV tattoos.

b.   Update each other regarding law enforcement activities, including by sharing photographs of suspected undercover law enforcement officers that may be investigating SFV members or engaged in enforcement activity in the San Fernando Valley.

c.   Identify for each other individuals who are potentially cooperating with law enforcement to discuss whether violent retaliation is appropriate.

d.   Provide updates to each other regarding the status of members and associates of SFV and other criminal organizations who maintain positions of authority in and around the San Fernando Valley.

23.   As a white supremacist gang, the SFV at times takes orders from the Aryan Brotherhood ("AB" or "the Brand") – the dominant white supremacist gang in California.  The SFV also pays a proceed of their

13

drug trafficking to the AB.  Payments of such "taxes" to the AB confers protection from rival gang attacks and allows the SFV to continue drug dealing and other criminal activity within AB-controlled territory.

24.   The AB has an "*alliance*" with the Mexican Mafia.  The **Mexican Mafia**, also known as "**La Eme,**" is another prison-based criminal organization comprised mostly of senior members of southern California Hispanic street gangs who have come together to control and profit from the activities of Hispanic gangs operating in southern California.  **Canoga Park Alabama Street** ("Canoga Park") is a predominately Hispanic street gang operating in the west San Fernando Valley in the City of Los Angeles.  It is a gang that answers to the Mexican Mafia.

25.   Because of the alliance that the AB has with the Mexican Mafia, some AB members have the authority to tell Mexican Mafia members and members of Hispanic street gangs, such as Canoga Park, that members of white criminal street gangs, including the SFV criminal enterprise, are not to be "*taxed*" by members and associates of the Mexican Mafia.

**C.    PURPOSES OF THE ENTERPRISE**

1.   The purposes of the SFV enterprise included, but were not limited to, the following:

      a.   Enriching members and associates of the SFV through, among other things, the control of, and participation in, the trafficking of controlled substances, and the commission of financial frauds.

      b.   Maintaining control over all SFV territory.

1          c.    Preserving, protecting, and expanding the power of SFV

2    through the use of intimidation, violence, and threats of violence.

3          d.    Violently retaliating against rival gang members or

4    perceived outsiders who challenge the SFV's authority or attempt to

5    encroach on the SFV's territory.

6    **D.    MEANS AND METHODS OF THE ENTERPRISE**

7          1.    The means and methods by which members and associates of

8    the SFV conducted and participated in the conduct of the affairs of

9    the SFV included the following:

10          a.    Members and associates of the SFV committed, attempted

11    to commit, conspired to commit, and threatened to commit acts of

12    violence to preserve, protect, and expand the SFV's criminal

13    operations.

14          b.    Members and associates of the SFV promoted a climate

15    of fear through acts of violence and threats to commit acts of

16    violence.

17          c.    Members and associates of the SFV engaged in the

18    trafficking of controlled substances, committed robberies, and

19    committed financial fraud and identity theft schemes to generate

20    revenue for the enterprise.

21          d.    Members and associates of the SFV communicated using

22    social media to share information about, among other things,

23    trafficking in controlled substances, committing fraud, rules of the

24    SFV, identifying SFV members in good standing, and targeting people

25    who broke SFV rules.  Such social media use included both an SFV-

26    members-only Facebook group and private, direct messages between SFV

27    members and associates.

28

1            e.    Members and associates of the SFV illegally maintained

2    firearms and ammunition.

3       2.    Beginning on a date unknown to the Grand Jury, and

4    continuing to in or around September 2024, in Los Angeles, Ventura,

5    and Riverside Counties, within the Central District of California, and

6    elsewhere, defendants HAVILAND, B. EKELUND, REED, SLAYTON, CRISWELL,

7    SILVERBERG, CUNNINGHAM, SIMS, BREWER, WINTERS, and SLACK, and others

8    known and unknown to the Grand Jury, being persons employed by and

9    associated with the SFV, an enterprise which engaged in, and the

10   activities of which affected, interstate and foreign commerce,

11   unlawfully and knowingly combined, conspired, confederated, and agreed

12   together and with each other to violate Title 18, United States Code,

13   Section 1962(c), that is, to conduct and participate, directly and

14   indirectly, in the conduct of the affairs of the enterprise through a

15   pattern of racketeering activity, as that term is defined in Title 18,

16   United States Code, Sections 1961(1) and 1961(5), which pattern of

17   racketeering consisted of the following:

18           a.    Multiple offenses involving the distribution of,

19   possession with intent to distribute, and conspiracy to distribute

20   and possess with intent to distribute controlled substances, in

21   violation of Title 21, United States Code, Sections 841, and 846;

22           b.    Multiple acts indictable under Title 18, United Staes

23   Code, Sections 1343 (related to wire fraud) and 1344 (relating to

24   financial institution fraud); and

25           c.    Multiple acts indictable under Title 18, United States

26   Code, Sections 1028 (relating to fraud and related activity in

27   connection with identification documents) and 1029 (relating to fraud

28   and related activity in connection with access devices).

It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

**E.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED**

The object of the conspiracy was to be accomplished, in substance, as follows:

1.     Defendants CUNNINGHAM and WINTERS, and others known and unknown to the Grand Jury, would maintain firearms and other dangerous weapons to be used in connection with the SFV criminal enterprise and its operations, including in connection with drug distribution activities.

2.     Defendants HAVILAND, BREWER, B. EKELUND, and others known and unknown to the Grand Jury, would maintain and oversee drug stash locations, including drug stash locations overseen by unindicted co-conspirator #1 while co-conspirator #1 was in CDCR custody, where large quantities of fentanyl, methamphetamine, heroin, and other drugs were stored prior to distribution to drug customers in and around the Central District of California.

3.     Defendants HAVILAND, BREWER, B. EKELUND, WINTERS, and others known and unknown to the Grand Jury, including unindicted co-conspirator #40, unindicted co-conspirator #43, unindicted co-conspirator #44, and unindicted co-conspirator #48, would obtain drugs to distribute from drug sources of supply, some of which would be distributed by SFV members.

4.     Defendants HAVILAND, BREWER, B. EKELUND, WINTERS, and others known and unknown to the Grand Jury, including unindicted co-conspirator #40, unindicted co-conspirator #43, unindicted co-

1  conspirator #44, and unindicted co-conspirator #48, would distribute

2  drugs to drug customers.

3      5.    Defendants HAVILAND, B. EKELUND, and others known and

4  unknown to the Grand Jury, would distribute drugs to customers outside

5  of the state of California via the mail.

6      6.    Defendant BREWER, and others known and unknown to the Grand

7  Jury, would transport drugs to locations outside of the Central

8  District of California in order to distribute drugs to customers in

9  those districts.

10     7.    Defendants HAVILAND, B. EKELUND, and others known and

11 unknown to the Grand Jury, would facilitate their drug distribution

12 activity through the use of Cash App and Zelle by receiving money from

13 drug customers and sending money to drug sources of supply via these

14 mobile payment services.

15     8.    Senior members of the SFV criminal enterprise, including

16 defendants HAVILAND, B. EKELUND, BREWER, and SLAYTON, and others known

17 and unknown to the Grand Jury, would communicate directly with AB

18 members or high-ranking AB associates, including via contraband

19 cellular telephones that AB members or high-ranking AB associates

20 maintained in custodial facilities, to obtain their input with respect

21 to the activities of the SFV criminal enterprise, and communicate

22 their input and orders to others.

23     9.    Defendants SIMS, BREWER, and others known and unknown to

24 the Grand Jury, would carry out fraud schemes in order to generate

25 money for themselves and other members of the SFV criminal enterprise.

26     10.   Defendant HAVILAND, BREWER, and others known and unknown to

27 the Grand Jury, would share information with members and associates of

28 the SFV criminal enterprise and the AB regarding law enforcement

1 activity and individuals who might be cooperating with law
2 enforcement.

3 **F.    OVERT ACTS**

4      In furtherance of the conspiracy and to accomplish its object,
5 on or about the following dates, defendants HAVILAND, BREWER, B.
6 EKELUND, REED, SLAYTON, CRISWELL, SILVERBERG, CUNNINGHAM, SIMS,
7 WINTERS, SLACK, and others known and unknown to the Grand Jury,
8 committed various overt acts in Los Angeles, Ventura, and Riverside
9 Counties, within the Central District of California, and elsewhere,
10 including but not limited to the following:

11      Overt Act No. 1:    On December 14, 2016, defendant BREWER
12 posted the following screenshot of a news article to the SFV Facebook
13 Page along with the comment, "***Ugh oh.***"



26      Overt Act No. 2:    On December 14, 2016, in response to
27 defendant BREWER's post, unindicted co-conspirator #48 posted to the
28 SFV Facebook Page:

19

*Literally laughed out loud.  Catch me if u can motherfuckers I stay riding dirty, stay with a warrent, this is RISKY and im a proud fucking member of SFV PWG!  Cant stop me if you cant catch me.  Fuck em its only a gang if your not in it!  Its my family and I fucking laugh at this cuz we arent stopping shit and theyve got a hell of a loss coming if they think they can stop us...*

Overt Act No. 3:    On March 28, 2017, defendant BREWER posted to the SFV Facebook Page:

*Ok so I know we are all SFV and always will be no matter where we go but let's do a roll call I am curious to where everyone has ended up!!!  I am in Lancaster Ca these days but still rep SFV every chance I get.*

Overt Act No. 4:    On March 28, 2017, in response to defendant BREWER's post, defendant CRISWELL posted to the SFV Facebook Page: "*Center of the universe sfv.*"

Overt Act No. 5:    On June 4, 2017, defendant BREWER posted to the SFV Facebook Page: "*So let's see if we can get some participation where in the valley is everyone from!  If your town is not on here add it and input your poll. Love my SFV heads.*"

Overt Act No. 6:    On June 4, 2017, in response to defendant BREWER's post, unindicted co-conspirator #48 posted to the SFV Facebook Page: "*I grew up in canoga park, but my affiliation is tujunga-sunland.  Thats who loves me the most.*"

Overt Act No. 7:    On June 7, 2017, in response to defendant BREWER's post, defendant SIMS posted to the SFV Facebook Page: "*Born and raised tujunga ⚡SFV PECKER WOOD⚡⚡TUJUNGA DGAF⚡.*"

Overt Act No. 8:    On July 9, 2017, unindicted co-conspirator #30 posted to the SFV Facebook Page: "*S.F.V. COWBOY CHECKIN IN !!! HOMEBOYS SOUND THE FUCK OFF !!!!!*"

1        <u>Overt Act No. 9:</u>   On July 9, 2017, in response to unindicted

2    co-conspirator #30's post, unindicted co-conspirator #48 posted to

3    the SFV Facebook Page: "***Woods crackin brother Risky SFV PWG.***"

4        <u>Overt Act No. 10:</u>   On May 12, 2020, defendant SIMS, using coded

5    language in a Facebook message exchange, told defendant Chase Austin

6    Flack ("Flack") that he was preparing to place an order with a drug

7    source of supply.

8        <u>Overt Act No. 11:</u>   On May 25, 2020, defendant SIMS received

9    from a drug customer, using coded language in a Facebook message

10   exchange, an order for a quarter of a pound of methamphetamine.

11       <u>Overt Act No. 12:</u>   On June 16, 2020, in response to unindicted

12   co-conspirator #30's post, defendant BREWER posted to the SFV

13   Facebook Page: "***Big bad Bri right here my peeps. Hop yall have a***

14   ***bitchen ass day.***"

15       <u>Overt Act No. 13:</u>   On June 16, 2020, defendant SIMS posted to

16   the SFV Facebook Page: "***Sending mines from the rock....East side***

17   ***valley life TUJUNGA..SFV..SICKO.. SFV..PECKERWOODS...***"

18       <u>Overt Act No. 14:</u>   On June 16, 2020, unindicted co-conspirator

19   #30 posted to the SFV Facebook Page:

20   ***Brothers and sister the fact I have to say this at all is Bullshit !!***

21   ***[J.J.] is out BAD !!!! If any of you post anything in support of***
***[Black Lives Matter] like [J.J.] did , I will personally cut your***

22   ***fuckin letters off you !!!!! S.F.V.***
***COWBOY !!!***

23

24       <u>Overt Act No. 15:</u>   On June 16, 2020, in response to unindicted

25   co-conspirator #30's post, unindicted co-conspirator #48 posted to

26   the SFV Facebook Page:

27   ***I wish all the blacks and all the cops would just kill ALL of each***
***other. Our side of the dayroom only! If thats all that was left in***

28

*the world, that would be awesome.*

Overt Act No. 16:    On June 17, 2020, unindicted co-conspirator #42, using coded language in a Facebook message exchange, told defendant SLAYTON that the price for a quarter of a pound of methamphetamine had increased to $900.

Overt Act No. 17:    On June 18, 2020, defendant SLAYTON, using coded language in a Facebook message exchange, ordered a quarter of a pound of methamphetamine from unindicted co-conspirator #42.

Overt Act No. 18:    On June 18, 2020, defendant SILVERBERG posted to the SFV Facebook Page: "*S F V MEAT from cahenga to Topanga I stay Reppin, check in In!!!!!!!!*"

Overt Act No. 19:    On June 24, 2020, defendant CUNNINGHAM, using coded language in a Facebook message exchange, told defendant Amanda Joy Ravin ("Ravin") that he had high-quality heroin available to distribute and offered to provide defendant Ravin with a sample of the drugs.

Overt Act No. 20:    On June 29, 2020, defendant SILVERBERG, using coded language in a Facebook message exchange, told unindicted co-conspirator #48 that he had heroin to distribute to customers.

Overt Act No. 21:    On June 30, 2020, defendant SLAYTON, using coded language in a Facebook message exchange, told defendant Jeremy Russel Schwartz ("Schwartz") that he had methamphetamine available to distribute.

Overt Act No. 22:    On July 13, 2020, defendant SLAYTON, using coded language in a Facebook message exchange, told defendant Schwartz that he had heroin available to distribute.

1    Overt Act No. 23:   On July 21, 2020, defendant SLAYTON, using

2    coded language in a Facebook message exchange, told defendant

3    Schwartz that he had methamphetamine and heroin available to sell.

4    Overt Act No. 24:   On July 21, 2020, defendant SLAYTON, using

5    coded language in a Facebook message exchange, told defendant

6    Schwartz that he had methamphetamine and heroin available to sell.

7    Overt Act No. 25:   On August 5, 2020, defendant WINTERS

8    maintained a firearm and displayed a photograph of the firearm on

9    Facebook messenger, as depicted below.



27   Overt Act No. 26:   On August 12, 2020, unindicted co-

28   conspirator #48, using coded language in a Facebook message exchange,

asked unindicted co-conspirator #12 to identify the current leader of the SFV Hate Gang.

Overt Act No. 27:   On September 16, 2020, defendant SILVERBERG, using coded language in a Facebook message exchange, informed unindicted co-conspirator #48 that he had obtained a new firearm and sent unindicted co-conspirator #48 a photograph of the firearm, depicted below.



Overt Act No. 28:   On September 22, 2020, defendant WINTERS, using coded language in a Facebook message exchange, told defendant Cody Jene Smith ("Smith") that he had approximately one ounce of heroin available to distribute.

Overt Act No. 29:   On October 3, 2020, defendant WINTERS, using coded language in a Facebook message exchange, told a drug customer that he had access to high-quality methamphetamine to sell at a discounted rate that he obtained from "**the brotherhood.**"

1     <u>Overt Act No. 30:</u>   On October 11, 2020, defendant SLACK, using

2 coded language in a Facebook message exchange, told defendant Henisi

3 Utsler ("Utsler") that he had "***SFV blasted on [his] chest.***"

4     <u>Overt Act No. 31:</u>   On October 19, 2020, defendant SILVERBERG,

5 using coded language in a Facebook message exchange, told unindicted

6 co-conspirator #48 that he needed to obtain a quarter of a pound of

7 methamphetamine to deliver to San Diego.

8     <u>Overt Act No. 32:</u>   On November 10, 2020, defendant WINTERS,

9 using coded language in a Facebook message exchange, agreed to sell

10 defendant Smith an ounce of drugs for $600.

11     <u>Overt Act No. 33:</u>   On November 14, 2020, defendant SILVERBERG,

12 using coded language in a Facebook message exchange, told a drug

13 customer that he had high-quality heroin available to distribute.

14     <u>Overt Act No. 34:</u>   On December 11, 2020, unindicted co-

15 conspirator #48 posted the following photograph via Facebook with the

16 caption: "***Bang bang.***"



Overt Act No. 35:   On December 15, 2020, defendant SILVERBERG, using coded language in a Facebook message exchange, told defendant SLACK that he needed to deliver heroin to a drug customer.

Overt Act No. 36:   On January 10, 2021, defendant WINTERS, using coded language in a Facebook message exchange, agreed to supply half an ounce of high-quality heroin to another member of the SFV criminal enterprise.

Overt Act No. 37:   On January 14, 2021, in response to unindicted co-conspirator #48's post, unindicted co-conspirator #51 posted: "*never the matter 4 weeks 4 month 40 years iits S.F.V.*"

Overt Act No. 38:   On January 16, 2021, defendant SIMS, using coded language in a Facebook message exchange, agreed to supply methamphetamine to a drug customer.

Overt Act No. 39:   On January 17, 2021, defendant SILVERBERG, using coded language in a Facebook message exchange, ordered heroin from defendant SLACK.

Overt Act No. 40:   On January 19, 2021, defendant WINTERS, using coded language in a Facebook message exchange, agreed to supply heroin to defendant Smith.

Overt Act No. 41:   On January 30, 2021, defendant SLACK, using coded language in a Facebook message exchange, told defendant SILVERBERG that he was able to supply him with a quarter of a pound of drugs.

Overt Act No. 42:   On February 11, 2021, unindicted co-conspirator #48 sent another SFV member the following Facebook message: "*My closet door... signed by everyone...*" together with the below photograph.



Overt Act No. 43:   On February 20, 2021, defendant WINTERS, using coded language in a Facebook message exchange, agreed to supply drugs to defendant Walter Hubert Leimert ("Leimert").

Overt Act No. 44:   On March 8, 2021, unindicted co-conspirator #48, using coded language in a Facebook message exchange, told unindicted co-conspirator #49 that unindicted co-conspirator #41 wanted to purchase a firearm from unindicted co-conspirator #49.

Overt Act No. 45:   On March 8, 2021, unindicted co-conspirator #48, using coded language in a Facebook message exchange, told unindicted co-conspirator #49 that members of the SFV criminal enterprise "***have a constant need ALWAYS for firearms and you become their supplier you could blow up.***"

Overt Act No. 46:   On March 22, 2021, in Los Angeles, California, unindicted co-conspirator #43 possessed with intent to distribute approximately 397.3 grams of methamphetamine that was 100%

pure, 247 grams of a mixture or substance containing a detectable amount of heroin, and 12 grams of a mixture or substance containing a detectable amount fentanyl.

Overt Act No. 47:  On April 1, 2021, defendant SIMS, using coded language in a Facebook message exchange, sent defendant BREWER victim M.N.'s date of birth, social security number, and address so that defendant BREWER could activate a stolen credit card.

Overt Act No. 48:  On April 7, 2021, defendant WINTERS sent defendant Ashlee Nicole Swink ("Swink") $500 via Cash App and indicated that the money was on behalf of unindicted co-conspirator #2.

Overt Act No. 49:  On April 25, 2021, defendant WINTERS, using coded language in a Facebook message exchange, told a drug customer that he had fentanyl available to distribute.

Overt Act No. 50:  On May 16, 2021, unindicted co-conspirator #45, using coded language in a Facebook message exchange, agreed to supply ounces of methamphetamine to defendant SILVERBERG.

Overt Act No. 51:  On June 20, 2021, defendant SLAYTON, using coded language in a Facebook message exchange, told unindicted co-conspirator #43 that his new Cash App tag was: $SFVsFinestWhiteBoi88.

Overt Act No. 52:  On July 20, 2021, defendant CUNNINGHAM, using coded language in a Facebook message exchange, agreed to supply unindicted co-conspirator #50 with an ounce of methamphetamine at a discounted price so that unindicted co-conspirator #50 could make a profit selling the drugs to customers.

Overt Act No. 53:  On September 12, 2021, defendant WINTERS, using coded language in a Facebook message exchange, told unindicted co-conspirator #1 that he was hiding from law enforcement.

1    Overt Act No. 54:   On September 24, 2021, defendant CUNNINGHAM,

2    using coded language in a Facebook message exchange, told defendant

3    Ravin that he had heroin available to distribute.

4    Overt Act No. 55:   On September 25, 2021, defendant WINTERS,

5    using coded language in a Facebook message exchange, told defendant

6    Taylor C. Bingaman ("Bingaman") that he was able to sell him an ounce

7    of fentanyl for $1,300.

8    Overt Act No. 56:   On September 26, 2021, unindicted co-

9    conspirator #48, using coded language in a Facebook message exchange,

10   told defendant Sean Craig Gluckman ("Gluckman") that if defendant

11   Gluckman "*cr[ied] to the big homie*" and told unindicted co-

12   conspirator #6 about defendant Utsler's debt, he was "*gonna kill*

13   *[defendant Gluckman,]*" not "*beat [defendant Gluckman] up, not stab*

14   *[defendant Gluckman], like actually fucking take [defendant*

15   *Gluckman's] life.*"

16   Overt Act No. 57:   On October 2, 2021, defendant WINTERS, using

17   coded language in a Facebook message exchange, told defendant

18   Bingaman that he was able to distribute fentanyl for $900 an ounce.

19   Overt Act No. 58:   On October 22, 2021, unindicted co-

20   conspirator #48, using coded language in a Facebook message exchange,

21   told another SFV member that members of the SFV criminal enterprise

22   "*answer to the aryan brotherhood in prison,*" and that the AB "*wrote*

23   *the code.*"

24   Overt Act No. 59:   On October 22, 2021, unindicted co-

25   conspirator #48, using coded language in a Facebook message exchange,

26   told another SFV member that AB members "*can be ruthless but you*

27   *gotta appreciate that many of them are doing life behind us not*

28   *having to fight for our shoes when we hit the county.*"

1      Overt Act No. 60:    On October 22, 2021, unindicted co-
2  conspirator #48, using coded language in a Facebook message exchange,
3  told another SFV member that members of the SFV criminal enterprise
4  are "***friendly with south [siders] and we share neighborhoods with***
5  ***them but we don't answer to them.***"

6      Overt Act No. 61:    On October 28, 2021, unindicted co-
7  conspirator #48, using coded language in a Facebook message exchange,
8  told unindicted co-conspirator #49 that a member of the SFV criminal
9  enterprise wanted to purchase a firearm from unindicted co-
10  conspirator #49.

11      Overt Act No. 62:    On December 5, 2021, unindicted co-
12  conspirator #41, using Facebook Messenger, sent defendant Gluckman
13  the photograph depicted below of a new firearm that he had obtained.



26      Overt Act No. 63:    On December 21, 2021, unindicted co-
27  conspirator #48, using coded language in a Facebook message exchange,

28

told defendant SLACK that a drug customer wanted to purchase a quarter of an ounce of drugs from defendant SLACK.

Overt Act No. 64:   On January 21, 2022, unindicted co-conspirator #48, using coded language in a Facebook message exchange, told another SFV member that he didn't "*have ANY big homie except [unindicted co-conspirator #3] and members of the brand.*"

Overt Act No. 65:   On February 3, 2022, defendant SIMS, using coded language in a Facebook message exchange, ordered a quarter of a pound of methamphetamine from a drug source of supply.

Overt Act No. 66:   On February 17, 2022, defendant BREWER possessed methamphetamine to distribute, as well as credit card numbers and identification cards that belonged to other individuals.

Overt Act No. 67:   On February 22, 2022, defendant SILVERBERG, using coded language in a Facebook message exchange, told unindicted co-conspirator #48 that he had high-quality methamphetamine available to distribute at a price of $130 an ounce.

Overt Act No. 68:   On February 28, 2022, defendant BREWER, using coded language in a Facebook message exchange, agreed to supply heroin to unindicted co-conspirator #48.

Overt Act No. 69:   On March 1, 2022, defendant SILVERBERG, using coded language in a Facebook message exchange, told unindicted co-conspirator #48 that defendant Richard Kevin Riley ("Riley") was his drug source of supply.

Overt Act No. 70:   On March 9, 2022, defendant WINTERS, using coded language in a Facebook message exchange, told defendant Leimert that he was able to obtain high-quality heroin from a drug source of supply.

1    Overt Act No. 71:   On March 18, 2022, defendant WINTERS, using

2    coded language in a Facebook message exchange, agreed to supply

3    fentanyl to a drug customer.

4    Overt Act No. 72:   On March 20, 2022, defendant SILVERBERG,

5    using coded language in a Facebook message exchange, told defendant

6    Kenneth Daniel Payer ("Payer") that he presently had an ounce of

7    heroin and needed heroin customers.

8    Overt Act No. 73:   On March 20, 2022, defendant SILVERBERG,

9    using coded language in a Facebook message exchange, told a drug

10   customer that he had high-quality heroin available to distribute.

11   Overt Act No. 74:   On March 26, 2022, defendant SILVERBERG,

12   using coded language in a Facebook message exchange, told a drug

13   customer that he had high-quality heroin and methamphetamine

14   available to distribute.

15   Overt Act No. 75:   On March 31, 2022, unindicted co-conspirator

16   #48, using coded language in a Facebook message exchange, told

17   defendant Payer that unindicted co-conspirator #3 was the one who had

18   made unindicted co-conspirator #48 a "*peckerwood gangster.*"

19   Overt Act No. 76:   On April 4, 2022, in Los Angeles California,

20   unindicted co-conspirator #48 possessed a Glock, Model 22, .40

21   caliber pistol and numerous rounds of ammunition while in a vehicle

22   with defendant Payer.

23   Overt Act No. 77:   On April 8, 2022, defendant SILVERBERG,

24   using coded language in a Facebook message exchange, told defendant

25   Payer that he presently had fentanyl available to distribute.

26   Overt Act No. 78:   On April 15, 2022, defendant CRISWELL, using

27   coded language in a Facebook message exchange, told defendant Ravin

28   that he had heroin available to distribute.

32

Overt Act No. 79:   On April 20, 2022, defendant SIMS, using coded language in a Facebook message exchange, told a drug customer that he was able to supply methamphetamine.

Overt Act No. 80:   On April 22, 2022, defendant SLACK, using coded language in a Facebook message exchange, asked defendant BREWER to send him money via Cash App so that he could obtain additional drugs from a source of supply.

Overt Act No. 81:   On April 23, 2022, defendant CRISWELL, using coded language in a Facebook message exchange, told a drug customer that he had an ounce of heroin available to distribute.

Overt Act No. 82:   On April 26, 2022, defendant SILVERBERG, using coded language in a Facebook message exchange, told defendant Smith that he had fentanyl available to distribute.

Overt Act No. 83:   On April 29, 2022, defendant CRISWELL, using coded language in a Facebook message exchange, told defendant Tara Jane Beckwith ("Beckwith") that he had high-quality fentanyl available to distribute to customers.

Overt Act No. 84:   On May 7, 2022, defendant CRISWELL, using coded language in a Facebook message exchange, told defendant Beckwith that he had high-quality fentanyl available to distribute and that he would be able to obtain heroin to distribute from a drug source of supply.

Overt Act No. 85:   On May 11, 2022, defendant BREWER, using coded language in a Facebook message exchange, ordered two ounces of drugs from defendant SLACK.

Overt Act No. 86:   On May 11, 2022, defendant BREWER, using coded language in a Facebook message exchange, ordered two ounces of drugs from defendant CRISWELL.

1        <u>Overt Act No. 87:</u>   On May 13, 2022, defendant SILVERBERG, using

2    coded language in a Facebook message exchange, agreed to supply an

3    ounce of methamphetamine to unindicted co-conspirator #48.

4        <u>Overt Act No. 88:</u>   On May 25, 2022, defendant CRISWELL, using

5    coded language in a Facebook message exchange, agreed to supply an

6    ounce of fentanyl to a drug customer.

7        <u>Overt Act No. 89:</u>   On May 25, 2022, defendant CRISWELL, using

8    coded language in a Facebook message exchange, agreed to facilitate

9    the supply of heroin to a drug customer that defendant Beckwith had

10   identified for him.

11       <u>Overt Act No. 90:</u>   On May 28, 2022, defendant SILVERBERG, using

12   coded language in a Facebook message exchange, told a drug customer

13   that he had fentanyl available to distribute and warned the customer

14   not to say "***fetty***" on Facebook Messenger.

15       <u>Overt Act No. 91:</u>   On May 29, 2022, defendant CRISWELL, using

16   coded language in a Facebook message exchange, told defendant Ravin

17   that he had heroin available to distribute.

18       <u>Overt Act No. 92:</u>   On June 12, 2022, defendant CRISWELL, using

19   coded language in a Facebook message exchange, told defendant Ciara

20   Jacobs ("Jacobs") that he had M30 pills available to distribute.

21       <u>Overt Act No. 93:</u>   On June 12, 2022, defendant WINTERS posted

22   to a Facebook group chat: "***[Y]ou already know that I'm the big bad***

23   ***boogy man from the west end!  SFV rocker earned not bought along with***

24   ***my handle because I boogy down after the shot."***

25       <u>Overt Act No. 94:</u>   On June 13, 2022, an unindicted co-

26   conspirator and SFV member, using coded language in a Facebook

27   message exchange, told defendant BREWER that he had methamphetamine

28

available to distribute and sent defendant BREWER a photograph of the drugs, shown below.



Overt Act No. 95:   On June 13, 2022, defendant BREWER, using coded language in a Facebook message exchange, ordered methamphetamine from the SFV member who had sent her the photograph of the drugs that were available.

Overt Act No. 96:   On June 16, 2022, unindicted co-conspirator #48, using coded language in a Facebook message exchange, told unindicted co-conspirator #13 that he was unindicted co-conspirator #3's "***arm***" with respect to the SFV criminal enterprise while unindicted co-conspirator #3 was in custody.

Overt Act No. 97:   On June 16, 2022, unindicted co-conspirator #48, using coded language in a Facebook message exchange, told unindicted co-conspirator #13 that unindicted co-conspirator #31 presently had the "***keys***" to the SFV criminal enterprise and was equal to unindicted co-conspirator #3 and told unindicted co-conspirator

#13 that unindicted co-conspirator #3 did not have authority over unindicted co-conspirator #31.

Overt Act No. 98:   On June 22, 2022, defendant SILVERBERG, using coded language in a Facebook message exchange, offered to sell nine grams of heroin to a drug customer for $250.

Overt Act No. 99:   On June 24, 2022, defendant CRISWELL, using coded language in a Facebook message exchange, told defendant Beckwith that he possessed fentanyl to distribute.

Overt Act No. 100:   On June 27, 2022, unindicted co-conspirator #48, using coded language in a Facebook message exchange, asked defendant CRISWELL to supply him with an ounce of methamphetamine as well as a quantity of heroin.

Overt Act No. 101:   On June 27, 2022, defendant SILVERBERG, using coded language in a Facebook message exchange, agreed to supply an ounce of methamphetamine as well as a quantity of heroin to unindicted co-conspirator #48.

Overt Act No. 102:   On July 1, 2022, defendant Smith, using coded language in a Facebook message exchange, agreed to supply a quarter of a pound of methamphetamine as well as an ounce of fentanyl to defendant SILVERBERG.

Overt Act No. 103:   On July 1, 2022, defendant SIMS, using coded language in a Facebook message exchange, told Facebook user J.P. that defendant SIMS "***got cracked with a strap and a bunch of drugs then bailed the got cracked with another gun and fraud,***" and explained that, when he was arrested with drugs, it was "***not that much it was a light day a pound and like 4 or 5 [ounces] of [heroin] and a loaded compact 45.***"

Overt Act No. 104:  On July 5, 2022, unindicted co-conspirator #48, using coded language in a Facebook message exchange, told unindicted co-conspirator #13 that unindicted co-conspirator #3 was his "*big homie*" as it related to the SFV criminal enterprise.

Overt Act No. 105:  On July 19, 2022, defendant SILVERBERG possessed approximately 70.35 grams of methamphetamine and 10.81 grams of heroin to distribute to drug customers in Northridge, California.

Overt Act No. 106:  On July 20, 2022, defendant REED sent defendant BREWER the following Facebook message:

"*I was gonna see if you knew anybody who fucked with norcos and Zanex some body gave me some blue 30s and the z bars that owes me money now there just 2 more felonies in the glove box feel me ?*"

Overt Act No. 107:  On July 23, 2022, defendant BREWER, using coded language in a Facebook message exchange, ordered an ounce of drugs from defendant REED.

Overt Act No. 108:  On July 23, 2023, defendant CUNNINGHAM, in his residence in Granada Hills, California, possessed with intent to distribute approximately 953.5 grams of fentanyl and 336 grams of methamphetamine, and possessed multiple firearms, numerous rounds of ammunition, body armor, and tools to press kilogram fentanyl bricks.

Overt Act No. 109:  On August 25, 2023, defendant BREWER, using coded language in a recorded telephone call, told defendant Guy Manning Wills ("Wills") that unindicted co-conspirator #40's residence was "*raided*" by law enforcement.

Overt Act No. 110:  On August 25, 2023, defendants BREWER and Wills, using coded language in a recorded telephone call, speculated regarding the identity of individuals who might be cooperating with

law enforcement against members of the SFV criminal enterprise and members and associates of the AB.

Overt Act No. 111:  On September 27, 2023, defendant B. EKELUND, using coded language in a recorded telephone call, told unindicted co-conspirator #11 that defendant Wills would deliver drug distribution proceeds to unindicted co-conspirator #11 on defendant B. EKELUND's behalf.

Overt Act No. 112:  On September 28, 2023, defendant B. EKELUND, using coded language in a recorded telephone call, told unindicted co-conspirator #11 to give B. EKELUND's telephone to unindicted co-conspirator #35 while defendant B. EKELUND was in custody.

Overt Act No. 113:  On October 29, 2023, defendant SLAYTON sent defendant Kevin D. Francis ("Francis") $550 via Cash App.

Overt Act No. 114:  On November 6, 2023, using coded language in a recorded telephone call, defendants HAVILAND and Julie Ann Romero ("Romero") discussed thousands of dollars of drug distribution proceeds that were at defendant HAVILAND's residence, and the portion of the drug distribution proceeds that belonged to unindicted co-conspirator #1 versus the portion that belonged to an individual referred to as "**L**."

Overt Act No. 115:  On November 7, 2023, defendant REED, using coded language in a recorded telephone call, told defendant Michael Anthony Chatterton ("Chatterton") that he was traveling to defendant Chatterton's location to deliver a quantity of drugs and instructed defendant Chatterton to send him money via Cash App.

Overt Act No. 116:  On November 19, 2022, defendant BREWER, using coded language in a Facebook message exchange, told defendant

SIMS that she was attempting to fraudulently obtain a social security number of an identity theft victim.

Overt Act No. 117:  On November 29, 2023, defendant BREWER, using coded language in a Facebook message exchange, agreed to obtain a social security number of an identity theft victim for defendant SIMS.

Overt Act No. 118:  On December 22, 2023, defendant REED, using coded language in a recorded telephone call, agreed to supply an ounce of drugs to a customer.

Overt Act No. 119:  On December 22, 2023, defendant REED, using coded language in a recorded telephone call, agreed to meet a drug customer in Tarzana, California to supply the customer with drugs.

Overt Act No. 120:  On December 28, 2023, defendant REED, using coded language in a recorded telephone call, agreed to distribute Xanax to a drug customer.

Overt Act No. 121:  On December 29, 2023, defendant REED, using coded language in a recorded telephone call, agreed to supply eight ounces of drugs to a drug customer.

Overt Act No. 122:  On January 2, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told defendant David Mitchell Shapiro ("Shapiro") that defendant SLAYTON had half a pound of methamphetamine available to distribute to defendant Shapiro.

Overt Act No. 123:  On January 2, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told a drug customer that the price of an ounce of methamphetamine was $100 and that defendant SLAYTON was attempting to obtain heroin to distribute to customers from his drug source of supply.

1    Overt Act No. 124:  On January 3, 2024, defendant SLAYTON, using
2    coded language in a recorded telephone call, told defendant
3    Christopher Mark Prevedello ("Prevedello") that he had fentanyl
4    available to distribute and that he was able to sell a quarter of an
5    ounce of fentanyl for $450.

6    Overt Act No. 125:  On January 3, 2024, defendant SLAYTON, using
7    coded language in a recorded telephone call, told defendant Francis
8    that a drug customer was interested in purchasing $3,000 worth of
9    fentanyl.

10   Overt Act No. 126:  On January 3, 2024, defendant SLAYTON, using
11   coded language in a recorded telephone call, told defendant Francis
12   that he had $1,200 in cash and $500 in Cash App.

13   Overt Act No. 127:  On January 4, 2024, defendant SLAYTON, using
14   coded language in a recorded telephone call, agreed to supply
15   fentanyl to defendant James Allen Thaemert ("Thaemert").

16   Overt Act No. 128:  On January 4, 2024, defendant SLAYTON, using
17   coded language in a recorded telephone call, agreed to supply
18   fentanyl to defendant Ernest Hill ("Hill") to distribute to drug
19   customers.

20   Overt Act No. 129:  On January 5, 2024, defendant SLAYTON, using
21   coded language in a recorded telephone call, told defendant
22   Prevedello that he had an ounce of drugs available to distribute.

23   Overt Act No. 130:  On January 5, 2024, defendant SLAYTON, using
24   coded language in a recorded telephone call, told defendant William
25   Scott Pollay ("W. Pollay") that he would be obtaining additional
26   drugs to distribute from a drug source of supply.

27   Overt Act No. 131:  On January 6, 2024, defendant REED, using
28   coded language in a recorded telephone call, told a drug customer

that he had high-quality methamphetamine available to distribute and would determine the price of a pound of the methamphetamine.

Overt Act No. 132:  On January 8, 2024, defendant SLAYTON sent defendant Francis $500 via Cash App.

Overt Act No. 133:  On January 8, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told defendant Hill that he had fentanyl available to distribute.

Overt Act No. 134:  On January 9, 2024, defendant SLAYTON, using coded language in a recorded telephone call, agreed to supply methamphetamine to defendant W. Pollay.

Overt Act No. 135:   On January 10, 2024, unindicted co-conspirator #8 and defendant HAVILAND, using coded language in a text message exchange, discussed the fact that unindicted co-conspirator #1 had his contraband cellular telephone seized by law enforcement.

Overt Act No. 136:  On January 12, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told defendant Prevedello that he was going to obtain methamphetamine to distribute from a drug source of supply.

Overt Act No. 137:  On March 17, 2024, defendant REED possessed with intent to distribute methamphetamine in a vehicle in Tujunga, California.

Overt Act No. 138:  On March 18, 2024, defendant REED possessed with intent to distribute approximately 86.13 grams of methamphetamine in Tujunga, California.

Overt Act No. 139:  On March 20, 2024, defendant BREWER coordinated a three-way telephone call between herself, unindicted co-conspirator #1, and defendant Charissa Marie Chotard ("Chotard").

Overt Act No. 140:  On March 28, 2024, defendant SIMS possessed multiple social security numbers, driver's license numbers, dates of birth, bank account numbers, and credit card numbers stolen from identity theft victims.

1

<u>COUNT TWO</u>

2

[21 U.S.C. § 846]

3

Parts A and B of Count One are re-alleged and incorporated by

4

reference as if fully set forth herein.

5

A.    <u>OBJECTS OF THE CONSPIRACY</u>

6

Beginning on a date unknown to the Grand Jury, and continuing to

7

in or around September 2024, in Los Angeles, Ventura, and Riverside

8

Counties, within the Central District of California, and elsewhere,

9

defendants HAVILAND, B. EKELUND, REED, CRISWELL, SILVERBERG,

10

CUNNINGHAM, SIMS, BREWER, WINTERS, SLACK, ROBERT M. SLAYTON, aka

11

"Bezerker" ("SLAYTON"), MICHAEL VITANZA, aka "Suspect" ("VITANZA"),

12

PAUL JOHN PICHIE, aka "Sinister" ("PICHIE"), ERIC STEVE SCHULTZ

13

("SCHULTZ"), GUY MANNING WILLS, aka "FedEx" ("WILLS"),  CHARISSA

14

MARIE CHOTARD, aka "Brat" ("CHOTARD"), JULIE ANN ROMERO ("ROMERO"),

15

CYNTHIA VAN VLYMEN, aka "Siren" ("VAN VLYMEN"), PAUL ERIC ATKINSON,

16

aka "Pork Chop" ("ATKINSON"), ERNEST HILL ("HILL"), PAGET GARY

17

EKELUND ("P. EKELUND"), SCOTT JOSHUA VENNUM ("VENNUM"),  MICHAEL

18

ANTHONY CHATTERTON, aka "Reckless" ("CHATTERTON"), CODY JENE SMITH,

19

aka "Codie Smith Gigliello," aka "Shifty," ("SMITH"),  CHRISTOPHER

20

CRAIG, aka "Lefty" ("CRAIG"), GABRIELA IBARRA, aka "Gabby"

21

("IBARRA"), ASHLEE NICOLE SWINK ("SWINK"), KEVIN D. FRANCIS

22

("FRANCIS"), RICHARD KEVIN RILEY ("RILEY"), KENNETH DANIEL PAYER, aka

23

"Tower," aka "Sugg White" ("PAYER"), KENNETH RICHARD MACDONALD, aka

24

"Misfit," aka "Kenny Mac," ("MACDONALD"), ADAM L. RODNEY ("RODNEY"),

25

WILLIAM SCOTT POLLAY ("W. POLLAY"), CHRISTOPHER PATRICK POLLAY ("C.

26

POLLAY"), DANIEL YACOUB, aka "Danny Boy" ("YACOUB"), TARA JANE

27

BECKWITH ("BECKWITH"), JULIO ABNER GAITHER, aka "Indio" ("GAITHER"),

28

SIMON R. FREEMAN, aka "Grumpy" ("FREEMAN"), MICHAEL ANDREW MORENO

("MORENO"), EARL EDDSON WATTS ("WATTS"), ELMER ROLANDO VILLATORO, aka
"Wacky" ("VILLATORO"), ALBERT ETHAN EKLUND ("EKLUND"), KEVIN
MULVIHILL, aka "Mo" ("MULVIHILL"), CIARA JACOBS, aka "Simba Jay"
("JACOBS"), CURTIS WATSTEIN, aka "Stretch" ("WATSTEIN"), ROBERT
ANTHONY BAKER ("BAKER"), RYAN SCOTT HARBAND ("HARBAND"), NISHANT
RAMACHANDRAN ("RAMACHANDRAN"), CHASE AUSTIN FLACK ("FLACK"), TAYLOR
C. BINGAMAN, aka "Scummy," aka "Scumfuck" ("BINGAMAN"), JAMES ALLEN
THAEMERT, aka "JT," aka "Big Foot" ("THAEMERT"), DAVID MITCHELL
SHAPIRO ("SHAPIRO"), SEAN CRAIG GLUCKMAN ("GLUCKMAN"), JEREMY RUSSEL
SCHWARTZ, aka "Ironman" ("SCHWARTZ"), JUSTIN DANIEL DIETZEN
("DIETZEN"), CHRISTOPHER MARK PREVEDELLO, aka "Mouse," aka "Evil"
("PREVEDELLO"),  MASON EDWARD HEINTZ ("HEINTZ"), CYNTHIA MARIE MUNOZ,
aka "Thumper" ("MUNOZ"), HENISI UTSLER, aka "Henisi Montoya"
("UTSLER"), REBEKA ANNA BENEDICT, aka "Lazy Egg" ("BENEDICT"), MEGAN
MEJIA ("MEJIA"), WALTER HUBERT LEIMERT, aka "Creepz" ("LEIMERT"),
AMANDA JOY RAVIN ("RAVIN"), TANYA NURRIA RESNICK ("RESNICK"), MATT
THOMAS POWERS, aka "Oso" ("POWERS"), CODY SEAN CHAN ("CHAN"), JOI
UNGAMRUNG ("UNGAMRUNG"), and others known and unknown to the Grand
Jury, conspired and agreed with each other to knowingly and
intentionally (1) possess with intent to distribute, and
(2) distribute:

1.    At least 50 grams of methamphetamine, a Schedule II
controlled substance, in violation of Title 21, United States Code,
Sections 841(a)(1) and (b)(1)(A)(viii);

2.    At least 500 grams of a mixture and substance containing a
detectable amount of methamphetamine, a Schedule II controlled
substance, in violation of Title 21, United States Code, Sections
841(a)(1) and (b)(1)(A)(viii);

44

3.    At least five grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(viii);

4.    At least 50 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(viii);

5.    A mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C);

6.    At least 400 grams of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vi);

7.    At least 40 grams of a mixture and substance containing a detectable amount of fentanyl, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(vi);

8.    A mixture and substance containing a detectable amount of fentanyl, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C);

9.    At least a kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(i);

10.   At least 100 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(i);

11.   A mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C);

12.   At least 280 grams of a mixture and substance containing a detectable amount of cocaine base, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(iii);

13.   At least 28 grams of a mixture and substance containing a detectable amount of cocaine base, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(iii);

14.   A mixture and substance containing a detectable amount of cocaine base, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C);

15.   A mixture and substance containing a detectable amount of phencyclidine ("PCP"), a Schedule III controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(E)(i); and

16.   Gamma hydroxybutyric acid ("GHB"), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

1  B.  MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

2  ACCOMPLISHED

3      The objects of the conspiracy were to be accomplished, in

4  substance, as follows:

5      1.  Defendants HAVILAND, VITANZA, PICHIE, SCHULTZ, CHOTARD,

6  ROMERO, HILL, and others known and unknown to the Grand Jury, would

7  communicate directly with AB members or high-ranking AB associates,

8  including via contraband cellular telephones that AB members or high-

9  ranking AB associates maintained in custodial facilities, to obtain

10 their input and assistance with respect to drug trafficking

11 activities.

12     2.  Defendant HAVILAND, and others known and unknown to the

13 Grand Jury, would communicate directly with Mexican Mafia

14 representatives, including "M.T.," also known as "Trouble," regarding

15 drug trafficking in and around the San Fernando Valley.

16     3.  Defendants VITANZA and PICHIE, and others known and unknown

17 to the Grand Jury, including unindicted co-conspirator #1, and

18 unindicted co-conspirator #40, would negotiate the purchase of large

19 quantities of drugs from cartel members to distribute to drug

20 customers in and around the Central District of California.

21     4.  Defendant CUNNINGHAM, and others known and unknown to the

22 Grand Jury, would manufacture and press kilogram bricks of fentanyl to

23 distribute to drug customers in and around the Central District of

24 California.

25     5.  Defendants HAVILAND, B. EKELUND, CUNNINGHAM, BREWER, WILLS,

26 ATKINSON, P. EKELUND, VENNUM,  and others known and unknown to the

27 Grand Jury, would maintain and oversee drug stash locations, including

28 drug stash locations overseen by unindicted co-conspirator #1 while

1  co-conspirator #1 was in CDCR custody, where large quantities of
2  fentanyl, methamphetamine, heroin, and other drugs were stored prior
3  to distribution to drug customers in and around the Central District
4  of California.

5      6.    Defendants HAVILAND, B. EKELUND, REED, CRISWELL,
6  SILVERBERG, CUNNINGHAM, SIMS, BREWER, WINTERS, SLACK, SLAYTON,
7  VITANZA, PICHIE, SCHULTZ, CHOTARD, VAN VLYMEN, ATKINSON, HILL, P.
8  EKELUND, VENNUM, CHATTERTON, SMITH, CRAIG, IBARRA, SWINK, FRANCIS,
9  RILEY, PAYER, MACDONALD, RODNEY, W. POLLAY, C. POLLAY, YACOUB,
10  BECKWITH, GAITHER, FREEMAN, MORENO, WATTS, VILLATORO, EKLUND,
11  MULVIHILL, JACOBS, WATSTEIN, BAKER, HARBAND, RAMACHANDRAN, FLACK,
12  BINGAMAN, THAEMERT, SHAPIRO, GLUCKMAN, SCHWARTZ, DIETZEN, PREVEDELLO,
13  HEINTZ, MUNOZ, UTSLER, BENEDICT, MEJIA, LEIMERT, RAVIN, POWERS, CHAN,
14  UNGAMRUNG and others known and unknown to the Grand Jury, would obtain
15  drugs to distribute from drug sources of supply.

16      7.    Defendants HAVILAND, B. EKELUND, REED, CRISWELL,
17  SILVERBERG, CUNNINGHAM, SIMS, BREWER, WINTERS, SLACK, SLAYTON,
18  VITANZA, PICHIE, SCHULTZ, VAN VLYMEN, HILL, P. EKELUND, VENNUM,
19  CHATTERTON, SMITH, CRAIG, IBARRA, SWINK, FRANCIS, RILEY, PAYER,
20  MACDONALD, RODNEY, W. POLLAY, C. POLLAY, YACOUB, BECKWITH, GAITHER,
21  FREEMAN, MORENO, WATTS, VILLATORO, EKLUND, MULVIHILL, JACOBS,
22  WATSTEIN, BAKER, HARBAND, RAMACHANDRAN, FLACK, BINGAMAN, THAEMERT,
23  SHAPIRO, GLUCKMAN, SCHWARTZ, DIETZEN, PREVEDELLO, HEINTZ, MUNOZ,
24  UTSLER, BENEDICT, MEJIA, LEIMERT, RAVIN, RESNICK, POWERS, CHAN,
25  UNGAMRUNG, and others known and unknown to the Grand Jury, would
26  distribute drugs to drug customers.

27      8.    Defendants SILVERBERG, BREWER, and others known and unknown
28  to the Grand Jury, would transport drugs to locations outside of the

1  Central District of California in order to distribute drugs to
2  customers in those districts.

3      9.    Defendants FRANCIS, PAYER, and others known and unknown to
4  the Grand Jury, would distribute drugs to individuals in custodial
5  facilities.

6      10.   Defendants HAVILAND, B. EKELUND, CHATTERTON, and others
7  known and unknown to the Grand Jury, would distribute drugs to
8  customers outside of the state of California via the mail.

9      11.   Defendant WILLS, and others known and unknown to the Grand
10 Jury, would maintain, store, and disperse the drug distribution
11 proceeds that were generated by co-conspirators.

12     12.   Defendants CUNNINGHAM, VITANZA, SCHULTZ, and others known
13 and unknown to the Grand Jury, would maintain firearms and other
14 dangerous weapons to be used in connection with drug distribution
15 activities.

16     13.   Defendants HAVILAND, B. EKELUND, SLAYTON, VITANZA, SCHULTZ,
17 HILL, P. EKELUND, VENNUM, CHATTERTON, FRANCIS, MACDONALD, W. POLLAY,
18 BECKWITH, GAITHER, FREEMAN, MULVIHILL, WATSTEIN, BAKER, RAMACHANDRAN,
19 THAEMERT, SHAPIRO, CHAN, UNGAMRUNG, and others known and unknown to
20 the Grand Jury, would facilitate their drug distribution activity
21 through the use of Cash App and Zelle by receiving money from drug
22 customers and sending money to drug sources of supply via these mobile
23 payment services.

24     14.   Defendants SIMS, BREWER, WINTERS, BINGAMAN, GLUCKMAN,
25 SCHWARTZ, and others known and unknown to the Grand Jury, would carry
26 out fraud schemes in order to generate money for themselves and to use
27 in connection with drug distribution activities.

28

15. Defendant HAVILAND, B. EKELUND, BREWER, VITANZA, PICHIE, SCHULTZ, WILLS, CHOTARD, CHATTERTON, SWINK, DIETZEN, MUNOZ, and others known and unknown to the Grand Jury, would share information with co-conspirators regarding law enforcement activity and individuals who might be cooperating with law enforcement.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants HAVILAND, B. EKELUND, REED, CRISWELL, SILVERBERG, CUNNINGHAM, SIMS, BREWER, WINTERS, SLACK, SLAYTON, VITANZA, PICHIE, SCHULTZ, WILLS, CHOTARD, ROMERO, VAN VLYMEN, ATKINSON, HILL, P. EKELUND, VENNUM, CHATTERTON, SMITH, CRAIG, IBARRA, SWINK, FRANCIS, RILEY, PAYER, MACDONALD, RODNEY, W. POLLAY, C. POLLAY, YACOUB, BECKWITH, GAITHER, FREEMAN, MORENO, WATTS, VILLATORO, EKLUND, MULVIHILL, JACOBS, WATSTEIN, BAKER, HARBAND, RAMACHANDRAN, FLACK, BINGAMAN, THAEMERT, SHAPIRO, GLUCKMAN, SCHWARTZ, DIETZEN, PREVEDELLO, HEINTZ, MUNOZ, UTSLER, BENEDICT, MEJIA, LEIMERT, RAVIN, RESNICK, POWERS, CHAN, UNGAMRUNG, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles, Ventura, and Riverside Counties, within the Central District of California, and elsewhere, including, but not limited to, Overt Acts numbered 10, 11, 16, 17, 19-24, 28-29, 31-33, 35-36, 38-41, 43, 46, 47, 49-55, 63, 65-74, 77-92, 94-95, 98-140, as set forth in Part F of Count One, which are re-alleged and incorporated by reference as if fully set forth herein, as well as the following:

Overt Act No. 104: On December 29, 2019, unindicted co-conspirator #47 told an undercover law enforcement officer who she believed was a drug customer (the "UC") that she "knew the right

1   people in the Valley," and that she would be able to supply the UC

2   with large quantities of drugs.

3        Overt Act No. 105:  On January 2, 2020, unindicted co-

4   conspirator #47 told the UC that she could supply him with pounds of

5   methamphetamine at a price of $1650 a pound, and ounces of heroin at

6   a price of $800 an ounce.

7        Overt Act No. 106:  On January 9, 2020, unindicted co-

8   conspirator #47 sold the UC an ounce of methamphetamine for $130.

9        Overt Act No. 107:  On March 27, 2020, defendant C. POLLAY,

10  using coded language in a Facebook message exchange, asked defendant

11  SIMS for the price of an ounce of methamphetamine for a drug

12  customer.

13       Overt Act No. 108:  On March 27, 2020, defendant C. POLLAY,

14  using coded language in a Facebook message exchange, asked defendant

15  SIMS for the price of an ounce of methamphetamine for a drug

16  customer.

17       Overt Act No. 109:  On April 24, 2020, defendant SCHWARTZ, using

18  coded language in a Facebook message exchange, told defendant SLAYTON

19  that he needed 10 to 20 pounds of methamphetamine.

20       Overt Act No. 110:  On April 25, 2020, defendant BENEDICT, using

21  coded language in a Facebook message exchange, told defendant MUNOZ

22  that she would be able to supply a pound of methamphetamine to

23  defendant MUNOZ for $2,300.

24       Overt Act No. 111:  On April 25, 2020, defendant MUNOZ, using

25  coded language in a Facebook message exchange, told defendant

26  BENEDICT that a drug customer had $1,700 available to purchase

27  methamphetamine.

28

Overt Act No. 112:  On May 8, 2020, defendant FLACK, using coded language in a Facebook message exchange, asked unindicted co-conspirator #23 to supply a pound of methamphetamine at a good price.

Overt Act No. 113:  On May 12, 2020, defendant FLACK, using coded language in a Facebook message exchange, told defendant SIMS that he wanted to purchase ten pounds of methamphetamine at a good price.

Overt Act No. 114:  On May 12, 2020, unindicted co-conspirator #23, using coded language in a Facebook message exchange, told defendant FLACK that he would be able to purchase a pound of methamphetamine for $2,000.

Overt Act No. 115:  On May 13, 2020, defendant MUNOZ, using coded language in a Facebook message exchange, told defendant BENEDICT that she needed a drug source of supply who could consistently sell her drugs to distribute.

Overt Act No. 116:  On May 13, 2020, defendant MUNOZ, using coded language in a Facebook message exchange, told defendant BENEDICT that she had traveled to Palmdale, California to obtain drugs to distribute.

Overt Act No. 117:  On May 13, 2020, defendant MUNOZ, using coded language in a Facebook message exchange, told defendant BENEDICT that she was thinking about asking defendant HAVILAND to teach her how to manufacture methamphetamine due to the current shortage in methamphetamine to distribute.

Overt Act No. 118:  On May 13, 2020, in Canoga Park, California, unindicted co-conspirator #42 possessed approximately 453.19 grams of methamphetamine and approximately 206.23 grams of heroin to distribute to drug customers.

Overt Act No. 119:  On May 15, 2020, defendant MUNOZ, using coded language in a Facebook message exchange, asked a drug source of supply for a pound of methamphetamine.

Overt Act No. 120:  On May 16, 2020, defendant FLACK, using coded language in a Facebook message exchange, asked to purchase an ounce of drugs from unindicted co-conspirator #23 for $600.

Overt Act No. 121:  On May 21, 2020, defendant MUNOZ, using coded language in a Facebook message exchange, asked unindicted co-conspirator #22 if defendant HAVILAND presently had drugs available to distribute.

Overt Act No. 122:  On June 16, 2020, defendant WINTERS, using coded language in a Facebook message exchange, told defendant BENEDICT that he had identified a drug source of supply who was able to supply high-quality heroin at a good price.

Overt Act No. 123:  On June 17, 2020, defendants ATKINSON, B. EKELUND, and IBARRA attempted to enter the United States from Mexico at the Calexico, California, West Port of Entry with approximately 113.39 grams of methamphetamine and $5,000 concealed in their vehicle.

Overt Act No. 124:  On June 17, 2020, defendant ATKINSON possessed $10,000 in cash while attempting to enter the United States via Mexico.

Overt Act No. 125:  On June 17, 2020, defendant B. EKELUND possessed $12,300 in cash while attempting to enter the United States via Mexico.

Overt Act No. 126:  On June 17, 2020, defendant IBARRA concealed approximately 2.39 grams of Xanax and approximately 2.21 grams of

heroin in her body cavity while attempting to enter the United States via Mexico.

Overt Act No. 127:  On June 20, 2020, defendant MUNOZ, using coded language in a Facebook message exchange, told unindicted co-conspirator #22 that she had methamphetamine available to distribute.

Overt Act No. 128:  On June 22, 2020, defendant MUNOZ, using coded language in a Facebook message exchange, told unindicted co-conspirator #22 that she had methamphetamine available to distribute.

Overt Act No. 129:  On July 4, 2020, defendant C. POLLAY, using coded language in a Facebook message exchange, ordered an ounce of fentanyl from unindicted co-conspirator #47.

Overt Act No. 130:  On July 7, 2020, defendant SMITH, using coded language in a Facebook message exchange, told unindicted co-conspirator #48 that he had heroin available to distribute.

Overt Act No. 131:  On August 4, 2020, defendant VILLATORO possessed approximately 211.82 grams of methamphetamine, depicted in the below photographs, to distribute to drug customers, as well as a firearm in a motel room in Van Nuys, California.

 

Overt Act No. 132:  On August 11, 2020, defendant CRAIG, using coded language in a Facebook message exchange, sent to defendant GLUCKMAN the photograph depicted below of M30 pills that he had available to distribute:



Overt Act No. 133:  On August 22, 2020, defendant C. POLLAY, using coded language in a Facebook message exchange, ordered $450 of fentanyl as well as a quantity of methamphetamine from unindicted co-conspirator #43.

Overt Act No. 134:  On August 26, 2020, defendant SMITH, in a Facebook message exchange, sent defendant WINTERS a photograph, depicted below, of a firearm that he possessed.

Overt Act No. 135:  On August 26, 2020, defendant C. POLLAY, using coded language in a Facebook message exchange, told unindicted co-conspirator #43 that he was in Hollywood obtaining GHB, fentanyl, and methamphetamine to distribute to drug customers.

Overt Act No. 136:  On August 29, 2020, defendant SMITH, using coded language in a Facebook message exchange, told defendant WINTERS that he had a large quantity of heroin available to distribute.

Overt Act No. 137:  On August 29, 2020, defendant WINTERS, using coded language in a Facebook message exchange, told defendant SMITH that he also had heroin available to distribute.

Overt Act No. 138:  On September 2, 2020, defendant SHAPIRO possessed approximately 218.97 grams of methamphetamine to distribute to drug customers in a vehicle that he was driving in Canoga Park, California.

Overt Act No. 139:  On September 2, 2020, defendant CRAIG possessed approximately an ounce of methamphetamine to distribute to drug customers in a vehicle that he was driving in Newhall, California.

Overt Act No. 140:  On September 11, 2020, defendant RAVIN, using coded language in a Facebook message exchange, offered to supply methamphetamine to unindicted co-conspirator #44.

Overt Act No. 141:  On October 2, 2020, defendant VAN VLYMEN possessed approximately 11.06 grams of methamphetamine to distribute to drug customers, a digital scale, and drug packaging material in a vehicle that she was driving in Woodland Hills, California.

1   <u>Overt Act No. 142:</u>  On October 5, 2020, unindicted co-
2   conspirator #50, using coded language in a Facebook message exchange,
3   offered to sell an AR-15 "ghost gun" with an ammunition clip,
4   depicted in the photographs below, to defendant CUNNINGHAM for
5   $1,400.



12   <u>Overt Act No. 143:</u>  On October 6, 2020, defendant DIETZEN, using
13   coded language in a Facebook message exchange, told unindicted co-
14   conspirator #44 that he was obtaining additional drugs to distribute
15   to customers from a drug source of supply.

16   <u>Overt Act No. 144:</u>  On October 7, 2020, unindicted co-
17   conspirator #43, using coded language in a Facebook message exchange,
18   told defendant C. POLLAY that defendant C. POLLAY owed unindicted co-
19   conspirator #43 $1,840 in connection with defendant C. POLLAY's drug
20   distribution activities.

21   <u>Overt Act No. 145:</u>  On October 15, 2020, defendant IBARRA, using
22   coded language in a Facebook message exchange, identified for
23   unindicted co-conspirator #43 a drug source of supply who would sell
24   three units of heroin at a price of $425 a unit to unindicted co-
25   conspirator #43.

26   <u>Overt Act No. 146:</u>  On October 25, 2020, unindicted co-
27   conspirator #42, using coded language in a Facebook message exchange,

28

told defendant WATSTEIN that the price of half an ounce of heroin was $325.

Overt Act No. 147:  On October 31, 2020, defendant SMITH, using coded language in a Facebook message exchange, told defendant WINTERS that he had high quality cocaine available to distribute.

Overt Act No. 148:  On November 2, 2020, defendant IBARRA, using coded language in a Facebook message exchange, told a drug customer that she needed to obtain heroin to distribute from a drug source of supply.

Overt Act No. 149:  On November 11, 2020, defendant JACOBS, using coded language in a Facebook message exchange, told defendant WATSTEIN that she needed $450 to obtain more drugs from a drug source of supply.

Overt Act No. 150:  On November 11, 2020, defendant YACOUB possessed methamphetamine, heroin, and cocaine base to distribute to customers, a digital scale, and $520 in drug distribution proceeds in Littlerock, California.

Overt Act No. 151:  On November 28, 2020, defendant DIETZEN, using coded language in a Facebook message exchange, told unindicted co-conspirator #44 to meet him at a drug stash house located on 9400 Valjean Avenue in North Hills, California.

Overt Act No. 152:  On December 5, 2020, defendant SHAPIRO sent unindicted co-conspirator #42 $600 via Cash App.

Overt Act No. 153:  On December 6, 2020, defendant SHAPIRO sent unindicted co-conspirator #42 $600 via Cash App.

Overt Act No. 154:  On December 9, 2020, defendant SHAPIRO sent unindicted co-conspirator #42 $400 via Cash App.

Overt Act No. 155:  On December 10, 2020, defendant SHAPIRO sent unindicted co-conspirator #42 $200 via Cash App.

Overt Act No. 156:  On December 14, 2020, defendant SHAPIRO sent unindicted co-conspirator #42 $600 via Cash App.

Overt Act No. 157:  On December 16, 2020, defendant SHAPIRO sent unindicted co-conspirator #42 $100 via Cash App.

Overt Act No. 158:  On December 17, 2020, defendant HILL and unindicted co-conspirator #21, using coded language in a Facebook message exchange, ordered fentanyl from defendant JACOBS.

Overt Act No. 159:  On December 18, 2020, defendant SHAPIRO sent unindicted co-conspirator #42 $100 via Cash App.

Overt Act No. 160:  On December 24, 2020, unindicted co-conspirator #21, using coded language in a Facebook message exchange, ordered fentanyl from defendant JACOBS.

Overt Act No. 161:  On December 29, 2020, defendant WATSTEIN, using coded language in a Facebook message exchange, told defendant UTSLER that he needed a pound of methamphetamine to distribute to customers.

Overt Act No. 162:  On December 29, 2020, defendant UTSLER, using coded language in a Facebook message exchange, told a drug customer that she had methamphetamine available to distribute to customers.

Overt Act No. 163:  On December 31, 2020, defendant CRAIG, using coded language in a Facebook message exchange, told unindicted co-conspirator #47 that he was purchasing pounds of drugs from a drug source of supply for $1,900.

Overt Act No. 164:  On December 31, 2020, unindicted co-conspirator #47, using coded language in a Facebook message exchange,

told defendant CRAIG that she was able to sell pounds of high-quality drugs at a price of $1,850 a pound.

Overt Act No. 165:  On December 31, 2020, defendant CRAIG, using coded language in a Facebook message exchange, told unindicted co-conspirator #47 that he wanted to obtain an ounce sample of drugs from her in order to see if he wanted to purchase pounds of drugs from her in the future.

Overt Act No. 166:  On January 1, 2021, defendant JACOBS, using coded language in a Facebook message exchange, told unindicted co-conspirator #21 that she had fentanyl available to distribute to customers.

Overt Act No. 167:  On January 2, 2021, unindicted co-conspirator #41, using coded language in a Facebook message exchange, told defendant IBARRA that he needed to obtain two ounces of methamphetamine from a drug source of supply.

Overt Act No. 168:  On January 2, 2021, defendant IBARRA, using coded language in a Facebook message exchange, told unindicted co-conspirator #41 that she was able to obtain drugs to distribute from both defendant B. EKELUND as well as unindicted co-conspirator #42.

Overt Act No. 169:  On January 3, 2021, defendant WATSTEIN, using coded language in a Facebook message exchange, told defendant UTSLER that he needed an ounce of high-quality methamphetamine.

Overt Act No. 170:  On January 7, 2021, defendant WATSTEIN, using coded language in a Facebook message exchange, ordered heroin and an ounce of methamphetamine from unindicted co-conspirator #42.

Overt Act No. 171:  On January 15, 2021, defendant SCHWARTZ, using coded language in a Facebook message exchange, told defendant

RAVIN that he would let her know when he obtained heroin from a drug source of supply.

Overt Act No. 172:  On January 15, 2021, defendant SCHWARTZ, using coded language in a Facebook message exchange, identified a drug customer that wanted to obtain a half an ounce of methamphetamine from a drug source of supply.

Overt Act No. 173:  On January 22, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $1,100 via Cash App.

Overt Act No. 174:  On January 26, 2021, unindicted co-conspirator #42, using coded language in a Facebook message exchange, told defendant BENEDICT that she owed unindicted co-conspirator #42 $890 in connection with a drug transaction.

Overt Act No. 175:  On January 27, 2021, defendant C. POLLAY, using coded language in a Facebook message exchange, ordered an ounce of fentanyl from defendant WATSTEIN and stated that he was willing to pay $1,300 for the drugs.

Overt Act No. 176:  On January 27, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $220 via Cash App.

Overt Act No. 177:  On January 30, 2021, defendant SCHWARTZ, using coded language in a Facebook message exchange, offered to supply methamphetamine to defendant SMITH in exchange for a copy of the Woodland Hills counterfeit postal mail key.

Overt Act No. 178:  On January 30, 2021, defendant SMITH, using coded language in a Facebook message exchange, identified for defendant SCHWARTZ the counterfeit postal mail keys that defendant SMITH possessed.

1       Overt Act No. 179:  On February 2, 2021, defendant BENEDICT,

2  using coded language in a Facebook message exchange, ordered $175 of

3  fentanyl from unindicted co-conspirator #42.

4       Overt Act No. 180:  On February 5, 2021, defendant WATSTEIN,

5  using coded language in a Facebook message exchange, told defendant

6  C. POLLAY that he had fentanyl available to distribute.

7       Overt Act No. 181:  On February 5, 2021, defendant C. POLLAY,

8  using coded language in a Facebook message exchange, ordered an ounce

9  of heroin from defendant WATSTEIN to distribute to drug customers.

10      Overt Act No. 182:  On February 6, 2021, defendant RAVIN, using

11  coded language in a Facebook message exchange, identified a drug

12  customer that needed to obtain heroin from unindicted co-conspirator

13  #44.

14      Overt Act No. 183:  On February 7, 2021, defendant WATSTEIN,

15  using coded language in a Facebook message exchange, ordered an ounce

16  of methamphetamine from defendant UTSLER.

17      Overt Act No. 184:  On February 15, 2021, defendant C. POLLAY,

18  using coded language in a Facebook message exchange, ordered half an

19  ounce of fentanyl from defendant WATSTEIN.

20      Overt Act No. 185:  On February 15, 2021, defendant SHAPIRO sent

21  unindicted co-conspirator #42 $220 via Cash App.

22      Overt Act No. 186:  On February 18, 2021, defendant GLUCKMAN,

23  using coded language in a Facebook message exchange, asked defendant

24  SLACK to supply him with an ounce of drugs in exchange for money that

25  defendant GLUCKMAN was generating for defendant SLACK in connection

26  with fraud.

27

28

Overt Act No. 187:  On February 23, 2021, defendant BENEDICT, using coded language in a Facebook message exchange, ordered methamphetamine from unindicted co-conspirator #42.

Overt Act No. 188:  On February 24, 2021, defendant JACOBS, using coded language in a Facebook message exchange, told unindicted co-conspirator #21 that she was obtaining an ounce of fentanyl to distribute to customers from a drug source of supply.

Overt Act No. 189:  On February 24, 2021, defendant WATSTEIN, using coded language in a Facebook message exchange, ordered two ounces of methamphetamine from unindicted co-conspirator #43.

Overt Act No. 190:  On February 24, 2021, defendant SCHWARTZ, using coded language in a Facebook message exchange, told defendant SMITH that he had sold a rifle that belonged to defendant SMITH to a customer for $700 and that defendant SCHWARTZ would take $100 in connection with the firearm sale.

Overt Act No. 191:  On February 27, 2021, defendant LEIMERT sent unindicted co-conspirator #42 $400 via Cash App.

Overt Act No. 192:  On March 5, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $610 via Cash App.

Overt Act No. 193:  On March 6, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $250 via Cash App.

Overt Act No. 194:  On March 7, 2021, defendant SMITH, using coded language in a Facebook message exchange, told defendant SCHWARTZ that he had high-quality fentanyl available to distribute.

Overt Act No. 195:  On March 12, 2021, defendant LEIMERT sent unindicted co-conspirator #42 $750 via Cash App.

1    <u>Overt Act No. 196:</u>  On March 14, 2021, defendant GLUCKMAN, using

2    coded language in a Facebook message exchange, told defendant SWINK

3    that he presently had methamphetamine to distribute.

4    <u>Overt Act No. 197:</u>  On March 14, 2021, defendant SWINK, using

5    coded language in a Facebook message exchange, offered to sell

6    defendant GLUCKMAN counterfeit $100 bills.

7    <u>Overt Act No. 198:</u>  On March 17, 2021, defendant GLUCKMAN, in a

8    Facebook message exchange, sent unindicted co-conspirator #43 the

9    photograph depicted below of a firearm to which he had access.



18   <u>Overt Act No. 199:</u>  On March 19, 2021, defendant SWINK posted a

19   copy of a law enforcement report involving her, K.R., and H.C. to the

20   SFV Facebook Page, and stated the following:

21   ***Just in case anyone comes across [K.R.] or [H.C.] just know that this
     shit happened.  Gave all kinds of statements to the cops and blamed
22   all his shit on me.  Just got out after doing 16 months.  Not to
     mention he's going around telling people his name is bam bam SFV.
23   Yep real quality person.  Just thought I'd let you all know.***

24   <u>Overt Act No. 200:</u>  In response to defendant SWINK's Facebook

25   post regarding K.R., defendant FRANCIS posted to the SFV Facebook

26   Page:

27   ***[K.R.] is a piece of shit.  I can't wait for the real Bam gets out of
28   prison and sells him to the nigs for using his name.***

64

Overt Act No. 201:  On March 19, 2021, defendant WATSTEIN, using coded language in a Facebook message exchange, ordered methamphetamine from unindicted co-conspirator #43.

Overt Act No. 202:  On March 20, 2021, defendant WINTERS, using coded language in a Facebook message exchange, stated that he would arm himself and meet with defendant LEIMERT at a location in Los Angeles, California.

Overt Act No. 203:  On March 21, 2021, defendant WATSTEIN, using coded language in a Facebook message exchange, told defendant C. POLLAY that he had high-quality fentanyl available to distribute.

Overt Act No. 204:  On March 22, 2021, in Los Angeles, California, unindicted co-conspirator #43 possessed approximately 397.3 grams of methamphetamine that was 100% pure, 247 grams of heroin, and 12 grams of a mixture or substance containing a detectable amount fentanyl to distribute to drug customers.

Overt Act No. 205:  On March 22, 2021, defendant LEIMERT sent unindicted co-conspirator #42 $400 via Cash App.

Overt Act No. 206:  On March 24, 2021, defendant BREWER sent defendant RAMACHANDRAN $2,000 via Cash App.

Overt Act No. 207:  On May 26, 2021, defendant BENEDICT, using coded language in a Facebook message exchange, agreed to supply heroin to defendant SCHWARTZ.

Overt Act No. 208:  On March 27, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $260 via Cash App.

Overt Act No. 209:  On March 28, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $800 via Cash App.

Overt Act No. 210:  On March 29, 2021, unindicted co-conspirator #2 and unindicted co-conspirator #16, using coded language in a Facebook message exchange, directed defendant GLUCKMAN to obtain five pistols and two rifles.

Overt Act No. 211:  On March 30, 2021, defendant CRAIG agreed to sell a drug customer half an ounce of drugs for $300.

Overt Act No. 212:  On April 2, 2021, defendant CRAIG, using coded language in a Facebook message exchange, agreed to sell heroin to defendant RAVIN.

Overt Act No. 213:  On April 3, 2021, defendant WATSTEIN, using coded language in a Facebook message exchange, ordered six ounces of methamphetamine from unindicted co-conspirator #43.

Overt Act No. 214:  On April 5, 2021, defendant SWINK, using coded language in a Facebook message exchange, asked to purchase two ounces of drugs from defendant GLUCKMAN.

Overt Act No. 215:  On April 8, 2021, defendant WATSTEIN, using coded language in a Facebook message exchange, told unindicted co-conspirator #43 that a drug customer wanted to purchase nine ounces of methamphetamine.

Overt Act No. 216:  On April 11, 2021, unindicted co-conspirator #43 sent defendant WATSTEIN $100 via Cash App.

Overt Act No. 217:  On April 13, 2021, unindicted co-conspirator #42, using coded language in a Facebook message exchange, discussed with defendant BENEDICT drugs that she had stored on his behalf at her residence, and complained that he was missing a quarter of a pound of methamphetamine and 100 Xanax pills.

Overt Act No. 218:  On April 14, 2021, defendant SMITH, using coded language in a Facebook message exchange, told unindicted co-

conspirator #43 that he saw law enforcement in the area and, as a result, "*lost fucking a backpack full of cash and dope and few guns*" that defendant SMITH was holding for his drug source of supply.

Overt Act No. 219:  On April 17, 2021, defendant SMITH sent unindicted co-conspirator #43 $200 via Cash App.

Overt Act No. 220:  On April 18, 2021, defendant SMITH sent unindicted co-conspirator #43 $150 via Cash App.

Overt Act No. 221:  On April 19, 2021, defendant SMITH sent unindicted co-conspirator #43 $200 via Cash App.

Overt Act No. 222:  On April 19, 2021, defendant WINTERS sent defendant SWINK $1,000 via Cash App and indicated that the money was on behalf of unindicted co-conspirator #2.

Overt Act No. 223:  On April 19, 2021, unindicted co-conspirator #43 sent defendant WATSTEIN $200 via Cash App.

Overt Act No. 224:  On April 26, 2021, defendant LEIMERT, using coded language in a Facebook message exchange, ordered an ounce of heroin and an ounce of methamphetamine from unindicted co-conspirator #42.

Overt Act No. 225:  On April 28, 2021, defendant BENEDICT, using coded language in a Facebook message exchange, ordered an ounce of methamphetamine from unindicted co-conspirator #42.

Overt Act No. 226:  On April 29, 2021, defendant WATSTEIN, using coded language in a Facebook message exchange, told unindicted co-conspirator #42 that he would send unindicted co-conspirator #42 $3,300 in connection with a drug transaction.

Overt Act No. 227:  On May 3, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $500 via Cash App.

1    Overt Act No. 228:  On May 6, 2021, defendant WATSTEIN, using

2    coded language in a Facebook message exchange, ordered five ounces of

3    methamphetamine from unindicted co-conspirator #43.

4    Overt Act No. 229:  On May 9, 2021, unindicted co-conspirator

5    #41, using coded language in a Facebook message exchange, told

6    defendant IBARRA that he needed to obtain nine ounces of heroin to

7    distribute to customers.

8    Overt Act No. 230:  On May 9, 2021, unindicted co-conspirator

9    #41, using coded language in a Facebook message exchange, told

10   defendant IBARRA that he had attempted to contact defendant BENEDICT

11   to obtain the heroin to distribute and said that he planned to

12   contact unindicted co-conspirator #42.

13   Overt Act No. 231:  On May 9, 2021, unindicted co-conspirator

14   #41, using coded language in a Facebook message exchange, told

15   defendant IBARRA that unindicted co-conspirator #41 had high-quality

16   methamphetamine to distribute, and sent defendant IBARRA the below

17   picture of the drugs:



Overt Act No. 232:  On May 10, 2021, defendant SMITH, using coded language in a Facebook message exchange, told defendant GLUCKMAN that defendant SMITH had high-quality heroin and methamphetamine available to distribute.

Overt Act No. 233:  On May 11, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $300 via Cash App.

Overt Act No. 234:  On May 12, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $500 via Cash App.

Overt Act No. 235:  On May 17, 2021, unindicted co-conspirator #41, using coded language in a Facebook message exchange, told defendant IBARRA that he was able to supply her and others with high-quality methamphetamine to distribute to customers at a price of $1,350 a pound.

Overt Act No. 236:  On May 20, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $500 via Cash App.

Overt Act No. 237:  On May 26, 2021, defendant BENEDICT told defendant SCHWARTZ that she had heroin available to sell.

Overt Act No. 238:  On May 27, 2021, unindicted co-conspirator #23, using coded language in a Facebook message exchange, warned defendant FLACK that federal law enforcement agents had searched her residence and business.

Overt Act No. 239:  On May 27, 2021, defendant IBARRA, using coded language in a Facebook message exchange, told unindicted co-conspirator #41 that defendant B. EKELUND was able to supply two ounces of heroin to a drug customer.

Overt Act No. 240:  On May 28, 2021, defendant YACOUB, using coded language in a Facebook message exchange, told defendant JACOBS that he had high-quality fentanyl available to distribute.

69

Overt Act No. 241:  On June 2, 2021, defendant SHAPIRO, using coded language in a Facebook message exchange, ordered an ounce of heroin from defendant WATSTEIN and explained to defendant WATSTEIN that he could not get the drugs from unindicted co-conspirator #42 because unindicted co-conspirator #42 was incarcerated.

Overt Act No. 242:  On June 10, 2021, defendant SMITH, using coded language in a Facebook message exchange, agreed to supply an ounce of methamphetamine to defendant WINTERS.

Overt Act No. 243:  On June 11, 2021, defendant SHAPIRO sent unindicted co-conspirator #42 $300 via Cash App.

Overt Act No. 244:  On June 11, 2021, defendant LEIMERT sent unindicted co-conspirator #42 $550 via Cash App.

Overt Act No. 245:  On June 16, 2021, defendant GLUCKMAN, using coded language in a Facebook message exchange, told unindicted co-conspirator #41 that he had sent unindicted co-conspirator #41 $100 for an ounce of drugs via Cash App.

Overt Act No. 246:  On June 19, 2021, defendant SWINK, using coded language in a Facebook message exchange, told defendant GLUCKMAN that she would distribute an ounce of heroin to customers and share the drug distribution proceeds with defendant GLUCKMAN.

Overt Act No. 247:  On June 22, 2021, defendant LEIMERT sent unindicted co-conspirator #42 $120 via Cash App.

Overt Act No. 248:  On June 23, 2021, unindicted co-conspirator #42, using coded language in a Facebook message exchange, told defendant BENEDICT that he had just obtained additional drugs to distribute from a source of supply.

1    Overt Act No. 249:  On June 23, 2021, defendant BENEDICT, using

2    coded language in a Facebook message exchange, ordered heroin to

3    distribute from a drug source of supply.

4    Overt Act No. 250:  On June 24, 2021, unindicted co-conspirator

5    #42, using coded language in a Facebook message exchange, asked

6    defendant BENEDICT to send money to him via Zelle that she owed in

7    connection with her drug distribution activities and told her that

8    the amount that she presently owed him was $1,250.

9    Overt Act No. 251:  On July 1, 2021, defendant BENEDICT, using

10   coded language in a Facebook message exchange, ordered

11   methamphetamine from unindicted co-conspirator #42.

12   Overt Act No. 252:  On July 3, 2021, defendant BENEDICT, using

13   coded language in a Facebook message exchange, directed unindicted

14   co-conspirator #42 to supply a quarter of a pound of methamphetamine

15   to a drug customer.

16   Overt Act No. 253:  On July 4, 2021, unindicted co-conspirator

17   #41, using coded language in a Facebook message exchange, told

18   defendant IBARRA that he had sent her $1,050 via Cash App in

19   connection with a prior drug transaction with defendant B. EKELUND.

20   Overt Act No. 254:  On July 4, 2021, unindicted co-conspirator

21   #41 sent defendant IBARRA the following Facebook message: "***Someone is***

22   ***oding[.] You have that shit to bring them back[?]***"

23   Overt Act No. 255:  On July 4, 2021, in response to unindicted

24   co-conspirator #41's question, defendant IBARRA sent unindicted co-

25   conspirator #41 the following Facebook message: "***Yes[.] At my pad[.]***"

26

27

28

Overt Act No. 256:  On July 16, 2021, unindicted co-conspirator #41, using coded language in a Facebook message exchange, told defendant IBARRA that he had generated $20,000 in drug distribution proceeds and had money to obtain methamphetamine from defendant B. EKELUND, and sent defendant IBARRA the below photograph:



Overt Act No. 257:  On July 17, 2021, defendant SMITH, using coded language in a Facebook message exchange, told defendant WINTERS that he had high-quality heroin and methamphetamine available to distribute.

Overt Act No. 258:  On July 17, 2021, defendant LEIMERT sent unindicted co-conspirator #42 $1,000 via Cash App.

Overt Act No. 259:  On July 21, 2021, unindicted co-conspirator #50, using coded language in a Facebook message exchange, complained about the quality of an ounce of methamphetamine that defendant CUNNINGHAM had supplied and asked for him to supply a replacement quantity of methamphetamine.

Overt Act No. 260:  On July 23, 2021, defendant LEIMERT, using coded language in a Facebook message exchange, ordered an ounce of

heroin and an ounce of methamphetamine from unindicted co-conspirator #42.

Overt Act No. 261:  On July 23, 2021, defendant SCHWARTZ, using coded language in a Facebook message exchange, agreed to supply methamphetamine and heroin to a drug customer.

Overt Act No. 262:  On July 23, 2021, defendant LEIMERT, using coded language in a Facebook message exchange, ordered an ounce of heroin and an ounce of methamphetamine from unindicted co-conspirator #42.

Overt Act No. 263:  On July 24, 2021, defendant C. POLLAY, using coded language in a Facebook message exchange, sent defendant GLUCKMAN photographs of a credit card stolen from victim T.H. so that defendant GLUCKMAN could activate the stolen credit card and share money obtained from the card with defendant C. POLLAY.

Overt Act No. 264:  On July 26, 2021, defendant SMITH, using coded language in a Facebook message exchange, told defendant SCHWARTZ that he had methamphetamine available to distribute to customers.

Overt Act No. 265:  On July 27, 2021, defendant UTSLER, using coded language in a Facebook message exchange, told unindicted co-conspirator #52 that she had a pound of high-quality methamphetamine available to distribute to customers.

Overt Act No. 266:  On July 29, 2021, defendant SHAPRIO, using coded language in a Facebook message exchange, agreed to bring a scale to a meeting with unindicted co-conspirator #42 so that unindicted co-conspirator #42 could weigh out the drugs that he was going to supply to defendant SHAPIRO.

1     Overt Act No. 267:  On July 29, 2021, defendant RAVIN, using

2     coded language in a Facebook message exchange, told defendant

3     CUNNINGHAM that she had a quarter of a pound of methamphetamine

4     available to distribute but could not sell the methamphetamine for

5     less than $450.

6     Overt Act No. 268:  On July 30, 2021, defendant SCHWARTZ, using

7     coded language in a Facebook message exchange, agreed to supply

8     methamphetamine to a drug customer.

9     Overt Act No. 269:  On July 30, 2021, defendant UTSLER, using

10    coded language in a Facebook message exchange, told unindicted co-

11    conspirator #52 that defendant UTSLER had identified a drug customer

12    who was willing to purchase half an ounce of methamphetamine for

13    $140,

14    Overt Act No. 270:  On August 4, 2021, defendant SHAPIRO sent

15    unindicted co-conspirator #42 $300 via Cash App.

16    Overt Act No. 271:  On August 7, 2021, defendant SHAPIRO sent

17    unindicted co-conspirator #42 $250 via Cash App.

18    Overt Act No. 272:  On August 18, 2021, defendant SHAPIRO sent

19    unindicted co-conspirator #42 $500 via Cash App.

20    Overt Act No. 273:  On August 31, 2021, defendant PAYER, using

21    coded language in a Facebook message exchange, asked defendant

22    VILLATORO if he had fentanyl available to distribute and told

23    defendant VILLATORO that he was selling a quarter to a half an ounce

24    of fentanyl to drug customers each day.

25    Overt Act No. 274:  On September 3, 2021, defendant VILLATORO,

26    using coded language in a Facebook message exchange, asked unindicted

27    co-conspirator #40 if he had fentanyl available to distribute.

28

Overt Act No. 275:  On September 7, 2021, defendant VILLATORO, using coded language in a Facebook message exchange, asked to purchase a pound of drugs from unindicted co-conspirator #50 for $1,100.

Overt Act No. 276:  On September 7, 2021, defendant VILLATORO, using coded language in a Facebook message exchange, told unindicted co-conspirator #40 that he had 2,000 M30 oxycodone pills valued at $12,000 available to distribute to customers.

Overt Act No. 277:  On September 7, 2021, defendant VILLATORO, using coded language in a Facebook message exchange, told defendant PAYER that he had 2,000 M30 oxycodone pills valued at $12,000 available to distribute to customers.

Overt Act No. 278:  On September 7, 2021, defendant VILLATORO, using coded language in a Facebook message exchange, told unindicted co-conspirator #50 that he had 2,000 M30 oxycodone pills valued at $12,000 available to distribute to customers.

Overt Act No. 279:  On September 7, 2021, defendant VILLATORO, using coded language in a Facebook message exchange, offered to sell unindicted co-conspirator #45 a pound of methamphetamine for $1,300.

Overt Act No. 280:  On September 10, 2021, unindicted co-conspirator #41 sent defendant SCHULTZ $1,100 via Cash App.

Overt Act No. 281:  On September 11, 2021, defendant JACOBS, using coded language in a Facebook message exchange, told defendant GLUCKMAN that she had high-quality methamphetamine available to distribute and sent defendant GLUCKMAN a photograph of the drugs she possessed, depicted below.



Overt Act No. 282:  On September 13, 2021, defendant VILLATORO, using coded language in a Facebook message exchange, told unindicted co-conspirator #50 that he had high-quality methamphetamine available to distribute.

Overt Act No. 283:  On September 14, 2021, defendant VILLATORO, using coded language in a Facebook message exchange, told defendant PAYER that he had methamphetamine available to distribute.

Overt Act No. 284:  On September 15, 2021, defendant UTSLER, using coded language in a Facebook message exchange, told a drug customer that she had methamphetamine and Xanax available to distribute.

Overt Act No. 285:  On September 15, 2021, unindicted co-conspirator #40, using coded language in a Facebook message exchange,

warned defendant VILLATORO that an individual cooperating with law enforcement was involved in their drug distribution activities.

Overt Act No. 286:  On September 15, 2021, unindicted co-conspirator #41 sent defendant SCHULTZ $400 via Cash App.

Overt Act No. 287:  On September 19, 2021, defendant VILLATORO, using coded language in a Facebook message exchange, told unindicted co-conspirator #50 that he had two pounds of methamphetamine available to distribute.

Overt Act No. 288:  On September 19, 2021, unindicted co-conspirator #50, using coded language in a Facebook message exchange, told defendant VILLATORO that she had GHB available to distribute, depicted in the below photograph.



Overt Act No. 289:  On September 20, 2021, defendant YACOUB possessed a firearm as well as drugs to distribute to customers.

Overt Act No. 290:  On September 20, 2021, defendant VILLATORO, using coded language in a Facebook message exchange, offered to sell unindicted co-conspirator #40 two pounds of drugs for $1,800.

Overt Act No. 291:  On September 26, 2021, unindicted co-conspirator #41 sent defendant SCHULTZ $1,450 via Cash App.

Overt Act No. 292:  On September 29, 2021, defendant SCHWARTZ, using coded language in a Facebook message exchange, agreed to supply heroin to a drug customer.

Overt Act No. 293:  On October 1, 2021, defendant UTSLER, using coded language in a Facebook message exchange, directed to sell a quarter of an ounce of methamphetamine to a drug customer for no less than $60 and no more than $80.

Overt Act No. 294:  On October 3, 2021, unindicted co-conspirator #41 sent defendant SCHULTZ $400 via Cash App.

Overt Act No. 295:  On October 5, 2021, unindicted co-conspirator #41 sent defendant SCHULTZ $600 via Cash App.

Overt Act No. 296:  On October 5, 2021, defendant RAVIN, using coded language in a Facebook message exchange, asked if defendant SCHWARTZ wanted to trade any heroin that he possessed with a quantity of methamphetamine that she possessed.

Overt Act No. 297:  On October 7, 2021, unindicted co-conspirator #41 sent defendant SCHULTZ $200 via Cash App.

Overt Act No. 298:  On October 9, 2021, defendant UTSLER, using coded language in a Facebook message exchange, told a drug customer that she was with defendant CRISWELL and that she had nearly an ounce of methamphetamine available to distribute.

Overt Act No. 299:  On October 10, 2021, defendant LEIMERT, using coded language in a Facebook message exchange, told defendant BINGAMAN that he was able to supply heroin.

Overt Act No. 300:  On October 12, 2021, defendant MULVIHILL sent unindicted co-conspirator #47 $700 via Cash App.

Overt Act No. 301:  On October 13, 2021, unindicted co-conspirator #41 sent defendant SCHULTZ $970 via Cash App.

1      Overt Act No. 302:  On October 15, 2021, defendant VILLATORO,

2  using coded language in a Facebook message exchange, told unindicted

3  co-conspirator #40 that he had fifteen pounds of high-quality drugs

4  to distribute.

5      Overt Act No. 303:  On October 16, 2021, defendant VILLATORO,

6  using coded language in a Facebook message exchange, told defendant

7  PAYER that he had PCP available to distribute to customers.

8      Overt Act No. 304:  On October 22, 2021, defendant SHAPIRO sent

9  defendant B. EKELUND $950 via Cash App.

10      Overt Act No. 305:  On October 30, 2021, defendant LEIMERT,

11  using coded language in a Facebook message exchange, told unindicted

12  co-conspirator #42 that he had money and needed to obtain additional

13  drugs to distribute to customers.

14      Overt Act No. 306:  On November 6, 2021, defendant SCHULTZ sent

15  defendant RAMACHANDRAN $1,000 via Cash App.

16      Overt Act No. 307:  On November 10, 2021, defendant UTSLER,

17  using coded language in a Facebook message exchange, asked a drug

18  source of supply for the price of half a pound of methamphetamine.

19      Overt Act No. 308:  On November 11, 2021, defendant BINGAMAN,

20  using coded language in a Facebook message exchange, told a drug

21  customer that he had high-quality heroin available to distribute.

22      Overt Act No. 309:  On November 12, 2021, defendant SCHWARTZ,

23  using coded language in a Facebook message exchange, ordered half a

24  pound of methamphetamine from unindicted co-conspirator #23.

25      Overt Act No. 310:  On November 13, 2021, defendant SCHWARTZ,

26  using coded language in a Facebook message exchange, complained that

27  the half of pound of methamphetamine that she and unindicted co-

28  conspirator #46 had supplied the previous day was "***way short.***"

1    <u>Overt Act No. 311:</u>  On November 13, 2021, unindicted co-
2  conspirator #23, using coded language in a Facebook message exchange,
3  explained to defendant SCHWARTZ that the scale that unindicted co-
4  conspirator #46 had used to weigh out the half pound of
5  methamphetamine needed to be recalibrated and that unindicted co-
6  conspirator #46 had made an error when he had weighed out the drugs.

7    <u>Overt Act No. 312:</u>  On November 14, 2021, defendant MULVIHILL
8  sent unindicted co-conspirator #47 $1,600 via Cash App.

9    <u>Overt Act No. 313:</u>  On November 21, 2021, defendant WATTS, using
10 coded language in a Facebook message exchange, asked defendant PAYER
11 to direct any heroin customers to defendant WATTS, and defendant
12 WATTS offered to direct any fentanyl customers to defendant PAYER.

13   <u>Overt Act No. 314:</u>  On November 22, 2021, defendant PAYER, using
14 coded language in a Facebook message exchange, told defendant WATTS
15 that he had heroin customers in Northeast Los Angeles that he would
16 send to defendant WATTS.

17   <u>Overt Act No. 315:</u>  On November 22, 2021, defendant WATTS, using
18 coded language in a Facebook message exchange, told defendant PAYER
19 that he sold heroin at a price of $325 a half an ounce and $650 for
20 an ounce.

21   <u>Overt Act No. 316:</u>  On November 22, 2021, defendant SCHULTZ sent
22 defendant RAMACHANDRAN $1,000 via Cash App.

23   <u>Overt Act No. 317:</u>  On November 25, 2021, defendant PAYER, using
24 coded language in a Facebook message exchange, told defendant WATTS
25 that he planned to meet with his drug source of supply.

26   <u>Overt Act No. 318:</u>  On November 26, 2021, defendant B. EKELUND
27 sent defendant RAMACHANDRAN $500 via Cash App.

28

1      <u>Overt Act No. 319:</u>  On December 5, 2021, defendant SLAYTON and

2  unindicted co-conspirator #48, using coded language in a Facebook

3  message exchange, agreed that defendant GLUCKMAN was an "***idiot***" for

4  "***play[ing] games with [B]rand members.***"

5      <u>Overt Act No. 320:</u>  On December 7, 2021, defendant BINGAMAN,

6  using coded language in a Facebook message exchange, ordered fentanyl

7  from defendant SMITH.

8      <u>Overt Act No. 321:</u>  On December 23, 2021, defendant SMITH, using

9  coded language in a Facebook message exchange, sent defendant

10  GLUCKMAN photographs of high-end stolen merchandise that he had

11  available to sell and told defendant GLUCKMAN that he had obtained

12  the items from a "***smash-and-grab***" at a shopping center in Canoga

13  Park, California.

14      <u>Overt Act No. 322:</u>  On December 23, 2021, defendant SMITH, using

15  coded language in a Facebook message exchange, asked defendant

16  GLUCKMAN to provide him with a stolen credit card number so that he

17  could obtain a rental car.

18      <u>Overt Act No. 323:</u>  On December 25, 2021, defendant SCHWARTZ,

19  using coded language in a Facebook message exchange, told unindicted

20  co-conspirator #23 that he had a 9mm firearm, depicted below,

21  available to sell to her or unindicted co-conspirator #46.

22

23

24

25  

26

27

28

1    Overt Act No. 324:  On December 26, 2021, defendant BECKWITH,

2  using coded language in a Facebook message exchange, told defendant

3  PAYER that she was in Hemet, California selling fentanyl to drug

4  customers.

5    Overt Act No. 325:  On December 26, 2021, defendant B. EKELUND

6  sent defendant RAMACHANDRAN $500 via Cash App.

7    Overt Act No. 326:  On December 27, 2021, defendant BINGAMAN,

8  using coded language in a Facebook message exchange, told defendant

9  BECKWITH that he was able to obtain ounces of fentanyl for $700 to

10  $800 an ounce.

11    Overt Act No. 327:  On December 27, 2021, defendant BECKWITH,

12  using coded language in a Facebook message exchange, told defendant

13  BINGAMAN that drug customers in Hemet, California were paying $120 a

14  gram for fentanyl and that she and defendant BINGAMAN could sell one

15  to two ounces of fentanyl a day if they worked together.

16    Overt Act No. 328:  On December 31, 2021, defendant MULVIHILL

17  sent unindicted co-conspirator #47 $900 via Cash App.

18    Overt Act No. 329:  On December 31, 2021, defendant SCHWARTZ,

19  using coded language in a Facebook message exchange, told unindicted

20  co-conspirator #23 that he had given unindicted co-conspirator #23's

21  name to a drug customer as the drug customer needed a new source of

22  supply.

23    Overt Act No. 330:  On January 1, 2022, defendant MULVIHILL sent

24  unindicted co-conspirator #47 $100 via Cash App.

25    Overt Act No. 331:  On January 1, 2022, unindicted co-

26  conspirator #47 sent defendant MULVIHILL $250 via Cash App.

27    Overt Act No. 332:  On January 2, 2022, defendant MULVIHILL sent

28  unindicted co-conspirator #47 $150 via Cash App.

1    <u>Overt Act No. 333:</u>  On January 3, 2022, defendant MULVIHILL sent

2    unindicted co-conspirator #47 $500 via Cash App.

3    <u>Overt Act No. 334:</u>  On January 4, 2022, defendant PAYER, using

4    coded language in a Facebook message exchange, told unindicted co-

5    conspirator #48 that he had methamphetamine and fentanyl available to

6    distribute to customers.

7    <u>Overt Act No. 335:</u>  On January 6, 2022, defendant BINGAMAN,

8    using coded language in a Facebook message exchange, told defendant

9    BREWER that he had access to oxycodone to distribute to drug

10   customers.

11   <u>Overt Act No. 336:</u>  On January 6, 2022, unindicted co-

12   conspirator #41 sent defendant SCHULTZ $1,200 via Cash App.

13   <u>Overt Act No. 337:</u>  On January 7, 2022, defendant CRAIG, using

14   coded language in a Facebook message exchange, agreed to supply

15   heroin to defendant SILVERBERG.

16   <u>Overt Act No. 338:</u>  On January 7, 2022, defendant WATSTEIN,

17   using coded language in a Facebook message exchange, told defendant

18   CRAIG that he had heroin available to distribute.

19   <u>Overt Act No. 339:</u>  On January 9, 2022, defendant UTSLER, using

20   coded language in a Facebook message exchange, told unindicted co-

21   conspirator #49 that he could use her Bank of America bank account to

22   cash counterfeit checks that he printed.

23   <u>Overt Act No. 340:</u>  On January 10, 2022, defendant LEIMERT

24   possessed approximately 109.24 grams of methamphetamine and 18.46

25   grams of heroin to distribute to drug customers in a vehicle that he

26   was driving in Palmdale, California.

27   <u>Overt Act No. 341:</u>  On January 11, 2022, defendant SMITH, using

28   coded language in a Facebook message exchange, asked defendant

GLUCKMAN to help him generate money using stolen business bank account numbers.

Overt Act No. 342:  On January 18, 2022, unindicted co-conspirator #41 sent defendant SCHULTZ $500 via Cash App.

Overt Act No. 343:  On January 24, 2022, defendant BECKWITH, using coded language in a Facebook message exchange, sent a drug customer a picture of purple fentanyl that she had available to distribute, depicted below:



Overt Act No. 344:  On January 31, 2022, defendant UTSLER possessed a knife, a loaded firearm, and methamphetamine while driving a vehicle in Northridge, California.

Overt Act No. 345:  On February 1, 2022, defendant SILVERBERG, using coded language in a Facebook message exchange, told defendant CRAIG that he had methamphetamine available to distribute.

Overt Act No. 346:  On February 3, 2022, defendant EKLUND possessed approximately 137.8 grams of methamphetamine and 25.1 grams of heroin, as well as $1,169 in cash and a fraudulent California

identification card in a vehicle that he was driving in Beverly Hills, California.

Overt Act No. 347: On February 6, 2022, defendant GLUCKMAN, using coded language in a Facebook message exchange, asked defendant JACOBS the current price of an ounce of fentanyl.

Overt Act No. 348: On February 8, 2022, unindicted co-conspirator #41 sent defendant SCHULTZ $800 via Cash App.

Overt Act No. 349: On February 26, 2022, unindicted co-conspirator #41 sent defendant SCHULTZ $300 via Cash App.

Overt Act No. 350: On February 28, 2022, defendant PAYER, using coded language in a Facebook message exchange, told unindicted co-conspirator #48 that he had access to fentanyl and methamphetamine to distribute to drug customers.

Overt Act No. 351: On March 4, 2022, defendant PAYER, using coded language in a Facebook message exchange, ordered methamphetamine to distribute to customers from defendant VILLATORO.

Overt Act No. 352: On March 7, 2022, defendant WINTERS, using coded language in a Facebook message exchange, asked defendant LEIMERT to supply him with heroin after defendant LEIMERT obtained a quantity of heroin from a source of supply.

Overt Act No. 353: On March 9, 2022, defendant WATTS, using coded language in a Facebook message exchange, told defendant PAYER that he had high-quality methamphetamine available to distribute to customers.

Overt Act No. 354: On March 14, 2022, unindicted co-conspirator #41 sent defendant SCHULTZ $1,500 via Cash App.

Overt Act No. 355: On March 21, 2022, defendant PAYER, using coded language in a Facebook message exchange, told defendant WATTS

that defendant SILVERBERG had high quality methamphetamine available to distribute to drug customers.

Overt Act No. 356:  On March 21, 2022, defendant PAYER, using coded language in a Facebook message exchange, told defendant WATTS that defendant CUNNINGHAM regularly possessed kilograms of fentanyl to distribute to customers.

Overt Act No. 357:  On March 22, 2022, defendant VILLATORO, using coded language in a Facebook message exchange, told defendant RAVIN that he had taken seven ounces of methamphetamine and seven grams of heroin from a drug dealer to satisfy a drug debt and offered to give defendant RAVIN the seven grams of heroin.

Overt Act No. 358:  On March 22, 2022, defendant VILLATORO, using coded language in a Facebook message exchange, told defendant PAYER that he had heroin and methamphetamine available to distribute.

Overt Act No. 359:  On March 22, 2022, defendant WATTS, using coded language in a Facebook message exchange, asked defendant PAYER to "**front**" him a quantity of fentanyl to distribute to drug customers.

Overt Act No. 360:  On March 23, 2022, defendant YACOUB possessed approximately 20.72 grams of fentanyl, 12.1 grams of heroin, and 45.4 grams of methamphetamine to distribute to customers, as well as two digital scales, 54 rounds of 9mm ammunition, and $1,019 in cash, in his residence and vehicle in Littlerock, California.

Overt Act No. 361:  On March 30, 2022, defendant GLUCKMAN possessed with intent to distribute approximately 243 grams of methamphetamine in a vehicle in Henderson, Nevada, depicted in the photograph below.



Overt Act No. 362:  On March 31, 2022, defendant GLUCKMAN, using coded language in a Facebook message exchange, told unindicted co-conspirator #41 that law enforcement officers in Henderson, Nevada had obtained a search warrant for defendant GLUCKMAN's hotel room and vehicle, and that he needed to obtain a hotel room immediately to avoid law enforcement.

Overt Act No. 363:  On April 1, 2022, defendant WATSTEIN, using coded language in a Facebook message exchange, told defendant RAVIN that he was able to supply her with an ounce of methamphetamine.

Overt Act No. 364:  On April 1, 2022, defendant WATSTEIN, using coded language in a Facebook message exchange, warned defendant RAVIN that unindicted co-conspirator #45 was facing a lengthy prison sentence for engaging in drug distribution activities via Facebook Messenger.

<u>Overt Act No. 365:</u>  On April 15, 2022, defendant WATSTEIN, using coded language in a Facebook message exchange, agreed to supply defendant RAVIN with heroin.

<u>Overt Act No. 366:</u>  On April 19, 2022, defendant SHAPIRO possessed with intent to distribute methamphetamine in Hidden Hills, California.

<u>Overt Act No. 367:</u>  On April 19, 2022, defendant SMITH, using coded language in a Facebook message exchange, told defendant GLUCKMAN that he would be able to obtain four ounces of fentanyl for $1,600 from a source of supply.

<u>Overt Act No. 368:</u>  On May 11, 2022, defendant EKLUND possessed approximately 190.7 grams of fentanyl and 111.7 grams of methamphetamine to distribute to drug customers in his residence in Panorama City, California.

<u>Overt Act No. 369:</u>  On May 14, 2022, defendant RODNEY, using coded language in a text message exchange, arranged to obtain a pound of fentanyl from a drug source of supply.

<u>Overt Act No. 370:</u>  On May 18, 2022, defendant RODNEY, using coded language in a text message exchange, agreed to supply four ounces of drugs to a drug customer.

<u>Overt Act No. 371:</u>  On May 24, 2022, defendant RODNEY possessed approximately 1,165.23 grams fentanyl and 83.02 grams of methamphetamine to distribute to drug customers in his residence in Los Angeles, California.

<u>Overt Act No. 372:</u>  On May 30, 2022, unindicted co-conspirator #48, using coded language in a Facebook message exchange, told defendant BREWER that defendant PAYER was planning to rob a "***craigslist drug dealer.***"

Overt Act No. 373:  On June 6, 2022, defendant BAKER sent defendant MULVIHILL $300 via Cash App.

Overt Act No. 374:  On June 7, 2022, defendant BINGAMAN asked defendant BECKWITH to supply him with fentanyl.

Overt Act No. 375:  On June 9, 2022, defendant WATSTEIN agreed to supply defendant RAVIN with heroin.

Overt Act No. 376:  On June 13, 2022, defendant SMITH, using coded language in a Facebook message exchange, agreed to supply methamphetamine to unindicted co-conspirator #48.

Overt Act No. 377:  On June 21, 2022, defendant BAKER sent defendant MULVIHILL $300 via Cash App.

Overt Act No. 378:  On June 26, 2022, defendant BAKER sent defendant MULVIHILL $1,100 via Cash App.

Overt Act No. 379:  On June 28, 2022, defendant BAKER sent defendant MULVIHILL $350 via Cash App.

Overt Act No. 380:  On July 1, 2022, defendant BINGAMAN, using coded language in a Facebook message exchange, told defendant BECKWITH that he was obtaining a quarter of an ounce of fentanyl from a drug source of supply for defendant BINGAMAN and defendant BECKWITH to sell to drug customers.

Overt Act No. 381:  On July 1, 2022, defendant BAKER sent defendant MULVIHILL $1,200 via Cash App.

Overt Act No. 382:  On July 1, 2022, defendant SMITH, using coded language in a Facebook message exchange, agreed to supply a quarter of a pound of methamphetamine as well as an ounce of fentanyl to defendant SILVERBERG.

Overt Act No. 383:  On July 2, 2022, defendant SMITH, using coded language in a Facebook message exchange, told defendant

BINGAMAN that he had access to high-quality fentanyl and methamphetamine.

Overt Act No. 384:  On July 3, 2022, defendant BAKER sent defendant MULVIHILL $1,330 via Cash App.

Overt Act No. 385:  On July 9, 2022, defendant BAKER sent defendant MULVIHILL $500 via Cash App.

Overt Act No. 386:  On July 16, 2022, defendant PAYER, using coded language in a Facebook message exchange, told defendant BECKWITH that unindicted co-conspirator #48's residence had been "raided" by law enforcement.

Overt Act No. 387:  On July 16, 2022, defendant BAKER sent defendant MULVIHILL $900 via Cash App.

Overt Act No. 388:  On July 23, 2022, defendant BAKER sent defendant MULVIHILL $350 via Cash App.

Overt Act No. 389:  On July 24, 2022, defendant BAKER sent defendant MULVIHILL $200 via Cash App.

Overt Act No. 390:  On July 25, 2022, defendant BAKER sent defendant MULVIHILL $1,000 via Cash App.

Overt Act No. 391:  On August 1, 2022, defendant BAKER sent defendant MULVIHILL $300 via Cash App.

Overt Act No. 392:  On August 2, 2022, defendant BAKER sent defendant MULVIHILL $380 via Cash App.

Overt Act No. 393:  On August 8, 2022, defendant BAKER sent defendant MULVIHILL $490 via Cash App.

Overt Act No. 394:  On August 10, 2022, defendant RAMACHANDRAN possessed methamphetamine to distribute to customers and a loaded firearm while driving a stolen motorcycle in Los Angeles, California.

Overt Act No. 395:  On August 18, 2022, defendant BENEDICT, using coded language in a Facebook message exchange, agreed to supply drugs to a customer.

Overt Act No. 396:  On August 23, 2022, defendant MUNOZ, using coded language in a Facebook message exchange, agreed to supply heroin to defendant IBARRA.

Overt Act No. 397:  On August 26, 2022, defendant BAKER sent defendant MULVIHILL $250 via Cash App.

Overt Act No. 398:  On August 27, 2022, defendant BAKER sent defendant MULVIHILL $800 via Cash App.

Overt Act No. 399:  On August 29, 2022, a drug customer, using coded language in a Facebook message exchange, ordered half an ounce of drugs from defendant BENEDICT.

Overt Act No. 400:  On August 30, 2022, defendant BAKER sent defendant MULVIHILL $100 via Cash App.

Overt Act No. 401:  On September 1, 2022, defendant IBARRA, using coded language in a Facebook message exchange, asked defendant MUNOZ to supply heroin and Xanax.

Overt Act No. 402:  On September 2, 2022, defendant LEIMERT, using coded language in a Facebook message exchange, told defendant WINTERS that he had obtain heroin from a drug source of supply.

Overt Act No. 403:  On September 4, 2022, defendant PAYER, using coded language in a Facebook message exchange, told defendant BECKWITH that he had two ounces of methamphetamine available to distribute.

Overt Act No. 404:  On September 18, 2022, defendant BAKER sent defendant MULVIHILL $500 via Cash App.

91

1      Overt Act No. 405:  On September 24, 2022, defendant BAKER sent
2  defendant MULVIHILL $550 via Cash App.

3      Overt Act No. 406:  On October 11, 2022, defendant BAKER sent
4  defendant MULVIHILL $470 via Cash App.

5      Overt Act No. 407:  On October 14, 2022, defendant BAKER sent
6  defendant MULVIHILL $200 via Cash App.

7      Overt Act No. 408:  On October 24, 2022, defendant BAKER sent
8  defendant MULVIHILL $250 via Cash App.

9      Overt Act No. 409:  On October 28, 2022, defendant BAKER sent
10  defendant MULVIHILL $1,000 via Cash App.

11      Overt Act No. 410:  On November 14, 2022, defendant MULVIHILL
12  possessed with intent to distribute approximately 51 grams of
13  methamphetamine, 19 grams of PCP, and 1,511 grams of fentanyl in a
14  vehicle that he was driving in Los Angeles, California.

15      Overt Act No. 411:  On November 16, 2022, defendant BAKER sent
16  defendant MULVIHILL $700 via Cash App.

17      Overt Act No. 412:  On November 30, 2022, unindicted co-
18  conspirator #51, using coded language in a Facebook message exchange,
19  told defendant WATSTEIN that defendant FRANCIS had been arrested.

20      Overt Act No. 413:  On December 2, 2022, defendant MACDONALD,
21  using coded language in a Facebook message exchange, told defendant
22  CHATTERTON that he had a drug source of supply for hydrocodone.

23      Overt Act No. 414:  On December 3, 2022, defendant MACDONALD,
24  using coded language in a Facebook message exchange, instructed
25  defendant CHAN to send him $200 so that defendant MACDONALD could
26  obtain additional heroin to distribute.

27      Overt Act No. 415:  On December 5, 2022, defendant MACDONALD,
28  using coded language in a Facebook message exchange, told defendant

CHAN that he needed to obtain additional drugs to distribute because his customers were having drug withdrawal symptoms.

Overt Act No. 416:  On December 17, 2022, defendant BAKER sent defendant MULVIHILL $600 via Cash App.

Overt Act No. 417:  On December 20, 2022, defendant BECKWITH, using coded language in a Facebook message exchange, told defendant BINGAMAN that she possessed high-quality crack cocaine as well as ounces of fentanyl to distribute to drug customers.

Overt Act No. 418:  On December 20, 2022, defendant BAKER sent defendant MULVIHILL $230 via Cash App.

Overt Act No. 419:  On January 3, 2023, defendant BENEDICT, using coded language in a Facebook message exchange, agreed to supply fentanyl to a drug customer.

Overt Act No. 420:  On January 3, 2023, defendant BENEDICT, using coded language in a Facebook message exchange, told a drug customer that the price of an ounce of high-quality methamphetamine was $150.

Overt Act No. 421:  On January 6, 2023, defendant BENEDICT, using coded language in a Facebook message exchange, told a drug customer that she had fentanyl available to distribute.

Overt Act No. 422:  On January 7, 2023, defendant BAKER sent defendant MULVIHILL $365 via Cash App.

Overt Act No. 423:  On January 8, 2023, defendant BAKER sent defendant MULVIHILL $450 via Cash App.

Overt Act No. 424:  On January 9, 2023, defendant BENEDICT, using coded language in a Facebook message exchange, agreed to split the price of an ounce of drugs that she and a drug customer were going to obtain from a drug source of supply.

1    <u>Overt Act No. 425:</u>  On January 10, 2023, defendant BENEDICT,
2 using coded language in a Facebook message exchange, agreed to supply
3 heroin to defendant SCHWARTZ.

4    <u>Overt Act No. 426:</u>  On January 10, 2023, defendant IBARRA, using
5 coded language in a Facebook message exchange, told defendant
6 BENEDICT that she had heard that unindicted co-conspirator #34 "***was***
7 ***in big trouble With the brand.***"

8    <u>Overt Act No. 427:</u>  On January 16, 2023, defendant BENEDICT,
9 using coded language in a Facebook message exchange, told defendant
10 SCHWARTZ that she had heroin available to distribute.

11    <u>Overt Act No. 428:</u>  On January 18, 2023, defendant GLUCKMAN
12 possessed stolen personal identifying information belonging to more
13 than 50 victims in a vehicle he was driving in Los Angeles,
14 California.

15    <u>Overt Act No. 429:</u>  On January 23, 2023, defendant BAKER sent
16 defendant MULVIHILL $500 via Cash App.

17    <u>Overt Act No. 430:</u>  On January 26, 2023, defendant BAKER sent
18 defendant MULVIHILL $800 via Cash App.

19    <u>Overt Act No. 431:</u>  On January 31, 2023, defendant BAKER sent
20 defendant MULVIHILL $1,083 via Cash App.

21    <u>Overt Act No. 432:</u>  On January 31, 2023, defendant LEIMERT,
22 using coded language in a Facebook message exchange, ordered a
23 quarter of an ounce of methamphetamine from defendant WATSTEIN.

24    <u>Overt Act No. 433:</u>  On February 9, 2023, defendant BAKER sent
25 defendant MULVIHILL $200 via Cash App.

26    <u>Overt Act No. 434:</u>  On February 9, 2023, defendant MULVIHILL
27 possessed with intent to distribute approximately 5.3 grams of

28

cocaine base, 743.6 grams of fentanyl, and 1,999 grams of methamphetamine in a hotel room in Los Angeles, California.

Overt Act No. 435:  On February 10, 2023, defendant BECKWITH, using coded language in a Facebook message exchange, told defendant YACOUB that she was selling high-quality fentanyl.

Overt Act No. 436:  On February 15, 2023, defendant BECKWITH, using coded language in a Facebook message exchange, sent defendant PAYER a photograph of purple fentanyl that she and defendant MACDONALD would have access to.

Overt Act No. 437:  On February 15, 2023, defendant PAYER, using coded language in a Facebook message exchange, told defendant BECKWITH that he needed an ounce of fentanyl.

Overt Act No. 438:  On February 21, 2023, defendant MULVIHILL possessed with intent to distribute approximately 18.5 grams of heroin, 304 grams of fentanyl, and 172 grams of methamphetamine in a vehicle in Los Angeles, California.

Overt Act No. 439:  On February 27, 2023, defendant RILEY sold approximately 195.6 grams of methamphetamine and 25.82 grams of heroin to a Confidential Informant ("CI").

Overt Act No. 440:  On March 3, 2023, defendant HILL sent defendant VENNUM $230 via Cash App.

Overt Act No. 441:  On March 27, 2023, defendant RILEY sold approximately 214.1 grams of methamphetamine and 26.01 grams of heroin to a CI.

Overt Act No. 442:  On April 4, 2023, defendant BAKER sent defendant MULVIHILL $700 via Cash App.

Overt Act No. 443:  On April 13, 2023, defendant RILEY possessed with intent to distribute approximately one pound of methamphetamine in a vehicle that he was driving.

Overt Act No. 444:  On April 13, 2023, defendant RILEY possessed with intent to distribute methamphetamine, heroin, and fentanyl, as well as firearms, ammunition, body armor, pay/owe sheets, and a digital scale, in his residence in Van Nuys, California.

Overt Act No. 445:  On April 15, 2023, defendant BAKER sent defendant MULVIHILL $700 via Cash App.

Overt Act No. 446:  On April 29, 2023, defendant LEIMERT, using coded language in a Facebook message exchange, told unindicted co-conspirator #23 that he was going to meet with a drug source of supply to obtain an additional quantity of drugs.

Overt Act No. 447:  On May 8, 2023, defendant YACOUB, using coded language in a Facebook message exchange, told defendant BECKWITH that he had large quantities of heroin and fentanyl available to distribute to customers.

Overt Act No. 448:  On May 9, 2023, defendant IBARRA, using coded language in a Facebook message exchange, agreed to supply a quarter of an ounce of heroin to unindicted co-conspirator #23.

Overt Act No. 449:  On May 15, 2023, defendant YACOUB, using coded language in a Facebook message exchange, told defendant IBARRA that he had heroin available to distribute.

Overt Act No. 450:  On May 15, 2023, defendant PAYER, using coded language in a Facebook message exchange, told defendant BECKWITH that he had high-quality fentanyl available to distribute customers, and that the fentanyl "***is gonna drop people [because] it's fucking fire.***"

1   Overt Act No. 451:  On May 16, 2023, unindicted co-conspirator
2   #23, using coded language in a Facebook message exchange, told
3   defendant IBARRA that she was obtaining heroin from a drug source of
4   supply.

5   Overt Act No. 452:  On May 17, 2023, defendant IBARRA, using
6   coded language in a Facebook message exchange, agreed to supply
7   unindicted co-conspirator #23 with methamphetamine.

8   Overt Act No. 453:  On May 17, 2023, unindicted co-conspirator
9   #33 sent defendant VENNUM $1,000 via Cash App and stated that the
10  money was from unindicted co-conspirator #1.

11  Overt Act No. 454:  On May 27, 2023, defendant CHAN, using coded
12  language in a Facebook message exchange, told defendant MACDONALD
13  that he had identified a drug customer who was interested in
14  purchasing $2,500 of fentanyl.

15  Overt Act No. 455:  On June 8, 2023, unindicted co-conspirator
16  #23, using coded language in a Facebook message exchange, asked
17  defendant IBARRA to supply her with methamphetamine.

18  Overt Act No. 456:  On June 10, 2023, defendant BECKWITH, using
19  coded language in a Facebook message exchange, told defendant PAYER
20  that she was waiting for her drug source of supply to deliver cocaine
21  that she was planning to use to make crack cocaine.

22  Overt Act No. 457:  On June 16, 2023, defendant BAKER sent
23  defendant MULVIHILL $200 via Cash App.

24  Overt Act No. 458:  On June 19, 2023, defendant VENNUM sent
25  defendant P. EKELUND $500 via Cash App and indicated that the money
26  was "*from L.*"

27

28

Overt Act No. 459:  On June 25, 2023, defendant YACOUB, using coded language in a Facebook message exchange, told defendant IBARRA that he had heroin available to distribute.

Overt Act No. 460:  On June 28, 2023, defendant VITANZA sent defendant POWERS $450 via Cash App.

Overt Act No. 461:  On June 30, 2023, defendant CHAN agreed to supply defendant BECKWITH with fentanyl.

Overt Act No. 462:  On July 6, 2023, defendant YACOUB, using coded language in a Facebook message exchange, told defendant JACOBS that he had high-quality fentanyl available to distribute to customers.

Overt Act No. 463:  On July 6, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, complained to defendant CHAN that the price of methamphetamine was likely going to rise to $3,000 a pound.

Overt Act No. 464:  On July 8, 2023, unindicted co-conspirator #2, using coded language in a recorded telephone call, used a contraband cellular telephone to instruct defendant WILLS to contact him as needed.

Overt Act No. 465:  On July 8, 2023, defendant PICHIE, using coded language in a recorded telephone call, warned defendant WILLS to exercise caution when speaking to unindicted co-conspirator #2 via telephone as defendant PICHIE suspected that their telephones were being intercepted by law enforcement.

Overt Act No. 466:  On July 9, 2023, defendant WILLS, using coded language in a recorded telephone call, told defendant PICHIE that a Mexican Mafia member had been murdered, and that individuals

associated with that Mexican Mafia member would likely soon be murdered as well.

Overt Act No. 467:  On July 9, 2023, defendant P. EKELUND sent defendant VENNUM $500 via Cash App.

Overt Act No. 468:  On July 9, 2023, defendants BREWER and WILLS, using coded language in a recorded telephone call, discussed the fact that a Mexican Mafia member had been murdered, and speculated about the identity of the individual who would be adopting that Mexican Mafia member's responsibilities now that he was dead.

Overt Act No. 469:  On July 9, 2023, defendant PICHIE, using coded language in a recorded telephone call, told defendant WILLS that individuals associated with M.T. had previously robbed one of defendant HAVILAND's marijuana grow houses, and that "**white boys,**" with "**pistols and shit**" retaliated by engaging in an armed confrontation with the individuals.

Overt Act No. 470:  On July 12, 2023, defendant BECKWITH, using coded language in a Facebook message exchange, told defendant YACOUB that a drug customer needed to obtain fentanyl.

Overt Act No. 471:  On July 13, 2023, defendant VENNUM sent defendant P. EKELUND $300 via Cash App.

Overt Act No. 472:  On July 20, 2023, defendant RILEY possessed with intent to distribute approximately 38 grams of fentanyl, 53.9 grams of methamphetamine, 185.3 grams of heroin, and 114.14 grams of Alprazolam, as well as loaded firearm, a digital scale, and more than $17,000 in cash, in a vehicle that he was driving in Van Nuys, California.

Overt Act No. 473:  On July 21, 2023, defendant WILLS, using coded language in a recorded telephone call, told defendant PICHIE

that he had collected $1,500 from [S.H.], and agreed to meet with defendant PICHIE "*in person*" the next day to determine if the money was designated for defendant PICHIE or another individual.

Overt Act No. 474:  On July 30, 2023, defendant PICHIE, using coded language in a recorded telephone call, told defendant WILLS that an inmate at Pelican Bay State Prison would contact defendant WILLS to "*relay a message*" regarding "*riots at Pelican Bay*" that involved "*the whites and the southerners*" stabbing each other, so that defendant PICHIE could learn the details regarding who started the conflict and share the information with other AB members who were in custody, including those with access to a contraband cellular telephone.

Overt Act No. 475:  On August 1, 2023, defendant W. POLLAY sent defendant MEJIA $1,000 via Cash App.

Overt Act No. 476:  On August 1, 2023, defendant BAKER sent defendant MULVIHILL $399 via Cash App.

Overt Act No. 477:  On August 2, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, sent defendant Chan a photograph of a sample of drugs that he was able to obtain from a source of supply, depicted below.



Overt Act No. 478:  On August 3, 2023, defendant CHAN, using coded language in a Facebook message exchange, told defendant UNGAMRUNG that he had mailed her a package that contained methamphetamine and at least five grams fentanyl to an address in North Carolina and sent her a photograph of the package.

Overt Act No. 479:  On August 6, 2023, defendant BAKER sent defendant MULVIHILL $1,278 via Cash App.

Overt Act No. 480:  On August 6, 2023, defendant FREEMAN, using coded language in a Facebook message exchange, told defendant MACDONALD that he was sending defendant MACDONALD $200 in connection with their drug distribution activities.

Overt Act No. 481:  On August 7, 2023, defendant BAKER sent defendant MULVIHILL $194 via Cash App.

Overt Act No. 482:  On August 8, 2023, defendant W. POLLAY sent defendant MEJIA $1,200 via Cash App.

Overt Act No. 483:  On August 9, 2023, defendant BAKER sent defendant MULVIHILL $580 via Cash App.

Overt Act No. 484:  On August 12, 2023, defendant BAKER sent defendant MULVIHILL $125 via Cash App.

Overt Act No. 485:  On August 12, 2023, defendant IBARRA, using coded language in a recorded telephone call, agreed to supply an ounce of methamphetamine to defendant WILLS.

Overt Act No. 486:  On August 15, 2023, defendant BAKER sent defendant MULVIHILL $873 via Cash App.

Overt Act No. 487:  On August 15, 2023, defendant PICHIE, using coded language in a recorded telephone call, obtained an update from an inmate at Pelican Bay State Prison about the current relationship

between inmates aligned with the AB and inmates aligned with the Mexican Mafia at the custodial facility.

Overt Act No. 488:  On August 16, 2023, defendant FREEMAN sent defendant CHATTERTON $200 via Cash App.

Overt Act No. 489:  On August 16, 2023, defendant PICHIE, using coded language in a recorded telephone call, contacted defendant VITANZA and identified himself as a fellow AB member with the moniker *"Sinister."*

Overt Act No. 490:  On August 16, 2023, defendant PICHIE, using coded language in a recorded telephone call, reassured unindicted co-conspirator #4 that, despite the fact that defendant PICHIE had to wear an ankle monitor, he was able to assist the AB, including by sharing information with AB members in custody who had access to contraband cellular telephones.

Overt Act No. 491:  On August 16, 2023, unindicted co-conspirator #4, using coded language in a recorded telephone call, identified for defendant PICHIE the individuals that unindicted co-conspirator #5 wanted murdered.

Overt Act No. 492:  On August 16, 2023, defendant PICHIE, using coded language in a recorded telephone call, complained to defendant VITANZA that unindicted co-conspirator #4 was the only AB member who contacted defendant PICHIE directly via a contraband cellular telephone without using Signal or Telegram to communicate over the telephone.

Overt Act No. 493:  On August 16, 2023, defendant PICHIE, using coded language in a recorded telephone call, told defendant VITANZA that he was introduced to defendant WILLS when he was in prison with unindicted co-conspirator #24 and that defendant WILLS had been

managing money for defendant PICHIE and doing other work on his behalf for a long time.

Overt Act No. 494:   On August 16, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant PICHIE that defendant CHOTARD was "*helpful,*" "*trustworthy,*" and "*good with a gun and a pencil.*"

Overt Act No. 495:   On August 17, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, told defendant CHAN that he was selling fentanyl for $300 a half an ounce and $170 for a quarter of an ounce, and included the below photograph:



Overt Act No. 496:   On August 17, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, told defendant CHAN that he had methamphetamine and fentanyl available to distribute and instructed defendant Chan to meet him at the drug stash house located at 9400 Valjean Avenue in North Hills, California.

Overt Act No. 497:   On August 19, 2023, defendant VENNUM, using coded language in a recorded telephone call, told defendant WILLS that he was at the residence located on Tyrone Avenue in Van Nuys,

California and that unindicted co-conspirator #1 had instructed him to contact defendant WILLS.

Overt Act No. 498:  On August 20, 2023, defendant W. POLLAY sent defendant MEJIA $1,610 via Cash App.

Overt Act No. 499:  On August 21, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, told defendant FREEMAN that a drug source of supply would sell half an ounce of fentanyl for $600.

Overt Act No. 500:  On August 22, 2023, defendant BAKER sent defendant MULVIHILL $300 via Cash App.

Overt Act No. 501:  On August 23, 2023, defendant WILLS, using coded language in a recorded telephone call, and unindicted co-conspirator #38 discussed the fact that defendant RILEY had recently been arrested with guns and a large quantity of drugs.

Overt Act No. 502:  On August 24, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, agreed to obtain $250 worth of drugs from a source of supply for defendant FREEMAN and would collect the money from defendant FREEMAN that evening or the following morning.

Overt Act No. 503:  On August 25, 2023, defendant MACDOANLD, using coded language in a Facebook message exchange, told defendant MORENO that he presently had $1,700 and needed an additional $300 to obtain a quarter pound of drugs.

Overt Act No. 504:  On August 25, 2023, defendant MACDOANLD, using coded language in a Facebook message exchange, told defendant MORENO that he was working with three other individuals in addition to defendant Moreno to distribute drugs.

Overt Act No. 505:  On August 25, 2023, defendant MACDONALD sent defendant Moreno a payment request for $300, depicted in the image below, in connection with an upcoming drug transaction.



Overt Act No. 506:  On August 25, 2023, defendants PICHIE and VITANZA, using coded language in a recorded telephone call, discussed defendant VITANZA's fentanyl distribution activities.

Overt Act No. 507:  On August 25, 2023, defendant PICHIE, using coded language in a recorded telephone call, told defendant VENNUM that unindicted co-conspirator #1 wanted defendant PICHIE to speak with defendant VENNUM and that he would contact defendant VENNUM using Signal.

Overt Act No. 508:  On August 25, 2023, defendant VENNUM, using coded language in recorded telephone call, told defendant PICHIE that he was going to retrieve "*30*" from his storage unit to deliver to defendants PICHIE and VITANZA to store in a "*low-key spot.*"

1       <u>Overt Act No. 509:</u>  On August 25, 2023, defendant PICHIE, using

2   coded language in a recorded telephone call, told defendant WILLS

3   that he needed help with "something important," and instructed

4   defendant WILLS to meet him and defendant VITANZA at defendant

5   WILLS's storage unit.

6       <u>Overt Act No. 510:</u>  On August 25, 2023, defendant WILLS, using

7   coded language in a recorded telephone call, agreed to keep the item

8   that defendants PICHIE and VITANZA obtained from defendant VENNUM in

9   his residence and transfer it to his storage unit the next day.

10      <u>Overt Act No. 511:</u>  On August 26, 2023, defendant BAKER sent

11  defendant MULVIHILL $100 via Cash App.

12      <u>Overt Act No. 512:</u>  On August 28, 2023, defendant YACOUB, using

13  coded language in a Facebook message exchange, told defendant

14  BECKWITH that he had obtained two ounces of fentanyl to distribute to

15  drug customers.

16      <u>Overt Act No. 513:</u>  On September 1, 2023, defendant W. POLLAY

17  sent defendant MEJIA $300 via Cash App.

18      <u>Overt Act No. 514:</u>  On September 3, 2023, defendant VITANZA sent

19  defendant POWERS $400 via Cash App.

20      <u>Overt Act No. 515:</u>  On September 3, 2023, defendant MACDONALD,

21  using coded language in a Facebook message exchange, told defendant

22  FREEMAN that he was able to obtain drugs to distribute from a source

23  of supply at a discounted price.

24      <u>Overt Act No. 516:</u>  On September 3, 2023, defendant MACDONALD,

25  using coded language in a Facebook message exchange, agreed to sell

26  defendant FREEMAN 5.5 grams of drugs for at a discounted price.

27      <u>Overt Act No. 517:</u>  On September 5, 2023, defendant BAKER sent

28  defendant MULVIHILL $395 via Cash App.

1     <u>Overt Act No. 518:</u>  On September 7, 2023, defendant BAKER sent

2  defendant MULVIHILL $200 via Cash App.

3     <u>Overt Act No. 519:</u>  On September 8, 2023, defendant PICHIE,

4  using coded language in a recorded telephone call, reminded defendant

5  WILLS to only communicate regarding criminal activity via Signal and

6  warned defendant WILLS that unindicted co-conspirator #2 had gotten

7  "snapped up in a RICO" and that his contraband cellular telephone had

8  recently been seized by law enforcement.

9     <u>Overt Act No. 520:</u>  On September 9, 2023, defendant BAKER sent

10  defendant MULVIHILL $100 via Cash App.

11     <u>Overt Act No. 521:</u>  On September 9, 2023, defendant MACDONALD,

12  using coded language in a Facebook message exchange, displayed a

13  photograph of drugs that he had available to distribute and told

14  defendant CHAN that he was located at the drug stash house located at

15  9400 Valjean Avenue in North Hills, California.

16     <u>Overt Act No. 522:</u>  On September 9, 2023, defendant PICHIE,

17  using coded language in a recorded telephone call, instructed

18  defendant WILLS to download Signal in order to obtain an update

19  regarding unindicted co-conspirator #2's RICO case and the status of

20  his seized contraband cellular telephone.

21     <u>Overt Act No. 523:</u>  On September 9, 2023, defendant RAMACHANDRAN

22  possessed 276.82 grams of methamphetamine and 93.89 grams of fentanyl

23  as well as a firearm in a vehicle that he was driving in Los Angeles,

24  California.

25     <u>Overt Act No. 524:</u>  On September 10, 2023, defendant W. POLLAY

26  sent defendant MEJIA $299 via Cash App.

27     <u>Overt Act No. 525:</u>  On September 10, 2023, defendant SLAYTON

28  sent defendant GAITHER $400 via Cash App.

1      Overt Act No. 526:  On September 13, 2023, defendant MACDONALD,

2 using coded language in a Facebook message exchange, told defendant

3 FREEMAN that the price for three grams of fentanyl was $100.

4      Overt Act No. 527:  On September 13, 2023, defendant CHAN

5 traveled to the drug stash house located at 9400 Valjean Avenue in

6 North Hills, California to purchase drugs to distribute.

7      Overt Act No. 528:  On September 13, 2023, defendant VENNUM sent

8 unindicted co-conspirator #21 $230 via Cash App and indicated that

9 the money was from unindicted co-conspirator #1.

10      Overt Act No. 529:  On September 13, 2023, defendant VITANZA

11 sent defendant POWERS $283 via Cash App.

12      Overt Act No. 530:  On September 15, 2023, defendant W. POLLAY

13 sent defendant MEJIA $300 via Cash App.

14      Overt Act No. 531:  On September 16, 2023, defendant MORENO,

15 using coded language in a Facebook message exchange, ordered a

16 quarter of an ounce of drugs from defendant MACDONALD.

17      Overt Act No. 532:  On September 21, 2023, defendant VITANZA,

18 using coded language in a recorded telephone call, agreed to supply

19 defendant MACDONALD with drugs to distribute to customers, and

20 defendant MACDONALD agreed to deliver a portion of his drug

21 distribution proceeds to defendant VITANZA.

22      Overt Act No. 533:  On September 22, 2023, defendant MACDONALD,

23 using coded language in a recorded telephone call, told defendant

24 VITANZA that he would have $500 in drug distribution proceeds for

25 defendant VITANZA later that day and told defendant VITANZA that he

26 presently needed an additional ounce and a half of drugs to

27 distribute to customers.

28

1    <u>Overt Act No. 534:</u>  On September 25, 2023, defendant MACDONALD,

2    using coded language in a recorded telephone call, told defendant

3    VITANZA that he was attempting to collect money from drug customers.

4    <u>Overt Act No. 535:</u>  On September 25, 2023, defendant WILLS,

5    using coded language in a recorded telephone call, told unindicted

6    co-conspirator #10 that he was unable to obtain methamphetamine

7    because defendant B. EKELUND was surrendering to serve a custodial

8    sentence the next day.

9    <u>Overt Act No. 536:</u>  On September 26, 2023, defendant B. EKELUND,

10   using coded language in a recorded telephone call, instructed

11   defendant WILLS to give unindicted co-conspirator #11 $1,000 from the

12   amount of drug distribution proceeds that defendant B. EKELUND had

13   generated prior to surrendering to serve a custodial sentence, and

14   asked defendant WILLS to maintain custody of the rest of defendant B.

15   EKELUND's drug distribution proceeds until he was released.

16   <u>Overt Act No. 537:</u>  On September 27, 2023, defendant B. EKELUND,

17   using coded language in a recorded telephone call, directed

18   unindicted co-conspirator #11 to give unindicted co-conspirator #35

19   defendant B. EKELUND's cellular telephone while defendant B. EKELUND

20   was in custody.

21   <u>Overt Act No. 538:</u>  On September 27, 2023, defendant WILLS,

22   using coded language in a recorded telephone call, told defendant B.

23   EKELUND that defendant WILLS had collected defendant B. EKELUND's

24   drug distribution proceeds from unindicted co-conspirator #35 on

25   defendant B. EKELUND's behalf, and that defendant WILLS had given

26   $1,000 in drug distribution proceeds to unindicted co-conspirator

27   #11.

28

Overt Act No. 539:  On September 27, 2023, defendant VITANZA, using coded language in a recorded telephone call, directed defendant CHOTARD to contact unindicted co-conspirator #1 on his contraband cellular telephone and tell unindicted co-conspirator #1 that defendant VITANZA wanted to obtain an additional quantity of fentanyl to sell to customers, that he presently had money to pay for the drugs in advance, and that he had many drug customers ready to purchase drugs.

Overt Act No. 540:  On September 27, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant THAEMERT that he was going to obtain fentanyl to distribute from a drug source of supply.

Overt Act No. 541:  On September 27, 2023, defendant VITANZA, using coded language in a recorded telephone call, instructed defendant CHOTARD to contact unindicted co-conspirator #1 on his contraband cellular telephone and tell unindicted co-conspirator #1 that defendant VITANZA needed to obtain another quantity of high-quality fentanyl to distribute.

Overt Act No. 542:  On September 27, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant CHOTARD that he had recently been obtaining drugs to distribute at a good price from unindicted co-conspirator #1 and complained that he always lost money when unindicted co-conspirator #2 was involved in supplying him with drugs.

Overt Act No. 543:  On September 27, 2023, defendant CHOTARD, using coded language in a recorded telephone call, told defendant VITANZA that she was presently communicating with unindicted co-

conspirator #1 on his contraband cellular telephone and that unindicted co-conspirator #1 wanted defendant VITANZA to call him.

Overt Act No. 544:  On September 28, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant THAEMERT that he was going to pick up a load of drugs to distribute, and that half of the load was designated for defendant PICHIE to distribute to customers.

Overt Act No. 545:  On September 28, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant THAEMERT that defendant PICHIE did not want to assist him in picking up the load of drugs, and complained that the last time he and defendant PICHIE obtained a load of drugs, defendant VITANZA "**fuckin' weighed it *out***" on his own while defendant PICHIE just stood there watching "***with a bandana all over his face.***"

Overt Act No. 546:  On September 28, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant THAEMERT that defendant PICHIE had tried to convince defendant VITANZA that neither of them personally had to pick up the load of drugs because both he and defendant VITANZA had earned the status of being made AB members.

Overt Act No. 547:  On September 28, 2023, defendant THAEMERT, using coded language in a recorded telephone call, told defendant VITANZA that he would pick up the load of drugs for defendants VITANZA and PICHIE.

Overt Act No. 548:  On September 28, 2023, defendant VITANZA, using coded language in a recorded telephone call, warned defendant THAEMERT that the load of drugs he was going to pick up was very large, that he should not touch the drugs, and that the smell of the

drugs would be very powerful and that defendant THAEMERT would leave "*a vapor trail when [he] drive[s]*" away with the quantity of drugs designated for defendants VITANZA and PICHIE.

Overt Act No. 549:  On September 28, 2023, defendant B. EKELUND, using coded language in a recorded telephone call, told unindicted co-conspirator #11 to give his telephone to unindicted co-conspirator #35 while defendant B. EKELUND was in custody.

Overt Act No. 550:  On September 28, 2023, defendant WILLS, using coded language in a recorded telephone call, agreed to send $300 - $500 of defendant B. EKELUND's drug distribution proceeds to defendant B. EKELUND's custodial facility.

Overt Act No. 551:  On September 30, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendants CHATTERTON and POWERS that he still owed a drug source of supply $7,000 in connection with his drug distribution activities.

Overt Act No. 552:  On September 30, 2023, defendant CHATTERTON, using coded language in a recorded telephone call, offered to use his "*name*" to get a "*fresh credit limit*" with a drug source of supply to obtain additional drugs to distribute.

Overt Act No. 553:  On October 2, 2023, unindicted co-conspirator #32, using coded language in a recorded telephone call, told defendant WILLS that fentanyl that unindicted co-conspirator #32 had recently smoked was supplied by unindicted co-conspirator #1 and that unindicted co-conspirator #1 maintained a drug stash house on Tyrone Avenue in Van Nuys, California.

Overt Act No. 554:  On October 3, 2023, defendants B. EKELUND and WILLS and unindicted co-conspirator #36, using coded language in a recorded telephone call, discussed their concern that unindicted

co-conspirator #35 had overdosed on drugs after unindicted co-conspirator #35 took custody of defendant B. EKELUND's supply of drugs.

Overt Act No. 555:  On October 3, 2023, defendant WILLS, using coded language in a recorded telephone call, told defendant IBARRA that he was concerned that unindicted co-conspirator #35 had possibly died of a fentanyl overdose and told defendant IBARRA that unindicted co-conspirator #35 was responsible for storing defendant B. EKELUND's stash of drugs.

Overt Act No. 556:  On October 3, 2023, defendant B. EKELUND, using coded language in a recorded telephone call, provided defendants PICHIE and WILLS with unindicted co-conspirator #35's true name, and defendant PICHIE told defendant B. EKELUND that he and defendant WILLS would "**check the hospitals and the morgue**" for unindicted co-conspirator #35's body.

Overt Act No. 557:  On October 4, 2023, unindicted co-conspirator #11, using coded language in a recorded telephone call, told defendant WILLS that unindicted co-conspirator #35 was dead and that she had located both "**a coroner report and a Hollywood News report**" verifying his death.

Overt Act No. 558:  On October 4, 2023, defendant WILLS, using coded language in a recorded telephone call, told unindicted co-conspirator #10 that unindicted co-conspirator #35 possessed "**all of [defendant B. EKELUND's] dope,**" his keys, as well as other belongings in unindicted co-conspirator #35's residence when unindicted co-conspirator #35 died of a fentanyl overdose.

Overt Act No. 559:  On October 4, 2023, defendant VITANZA sent defendant POWERS $450 via Cash App.

Overt Act No. 560:  On October 6, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant THAEMERT that he would be able to sell him an ounce of fentanyl for $400.

Overt Act No. 561:  On October 6, 2023, defendant THAEMERT, using coded language in a recorded telephone call, told defendant VITANZA that he was able to sell 3.5 grams of fentanyl to a drug customer for $225.

Overt Act No. 562:  On October 6, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant POWERS that he needed to meet with defendant P. EKELUND to obtain drugs to distribute.

Overt Act No. 563:  On October 6, 2023, defendant POWERS, using coded language in a recorded telephone call, told defendant VITANZA that his Cash App card was not working but that he had cash available for defendant VITANZA to obtain additional drugs from defendant P. EKELUND.

Overt Act No. 564:  On October 6, 2023, defendant VITANZA, using coded language in a recorded telephone call, directed defendant THAEMERT to obtain $450 in cash from defendant POWERS to use to obtain a quantity of fentanyl from defendant P. EKELUND.

Overt Act No. 565:  On October 6, 2023, defendant VITANZA, using coded language in a recorded telephone call, directed defendant POWERS to give defendant THAEMERT the cash for the drugs that defendant VITANZA was going to obtain from defendant P. EKELUND.

Overt Act No. 566:  On October 6, 2023, defendant VITANZA, using coded language in a recorded telephone call, said that he expected to obtain ten ounces of drugs from defendant P. EKELUND and that he would give one of the ounces to defendant THAEMERT.

114

1    Overt Act No. 567:  On October 6, 2023, unindicted co-
2    conspirator #1, in a text message, provided defendant RAMACHANDRAN
3    with the new telephone number to his contraband cellular telephone.

4    Overt Act No. 568:  On October 8, 2023, defendant FREEMAN, using
5    coded language in a Facebook message exchange, told defendant
6    MACDONALD that he would send defendant MACDONALD $250 to obtain more
7    drugs from a drug source of supply.

8    Overt Act No. 569:  On October 8, 2023, defendant MACDONALD,
9    using coded language in a recorded telephone call, told defendant
10   VITANZA that he presently had $260 in drug distribution proceeds for
11   defendant VITANZA.

12   Overt Act No. 570:  On October 9, 2023, defendant WILLS, using
13   coded language in a recorded telephone call, told defendant IBARRA
14   that he would determine who was distributing heroin now that
15   defendant B. EKELUND was in custody.

16   Overt Act No. 571:  On October 11, 2023, defendant VITANZA,
17   using coded language in a recorded telephone call, agreed to supply
18   heroin to defendant POWERS.

19   Overt Act No. 572:  On October 11, 2023, defendant VITANZA,
20   using coded language in a recorded telephone call, agreed to supply
21   an ounce of drugs to defendant ROMERO for $120.

22   Overt Act No. 573:  On October 11, 2023, defendant VITANZA,
23   using coded language in a recorded telephone call, told defendant
24   THAEMERT that defendant MACDONALD owed him $2,000 in drug
25   distribution proceeds.

26   Overt Act No. 574:  On October 12, 2023, defendant GAITHER sent
27   defendant SLAYTON $100 via Cash App.

28

115

Overt Act No. 575:  On October 13, 2023, defendant GAITHER sent defendant SLAYTON $450 via Cash App.

Overt Act No. 576:  On October 14, 2023, defendant FREEMAN, using coded language in a recorded telephone call, told defendant VITANZA that defendant MACDONALD wanted to rob a drug source of supply.

Overt Act No. 577:  On October 14, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant CHOTARD that unindicted co-conspirator #1 had arranged for defendant SCHULTZ to deliver drugs to defendant VITANZA.

Overt Act No. 578:  On October 14, 2023, defendant VITANZA, using coded language in a recorded telephone call, agreed to meet with defendant SCHULTZ to obtain drugs to distribute.

Overt Act No. 579:  On October 22, 2023, defendant GAITHER sent defendant SLAYTON $200 via Cash App.

Overt Act No. 580:  On October 22, 2023, defendant BAKER sent defendant MULVIHILL $175 via Cash App.

Overt Act No. 581:  On October 24, 2023, defendant P. EKELUND possessed with intent to distribute approximately 982.2 grams of fentanyl and 135.3 grams of methamphetamine, as well as multiple firearms and several rounds of ammunition, in Van Nuys, California.

Overt Act No. 582:  On October 24, 2023, defendant VENNUM possessed firearms and multiple rounds of ammunition in Van Nuys, California.

Overt Act No. 583:  On October 25, 2023, defendant SHAPIRO sent defendant SLAYTON $100 via Cash App.

Overt Act No. 584:  On October 28, 2023, defendant PAYER, using coded language in a Facebook message exchange, asked defendant MACDONALD to supply fentanyl to sell to drug customers.

Overt Act No. 585:  On October 29, 2023, defendant SLAYTON sent defendant FRANCIS $550 via Cash App.

Overt Act No. 586:  On November 1, 2023, defendant VITANZA sent unindicted co-conspirator #40 $400 via Cash App.

Overt Act No. 587:  On November 3, 2023, defendant CHAN, using coded language in a recorded telephone call, ordered an ounce of drugs from defendant MACDONALD.

Overt Act No. 588:  On November 3, 2023, defendant MACDONALD, using coded language in a text message exchange, asked defendant FREEMAN to send him cash so that defendant MACDONALD could obtain an additional quantity of drugs from a source of supply.

Overt Act No. 589:  On November 5, 2023, defendant CHAN, using coded language in a recorded telephone call, told defendant MACDONALD that they could obtain two ounces of methamphetamine and two ounces of high-quality fentanyl for $1,200 from a drug source of supply.

Overt Act No. 590:  On November 5, 2023, defendant SLAYTON, using coded language in a recorded telephone call, agreed to provide fentanyl to defendant THAEMERT once defendant SLAYTON obtained an additional quantity of fentanyl from a drug source of supply.

Overt Act No. 591:  On November 6, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, told defendant PAYER that he was planning to rob a drug source of supply.

Overt Act No. 592:  On November 6, 2023, defendant UNGAMRUNG, using coded language in a recorded telephone call, told defendant MACDONALD that she wanted to assist defendant MACDONALD to obtain

117

methamphetamine and fentanyl from a source of supply by contributing money to the upcoming drug transaction.

Overt Act No. 593:  On November 6, 2023, defendant UNGAMRUNG, using coded language in a recorded telephone call, told defendant MACDONALD that she had sent him money so that he could obtain half an ounce of methamphetamine as well as a quantity of fentanyl from a drug source of supply.

Overt Act No. 594:  On November 6, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant FREEMAN that defendant THAEMERT owed defendant VITANZA $1,100 in drug distribution proceeds.

Overt Act No. 595:  On November 6, 2023, defendant MACDONALD, in a text message exchange, provided defendant UNGAMRUNG with defendant BECKWITH's Cash App account information.

Overt Act No. 596:  On November 6, 2023, defendant PAYER, using coded language in a Facebook message exchange, told defendant MACDONALD that he could obtain counterfeit money to be used in drug transactions.

Overt Act No. 597:  On November 6, 2023, defendant MACDONALD, using coded language in a recorded telephone call, complained to defendant UNGAMRUNG that defendant CHAN's telephone was off despite defendant MACDONALD's present efforts to negotiate a favorable deal for methamphetamine and high-quality fentanyl from a source of supply.

Overt Act No. 598:  On November 6, 2023, defendant THAEMERT, using coded language in a recorded telephone call, told defendant HEINTZ that he had sent defendant HEINTZ a text message regarding a quantity of methamphetamine.

Overt Act No. 599:  On November 6, 2023, defendant ROMERO, using coded language in a recorded telephone call, told unindicted co-conspirator #1 that she had met with a third party at defendant HAVILAND's residence and given him thousands of dollars in drug distribution proceeds on behalf of "**L.**"

Overt Act No. 600:  On November 6, 2023, defendant Romero sent unindicted co-conspirator #1 the following text message:

*Ya know I didn't think bout it and I really should've but I didn't just say too much on the phone today and if so I am sorry and I'll be more mindful next time*

Overt Act No. 601:  On November 7, 2023, unindicted co-conspirator #27 sent defendant FRANCIS $500 via Cash App.

Overt Act No. 602:  On November 7, 2023, defendant MACDONALD, using coded language in a recorded telephone call, told defendant THAEMERT that defendant MACDONALD's drug source of supply oversaw a large drug distribution operation in Ventura County, obtained pounds of methamphetamine at a time, and generated approximately $100,000 a week in drug distribution proceeds.

Overt Act No. 603:  On November 7, 2023, defendant THAEMERT, using coded language in a recorded telephone call, offered to sell defendant MACDONALD two ounces of methamphetamine for $240.

Overt Act No. 604:  On November 8, 2023, defendant WILLS, using coded language in a recorded telephone call, told defendant IBARRA that unindicted co-conspirator #19 was the individual that AB members sent from Northern California to Southern California to facilitate criminal conduct on behalf of the AB.

Overt Act No. 605:  On November 8, 2023, defendant WILLS, using coded language in a recorded telephone call, told defendant IBARRA

that he was trying to "**butter [unindicted co-conspirator #11] up and shit so I can fuckin' find out where she's at, fuckin', and get her.**"

Overt Act No. 606:  On November 9, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant POWERS that he had met with a drug source of supply who "**slings fuckin' dope,**" and that he had "**picked up a, a few ounces from her.**"

Overt Act No. 607:  On November 11, 2023, defendant HEINTZ, using coded language in a text message exchange, ordered fentanyl from defendant THAEMERT.

Overt Act No. 608:  On November 11, 2023, defendant MACDONALD, using coded language in a recorded telephone call, ordered two ounces of heroin from a drug source of supply and told the drug supplier that he needed to return an ounce of fentanyl because the drugs were not good quality.

Overt Act No. 609:  On November 11, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, directed defendant PAYER to obtain a large amount of counterfeit money to be used in connection with drug transactions.

Overt Act No. 610:  On November 12, 2023, defendant GAITHER sent defendant SLAYTON $300 via Cash App.

Overt Act No. 611:  On November 12, 2023, defendant THAEMERT, using coded language in a recorded telephone call, told defendant HEINTZ that he had delivered $180 of fentanyl to defendant HEINTZ.

Overt Act No. 612:  On November 12, 2023, defendant THAEMERT, using coded language in a recorded telephone call, told defendant HEINTZ that he would "**come to wherever [he was] with the scale right now**" so that he could ensure that all of the fentanyl that he had previously delivered to defendant HEINTZ was there.

Overt Act No. 613:  On November 13, 2023, defendant VITANZA, using coded language in a recorded telephone call, ordered a quarter of an ounce of methamphetamine from defendant VAN VLYMEN.

Overt Act No. 614:  On November 14, 2023, defendant GAITHER sent defendant SLAYTON $300 via Cash App.

Overt Act No. 615:  On November 14, 2023, defendant CHAN, using coded language in a recorded telephone call, complained to defendant MACDONALD about the quality of drugs that defendant MACDONALD had obtained from a drug source of supply.

Overt Act No. 616:  On November 15, 2023, defendant SLAYTON sent defendant FRANCIS $200 via Cash App.

Overt Act No. 617:  On November 15, 2023, defendant MACDONALD, using coded language in a recorded telephone call, told defendant CHAN that defendant MACDONALD was going to rob a drug source of supply and steal his heroin and would give defendant CHAN two ounces of heroin after the robbery.

Overt Act No. 618:  On November 16, 2023, defendant RESNICK, using coded language in a recorded telephone call, told defendant CHATTERTON that she would obtain methamphetamine that defendant CHATTERTON had stored in his vehicle and would supply an ounce of methamphetamine to a drug customer.

Overt Act No. 619:  On November 16, 2023, defendant RESNICK, using coded language in a recorded telephone call, told defendant CHATTERTON that she spilled a portion of methamphetamine when she was weighing the drugs for a customer.

Overt Act No. 620:  On November 16, 2023, defendant HAVILAND, using coded language in a text message exchange, instructed defendant CHOTARD to tell defendant VITANZA that unindicted co-conspirator #8,

an AB commissioner, was being released from custody and that defendant VITANZA "*need[ed] [to do] what's expected.*"

Overt Act No. 621:  On November 17, 2023, defendant CHAN, using coded language in a recorded telephone call, told defendant MACDONALD that defendant UNGAMRUNG would send defendant MACDONALD money for an additional quantity of drugs to distribute to customers.

Overt Act No. 622:  On November 17, 2023, defendant THAEMERT, using coded language in a recorded telephone call, ordered a quarter of an ounce of drugs from defendant SLAYTON.

Overt Act No. 623:  On November 18, 2023, defendant DIETZEN, using coded language in a text message exchange, ordered a half of a unit of drugs from defendant THAEMERT.

Overt Act No. 624:  On November 18, 2023, in a recorded telephone call using coded language, defendant CHOTARD discussed with defendant VITANZA the location of a quantity of fentanyl that they possessed.

Overt Act No. 625:  On November 18, 2023, defendant SLAYTON, using coded language in a text message exchange, agreed to supply a half of a pound of drugs to defendant THAEMERT for $500.

Overt Act No. 626:  On November 19, 2023, defendant CHAN, using coded language in a recorded telephone call, told defendant MACDONALD that defendant UNGAMRUNG would send money for a quantity of methamphetamine.

Overt Act No. 627:  On November 19, 2023, defendants MACDONALD and BECKWITH, using coded language in a recorded telephone call, told defendant CHAN that they were going to obtain methamphetamine from a drug source of supply.

Overt Act No. 628:  On November 20, 2023, defendant CHAN, using coded language in a recorded telephone call, told defendant MACDONALD that defendant UNGAMRUNG wanted to obtain half an ounce of fentanyl and have an ounce of methamphetamine from a drug source of supply and would send money for the drugs.

Overt Act No. 629:  On November 20, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, reminded defendant UNGAMRUNG to send money via Cash App for half an ounce of fentanyl.

Overt Act No. 630:  On November 20, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, told defendant UNGAMRUNG that he regularly shipped drugs in the mail to "*Chicago Idaho and Oklahoma.*"

Overt Act No. 631:  On November 20, 2023, defendant CHATTERTON, using coded language in a text message exchange, told a drug customer that defendant RESNICK would look for the receipt for the package that contained methamphetamine that defendant CHATTERTON had shipped in the mail.

Overt Act No. 632:  On November 21, 2023, defendant FREEMAN, using coded language in a recorded telephone call, asked defendant VITANZA if he presently had methamphetamine to distribute.

Overt Act No. 633:  On November 21, 2023, defendant VAN VLYMEN, using coded language in a recorded telephone call, told defendant VITANZA that she was obtaining additional methamphetamine to distribute from a drug source of supply.

Overt Act No. 634:  On November 21, 2023, defendant VITANZA, using coded language in a recorded telephone call, ordered a quarter of an ounce of methamphetamine from defendant VAN VLYMEN.

Overt Act No. 635:  On November 23, 2023, defendant DIETZEN, using coded language in a text message exchange, ordered a half of a unit of drugs from defendant THAEMERT.

Overt Act No. 636:  On November 25, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant VAN VLYMEN that he was going to supply her with high-quality drugs that her customers would like.

Overt Act No. 637:  On November 25, 2023, defendant VAN VLYMEN, using coded language in a recorded telephone call, told defendant VITANZA that she would give defendant CHOTARD $400 in drug distribution proceeds.

Overt Act No. 638:  On November 25, 2023, defendant POWERS, using coded language in a recorded telephone call, told defendant FREEMAN that he would supply him with heroin.

Overt Act No. 639:  On November 25, 2023, defendant DIETZEN, using coded language in a recorded telephone call, told defendant CHOTARD that law enforcement officers had recently seized a quantity of fentanyl from his residence and that the officers were sending the drugs to the laboratory for testing.

Overt Act No. 640:  On November 26, 2023, defendant FREEMAN, using coded language in a recorded telephone call, told defendant MACDONALD that defendant VITANZA wanted to speak with defendant MACDONALD regarding drug distribution proceeds that defendant MACDONALD owed to defendant VITANZA.

Overt Act No. 641:  On November 26, 2023, defendant FREEMAN, using coded language in a recorded telephone call, told defendant VITANZA that he had drug distribution proceeds to deliver to defendant VITANZA on behalf of defendant MACDONALD.

124

Overt Act No. 642:  On November 26, 2023, defendant FREEMAN, using coded language in a recorded telephone call, told defendant VITANZA that defendant MACDONALD was able to obtain drugs to distribute from a source of supply at a discounted rate.

Overt Act No. 643:  On November 26, 2023, defendant THAEMERT sent defendant SLAYTON $400 via Cash App.

Overt Act No. 644:  On November 26, 2023, defendant POWERS, using coded language in a recorded telephone call, told defendant VITANZA that he would supply heroin to defendant FREEMAN.

Overt Act No. 645:  On November 26, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant FREEMAN that defendant POWERS would supply defendant FREEMAN with heroin once defendant POWERS obtained the drugs from a source of supply.

Overt Act No. 646:  On November 26, 2023, defendant FREEMAN, using coded language in a recorded telephone call, told defendant VITANZA that defendant POWERS offered to supply defendant FREEMAN with heroin in the future.

Overt Act No. 647:  On November 27, 2023, defendant HEINTZ, using coded language in a recorded telephone call, ordered $300 of fentanyl from defendant THAEMERT.

Overt Act No. 648:  On November 27, 2023, defendant HEINTZ, using coded language in a recorded telephone call, told defendant THAEMERT that he had already obtained fentanyl from a drug source of supply but needed to obtain methamphetamine from defendant THAEMERT.

Overt Act No. 649:  On November 27, 2023, defendant CHOTARD, using coded language in a recorded telephone call, told defendant VITANZA that she possessed methamphetamine that she had obtained from

defendant HAVILAND and would be able to deliver the methamphetamine to defendant VITANZA.

Overt Act No. 650:  On November 28, 2023, defendant CRISWELL, using coded language in a Facebook message exchange, told defendant MACDONALD that unindicted co-conspirator #1 calls defendant CRISWELL to collect drug distribution proceeds.

Overt Act No. 651:  On November 28, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, told defendant CRISWELL that he presently had drugs available to distribute and stated that he thought that defendant SCHULTZ did as well.

Overt Act No. 652:  On November 29, 2023, defendant THAEMERT, using coded language in a recorded telephone call, told defendant DIETZEN that he had morphine pills available to sell to a customer that defendant DIETZEN had identified.

Overt Act No. 653:  On November 29, 2023, defendant VAN VLYMEN, using coded language in a recorded telephone call, complained to defendant VITANZA that a "*Canoga Park*" gang member "*came by trying to talk politics,*" and told defendant VAN VLYMEN that "*anybody who's not working with the Brand is going to get taxed*" in connection with their drug distribution activities.

Overt Act No. 654:  On November 29, 2023, defendant VITANZA, using coded language in a recorded telephone call, authorized defendant VAN VLYMEN to tell others that she was "*working for the Brand.*"

Overt Act No. 655:  On November 29, 2023, defendant VAN VLYMEN, using coded language in a recorded telephone call, told defendant VITANZA that she told a "*Canoga Park*" gang member that "*no, white*

1  *people, period, are gonna get taxed*" by a Hispanic gang in the San
2  Fernando Valley.

3      Overt Act No. 656:  On November 30, 2023, defendant VAN VLYMEN
4  sent the following text message to defendant VITANZA complaining
5  about the quality of drugs that he was supplying:

6  *There's still complaints. The people closest to me try to buy it*
   *elsewhere before coming to me cuz it doesn't seem to get them*
7  *there.... You should be getting the best of the best but this has*
   *been consistently the worst available. Not talking shit, talking*
8  *truth. Can you exchange?? I would like to[.]*

9

10     Overt Act No. 657:  On December 1, 2023, defendant MACDONALD,
11 using coded language in a recorded telephone call, told defendant
12 FREEMAN that a drug source of supply would be willing to sell
13 defendant FREEMAN 12.5 grams of heroin for $275.

14     Overt Act No. 658:  On December 1, 2023, defendant THAEMERT,
15 using coded language in a recorded telephone call, told defendant
16 DIETZEN that the price of half a unit of drugs was $650 and the price
17 of a full unit of drugs was $1,250.

18     Overt Act No. 659:  On December 1, 2023, defendant MACDONALD,
19 using coded language in a recorded telephone call, told defendant
20 FREEMAN that he was able to negotiate a good price for drugs for
21 defendant FREEMAN because defendant MACDONALD "*buy[s] everything*"
22 from the source of supply.

23     Overt Act No. 660:  On December 2, 2023, defendant MACDONALD,
24 using coded language in a Facebook message exchange, sent a
25 photograph of drugs that he had available to distribute to a drug
26 customer.

27

28

Overt Act No. 661:  On December 2, 2023, defendant HEINTZ, using coded language in a recorded telephone call, ordered an ounce of drugs from defendant THAEMERT.

Overt Act No. 662:  On December 3, 2023, defendant CHAN, using coded language in a Facebook message exchange, told defendant MACDONALD that defendant UNGAMRUNG wanted to purchase an ounce of drugs from defendant MACDONALD if he was able to obtain the same quality of drugs from a previous transaction.

Overt Act No. 663:  On December 3, 2023, defendant CHAN, using coded language in a Facebook message exchange, told defendant MACDONALD that defendant CHAN was waiting with a drug customer that had $150 and asked if defendant BECKWITH was delivering the drugs for the customer soon.

Overt Act No. 664:  On December 5, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, told defendant CRISWELL that he had methamphetamine available to distribute.

Overt Act No. 665:  On December 8, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, instructed defendant UNGAMRUNG to tell defendant CHAN to contact defendant MACDONALD regarding an upcoming drug transaction.

Overt Act No. 666:  On December 10, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, asked defendant UNGAMRUNG if she and defendant CHAN were going to contribute money so that defendants MACDONALD, CHAN, and UNGAMRUNG could purchase high-quality drugs from a source of supply.

Overt Act No. 667:  On December 19, 2023, defendant SLAYTON, using coded language in a recorded telephone call, told an inmate at Pelican Bay State Prison that defendant PICHIE was attempting to

contact him because defendant PICHIE had heard that he was "***slanging big pounds***" of drugs.

Overt Act No. 668:  On December 20, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, told defendant UNGAMRUNG that he had methamphetamine for defendants CHAN and UNGAMRUNG.

Overt Act No. 669:  On December 19, 2023, defendant VAN VLYMEN, using coded language in a recorded telephone call, contacted a drug source of supply to request a quarter of a pound of drugs for a customer.

Overt Act No. 670:  On December 20, 2023, defendant VAN VLYMEN, using coded language in a recorded telephone call, scolded an individual for telling a third-party that defendant VAN VLYMEN's house was "***Brand protected***" without proper authorization.

Overt Act No. 671:  On December 21, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, told defendant CHAN that defendant MACDONALD was obtaining a quarter of a pound of drugs from a drug source of supply and told defendant CHAN that he planned to give defendant CHAN half an ounce of methamphetamine.

Overt Act No. 672:  On December 21, 2023, unindicted co-conspirator #1, in a text message exchange, sent defendant SCHULTZ a link to install Signal on defendant SCHULTZ's new cellular telephone.

Overt Act No. 673:  On December 22, 2023, unindicted co-conspirator #1, using coded language in a recorded telephone call, instructed defendant SCHULTZ to call him back on Signal or Telegram.

Overt Act No. 674:  On December 23, 2023, defendant VITANZA, using coded language in a recorded telephone call, told defendant ROMERO that defendant VITANZA had engaged in an attempted murder

while incarcerated at the High Desert Prison located in Susanville, California.

Overt Act No. 675:  On December 23, 2023, defendant VITANZA, using coded language in a recorded telephone call, bragged to defendant ROMERO that he was the "*youngest made member of the Aryan Brotherhood*," and described to defendant ROMERO his leadership style as an AB member.

Overt Act No. 676:  On December 23, 2023, defendant CRISWELL, using coded language in a Facebook message exchange, identified a customer that wanted to purchase drugs from defendant MACDONALD.

Overt Act No. 677:  On December 24, 2023, defendant SCHULTZ, using coded language in a text message, requested that unindicted co-conspirator #1 use unindicted co-conspirator #1's contraband cellular telephone to contact him.

Overt Act No. 678:  On December 26, 2023, defendant VAN VLYMEN, using coded language in a recorded telephone call, agreed to supply drugs to a customer.

Overt Act No. 679:  On December 27, 2023, defendant EKLUND sent defendant SLAYTON $175 via Cash App.

Overt Act No. 680:  On December 27, 2023, defendant SCHULTZ, using coded language in a recorded telephone call, agreed to supply fentanyl to defendant P. EKELUND.

Overt Act No. 681:  On December 27, 2023, defendant P. EKELUND possessed with intent to distribute 82 pills that contained fentanyl that he had obtained from defendant SCHULTZ.

Overt Act No. 682:  On December 27, 2023, defendant SCHULTZ, using coded language in a recorded telephone call, told defendant VENNUM that law enforcement officers confronted him and defendant P.

EKELUND during a drug transaction earlier that evening, and that law enforcement officers followed defendant P. EKELUND as he attempted to flee.

Overt Act No. 683:  On December 29, 2023, defendant GAITHER, using coded language in a recorded telephone call, told defendant SLAYTON that defendant GAITHER would send him money via Cash App so that defendant SLAYTON could obtain additional drugs to distribute from a drug source of supply.

Overt Act No. 684:  On December 30, 2023, defendant GAITHER sent defendant SLAYTON $200 via Cash App.

Overt Act No. 685:  On December 30, 2023, defendants REED, using coded language in a recorded telephone call, and MUNOZ agreed to commit bank fraud with checks that defendant REED had stolen the night before.

Overt Act No. 686:  On December 30, 2023, defendant MUNOZ, using coded language in a recorded telephone call, told defendant REED that defendant SCHULTZ's residence had been "*raided*" recently.

Overt Act No. 687:  On December 31, 2023, defendant PREVEDELLO, using coded language in a recorded telephone call, told defendant SLAYTON that he had just stolen a brand-new Predator 2000 generator, and was willing to trade the stolen generator for methamphetamine or fentanyl.

Overt Act No. 688:  On December 31, 2023, defendant PREVEDELLO, using coded language in a recorded telephone call, asked defendant SLAYTON to supply him with methamphetamine to sell to customers at a profit.

Overt Act No. 689:  On December 31, 2023, defendant CHAN, using coded language in a Facebook message exchange, told defendant

MACDONALD that he was at defendant UNGAMRUNG's parents' house and was waiting for defendant UNGAMRUNG's to deliver money so that they could purchase an additional quantity of drugs to distribute to customers.

Overt Act No. 690:  On December 31, 2023, defendant MACDONALD, using coded language in a Facebook message exchange, asked defendant CHAN to tell defendant UNGAMRUNG to send defendant MACDONALD money via Cash App so that they could obtain drugs to distribute from defendant VITANZA.

Overt Act No. 691:  On December 31, 2023, defendant HAVILAND sent her Cash App tag to a drug customer in Alabama so that the drug customer could pay defendant HAVILAND to ship methamphetamine in the mail to Alabama.

Overt Act No. 692:  On January 1, 2024, defendant HARBAND possessed approximately 217.85 grams methamphetamine and 82.89 grams of fentanyl, depicted below, to distribute to drug customers in a hotel room in Chatsworth, California.

 

1    Overt Act No. 693:  On January 2, 2024, defendant GAITHER sent

2  defendant SLAYTON $400 via Cash App.

3    Overt Act No. 694:  On January 2, 2024, defendant HAVILAND,

4  using coded language in a text message exchange, told a drug customer

5  that she was planning to ship methamphetamine via the mail to the

6  customer in Alabama that day.

7    Overt Act No. 695:  On January 3, 2024, defendant PREVEDELLO,

8  using coded language in a recorded telephone call, told defendant

9  SLAYTON that he needed to purchase an ounce of fentanyl and would

10  contact defendant SLAYTON the next day.

11    Overt Act No. 696:  On January 3, 2024, defendant W. POLLAY,

12  using coded language in a recorded telephone call, told defendant

13  SLAYTON that he would send defendant SLAYTON more money so that he

14  could obtain additional drugs to distribute from a drug source of

15  supply.

16    Overt Act No. 697:  On January 3, 2024, defendant MEJIA, using

17  coded language in a recorded telephone call, told defendant SLAYTON

18  that she had nearly $3,000 to purchase a quantity of fentanyl.

19    Overt Act No. 698:  On January 3, 2024, defendant MEJIA sent

20  defendant SLAYTON $110 via Cash App.

21    Overt Act No. 699:  On January 3, 2024, defendant PICHIE, using

22  coded language in a recorded telephone call, told unindicted co-

23  conspirator #10 that he would be able to supply an ounce of drugs to

24  a customer.

25

26

27

28

Overt Act No. 700:  On January 3, 2024, defendant HAVILAND obtained approximately 26.1 grams of methamphetamine to ship in the mail to a drug customer in Alabama, depicted in the photo below.



Overt Act No. 701:  On January 4, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told defendant HILL that the price of an ounce of fentanyl was between $450 and $500.

Overt Act No. 702:  On January 4, 2024, defendant HILL, using coded language in a recorded telephone call, told defendant SLAYTON that he wanted to obtain an ounce of fentanyl from defendant SLAYTON to sample, and, if defendant HILL was pleased with the quality of the fentanyl, he would be placing an order for additional ounces.

Overt Act No. 703:  On January 4, 2024, defendant SLAYTON, using coded language in a recorded telephone call, agreed to supply fentanyl to defendant THAEMERT.

Overt Act No. 704:  On January 4, 2024, defendant ROMERO, using coded language in a recorded telephone call, told unindicted co-conspirator #1 that "**_Trouble_**" had not yet been murdered.

Overt Act No. 705:  On January 4, 2024, unindicted co-conspirator #10, using coded language in a recorded telephone call, told defendant WILLS that he had obtained methamphetamine and would supply him with a portion of the drugs.

Overt Act No. 706:  On January 4, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told defendant HILL that unindicted co-conspirator #1 had stated that no one was authorized to "*tax*" defendant HILL's drug distribution activities.

Overt Act No. 707:  On January 5, 2024, defendant THAEMERT, using coded language in a recorded telephone call, that he would send defendant SLAYTON money in connection with drug distribution activity.

Overt Act No. 708:  On January 5, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told defendant W. POLLAY that he would be obtaining additional drugs to distribute from a drug source of supply.

Overt Act No. 709:  On January 5, 2024, defendant THAEMERT, using coded language in a recorded telephone call, told defendant SLAYTON that he would send defendant SLAYTON $400-$500 in drug distribution proceeds via Cash App.

Overt Act No. 710:  On January 5, 2024, defendant THAEMERT sent defendant SLAYTON $100 via Cash App.

Overt Act No. 711:  On January 5, 2024, defendant EKLUND sent defendant SLAYTON $500 via Cash App.

Overt Act No. 712:  On January 5, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told defendant MEJIA that he was attempting to obtain both methamphetamine and fentanyl from a drug source of supply.

Overt Act No. 713:  On January 5, 2024, defendant HAVILAND, using coded language in a text message exchange, told a drug customer in Alabama that the customer should receive the methamphetamine that defendant HAVILAND had shipped to the customer in the mail by "*Monday.*"

Overt Act No. 714:  On January 6, 2024, defendant THAEMERT sent defendant SLAYTON $250 via Cash App.

Overt Act No. 715:  On January 6, 2024, defendant SLAYTON sent defendant FRANCIS $520 via Cash App.

Overt Act No. 716:  On January 8, 2024, defendant EKLUND sent defendant SLAYTON $750 via Cash App.

Overt Act No. 717:  On January 8, 2024, defendant FRANCIS possessed with intent to distribute approximately 86.23 grams of fentanyl and 31.18 grams of methamphetamine, as well as drug distribution materials, in a hotel room in Agoura Hills, California.

Overt Act No. 718:  On January 8, 2024, defendant HILL, using coded language in a text message exchange, "*a whole bunch*" of methamphetamine from defendant SLAYTON.

Overt Act No. 719:  On January 8, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told defendant HILL that he had fentanyl available to distribute but needed to obtain methamphetamine to distribute from a drug source of supply.

Overt Act No. 720:  On January 8, 2024, defendant HILL, using coded language in a recorded telephone call, requested that defendant SLAYTON deliver fentanyl to defendant HILL.

Overt Act No. 721:  On January 9, 2024, defendant HAVILAND, using coded language in a recorded telephone call, told a drug

136

customer that she had arranged for methamphetamine to be sent to the customer via the mail.

Overt Act No. 722: On January 9, 2024, defendant SLAYTON, using coded language in a recorded telephone call, agreed to supply methamphetamine to defendant W. POLLAY.

Overt Act No. 723: On January 9, 2024, defendant MEJIA, using coded language in a recorded telephone call, told defendant SLAYTON that she had enough money to purchase a "whole brick" of drugs from defendant SLAYTON.

Overt Act No. 724: On January 9, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told defendant MEJIA that defendant FRANCIS had been arrested the night before in connection with drug distribution activity.

Overt Act No. 725: On January 10, 2024, defendant DIETZEN, using coded language in a recorded telephone call, ordered a quarter of a pound of drugs from defendant THAEMERT.

Overt Act No. 726: On January 10, 2024, using coded language in a recorded telephone call, defendant THAEMERT told defendant DIETZEN that defendant THAEMERT would obtain the drugs from defendant SLAYTON.

Overt Act No. 727: On January 10, 2024, defendant THAEMERT, using coded language in a recorded telephone call, asked defendant SLAYTON to supply a quarter of a pound of methamphetamine.

Overt Act No. 728: On January 10, 2024, defendant THAEMERT sent defendant SLAYTON $100 via Cash App.

Overt Act No. 729: On January 10, 2024, defendant HAVILAND, using coded language in a text message exchange, agreed to ship an

additional quantity of methamphetamine via the mail to a drug customer in Alabama.

Overt Act No. 730:  On January 10, 2024, defendant HAVILAND obtained approximately 19.1 grams of methamphetamine that she intended to ship to a drug customer in Alabama, depicted in the below photograph.



Overt Act No. 731:  On January 11, 2024, defendant SHAPIRO sent defendant SLAYTON $275 via Cash App.

Overt Act No. 732:  On January 11, 2024, defendant THAEMERT sent defendant SLAYTON $250 via Cash App.

Overt Act No. 733:  On January 11, 2024, defendant HAVILAND, using coded language in a recorded telephone call, told a drug customer in Alabama that she had just shipped a quantity of methamphetamine to the customer via the mail.

Overt Act No. 734:  On January 11, 2024, defendant SLAYTON, using coded language in a text message exchange, told defendant HILL that he was obtaining additional drugs to distribute from a drug source of supply.

Overt Act No. 735:  On January 12, 2024, unindicted co-conspirator #1, using coded language in a recorded telephone call, contacted defendant HAVILAND on his new contraband cellular telephone and attempted to communicate with her via Signal.

Overt Act No. 736:  On January 13, 2024, defendant SLAYTON, using coded language in a recorded telephone call, instructed defendant HILL to charge a drug customer $100 for a gram of drugs that the drug customer had requested.

Overt Act No. 737:  On January 13, 2024, defendant W. POLLAY, using coded language in a recorded telephone call, asked defendant SLAYTON to supply him with ounces of drugs.

Overt Act No. 738:  On January 13, 2024, defendant UNGAMRUNG, using coded language in a Facebook message exchange, ordered $180 of drugs from defendant MACDONALD.

Overt Act No. 739:  On January 13, 2024, defendant SLAYTON, using coded language in a recorded telephone call, told defendant GAITHER that a drug source of supply would be delivering an additional quantity of drugs to defendant SLAYTON later that day.

Overt Act No. 740:  On January 13, 2024, defendant GAITHER, using coded language in a recorded telephone call, reminded defendant SLAYTON to employ counter-surveillance tactics when driving his vehicle in connection with drug distribution activities.

Overt Act No. 741:  On January 13, 2024, defendant GAITHER, using coded language in a recorded telephone call, told defendant SLAYTON that he would meet with him after defendant SLAYTON obtained drugs to distribute from his source of supply.

Overt Act No. 742:  On January 15, 2024, defendant THAEMERT sent defendant SLAYTON $300 via Cash App.

139

Overt Act No. 743: On January 15, 2024, defendant UNGAMRUNG, using coded language in a Facebook message exchange, ordered an additional quantity of drugs from defendant MACDONALD.

Overt Act No. 744: On January 18, 2024, defendant GAITHER sent defendant SLAYTON $200 via Cash App.

Overt Act No. 745: On January 18, 2024, defendant CHAN, using coded language in a Facebook message exchange, told defendant MACDONALD that defendant UNGAMRUNG wanted to obtain additional fentanyl from defendant MACDONALD.

Overt Act No. 746: On January 19, 2024, defendant MACDONALD, using coded language in a Facebook message exchange, told defendant FREEMAN that he had identified a new drug source of supply that was able to supply drugs to sell at a "*cheaper*" price.

Overt Act No. 747: On January 22, 2024, defendant BAKER, using coded language in a recorded telephone call, agreed to sell a pound of methamphetamine to a drug customer for $1,100.

Overt Act No. 748: On January 22, 2024, defendant MACDONALD sent defendant MORENO the following Facebook message: "*I just got burned by one of my runners he took off with a half ounce o stuff and never came back remember [defendant CHAN].*"

Overt Act No. 749: On January 23, 2024, defendant BAKER, using coded language in a recorded telephone call, told a drug customer that he had half a pound of methamphetamine available to sell to the drug customer.

Overt Act No. 750: On January 23, 2024, defendant BAKER sold approximately 220.1 grams of methamphetamine to a drug customer for $600.

Overt Act No. 751: On January 30, 2024, defendant BAKER, using

140

coded language in a recorded telephone call, agreed to sell a pound of methamphetamine to a drug customer for $1,100.

Overt Act No. 752:  On January 31, 2024, defendant BAKER sold approximately 443.8 grams of methamphetamine to a drug customer for $1,100.

Overt Act No. 753:  On January 31, 2024, defendant BAKER told a drug customer that he would sell methamphetamine for $900 a pound if the drug customer bought three pounds of methamphetamine at a time, and $850 a pound if the drug customer bought five pounds of methamphetamine at a time.

Overt Act No. 754:  On February 12, 2024, defendant SLAYTON sent defendant GAITHER $250 via Cash App.

Overt Act No. 755:  On February 13, 2024, defendant SLAYTON sent defendant GAITHER $200 via Cash App.

Overt Act No. 756:  On February 14, 2024, defendant SLAYTON sent defendant GAITHER $250 via Cash App.

Overt Act No. 757:  On February 16, 2024, defendant MACDONALD, using coded language in a Facebook message exchange, told defendants CHAN and UNGAMRUNG that he almost got caught by law enforcement with four ounces of fentanyl that he had hidden in a "*laundry detergent box.*"

Overt Act No. 758:  On February 17, 2024, defendant SLAYTON sent defendant GAITHER $250 via Cash App.

Overt Act No. 759:  On February 18, 2024, defendant SLAYTON sent defendant GAITHER $150 via Cash App.

Overt Act No. 760:  On February 20, 2024, defendant DIETZEN sent defendant BAKER $180 via Cash App.

Overt Act No. 761:  On February 22, 2024, defendant CHOTARD sent defendant CHATTERTON the following text message:

*FYI- you might not want to let [defendant RESNIK] go too many places with [M.T.] Trouble.... she ain't nothin but a has been, now lame who has to make a monthly quota to simply stay alive. . . .  Her own ppl make her pay an exact amount to stay breathing.  But let the wrong, I mean RIGHT person catch her slipping and ain't nobody gonna do a muthafuckin thing to help her.  She will NEVER be cool with me or the [Aryan Brotherhood] again.  She's burnt with us.*

Overt Act No. 762:  On February 22, 2024, defendant HILL, using coded language in a recorded telephone call, discussed with a drug customer the "*shard*" of methamphetamine that was in the methamphetamine that defendant HILL had supplied to the customer the previous day.

Overt Act No. 763:  On February 23, 2024, defendant HILL, using coded language in a recorded telephone call, told a drug customer that he was able to supply half an ounce of fentanyl for $550.

Overt Act No. 764:  On February 23, 2024, defendant SHAPIRO, using coded language in a recorded telephone call, told a drug customer that he had highly potent morphine pills available to sell to drug customers.

Overt Act No. 765:  On February 25, 2024, defendant SHAPIRO, using coded language in a recorded telephone call, told a drug customer that he had heroin available to distribute.

Overt Act No. 766:  On February 26, 2024, defendant SHAPIRO, using coded language in a recorded telephone call, agreed to supply four ounces of methamphetamine to a drug customer.

Overt Act No. 767:  On February 27, 2024, defendant SHAPIRO, using coded language in a recorded telephone call, agreed to supply methamphetamine to a drug customer.

Overt Act No. 768:  On February 27, 2024, defendant HILL, using coded language in a recorded telephone call, told unindicted co-conspirator #20 that he had high-quality drugs available to distribute.

Overt Act No. 769:  On February 27, 2024, defendant HILL, using coded language in a recorded telephone call, told a drug customer that unindicted co-conspirator #20 would deliver drugs to the customer and collect money for the drugs on behalf of defendant HILL.

Overt Act No. 770:  On March 1, 2024, defendant HILL, using coded language in a recorded telephone call, told a drug customer that he had obtained high-quality drugs to distribute.

Overt Act No. 771:  On March 2, 2024, defendant MACDONALD, using coded language in a Facebook message exchange, told defendants CHAN and UNGAMRUNG that he was obtaining high-quality drugs from a source of supply.

Overt Act No. 772:  On March 3, 2024, defendant SHAPIRO, using coded language in a recorded telephone call, told a drug customer that he would contact a different drug source of supply to obtain better quality drugs to distribute.

Overt Act No. 773:  On March 3, 2024, defendant SHAPIRO, using coded language in a recorded telephone call, instructed a drug source of supply to sell a quarter of an ounce of drugs to a customer.

Overt Act No. 774:  On March 3, 2024, defendant SLAYTON sent defendant GAITHER $1,200 via Cash App.

Overt Act No. 775:  On March 4, 2024, defendant SLAYTON sent defendant GAITHER $250 via Cash App.

Overt Act No. 776:  On March 4, 2024, unindicted co-conspirator #26, using coded language in a recorded telephone call, told

defendant HAVILAND that the Mexican Mafia and the AB still maintained a strong alliance, particularly in the federal penitentiary system.

Overt Act No. 777:  On March 4, 2024, unindicted co-conspirator #26, using coded language in a recorded telephone call, told defendant HAVILAND that unindicted co-conspirator #1 was not going to become a made AB member because other AB members, including unindicted co-conspirator #2, would lose access to and authority over the money that unindicted co-conspirator #1 was generating for the AB through criminal activities including drug distribution.

Overt Act No. 778:  On March 4, 2024, unindicted co-conspirator #26, using coded language in a recorded telephone call, told defendant HAVILAND that unindicted co-conspirator #1 needed to rely on unindicted co-conspirator #8 to keep him in good standing with the AB and to put unindicted co-conspirator #1 up for AB membership.

Overt Act No. 779:  On March 4, 2024, unindicted co-conspirator #26, using coded language in a recorded telephone call, told defendant HAVILAND that he had identified an individual who could press counterfeit Xanax pills.

Overt Act No. 780:  On March 6, 2024, defendant HILL, using coded language in a recorded telephone call, agreed to supply half an ounce of fentanyl to a drug customer.

Overt Act No. 781:  On March 8, 2024, unindicted co-conspirator #40 possessed approximately 5.7 kilograms of fentanyl to distribute to drug customers in a vehicle that he was driving in Englewood Cliffs, New Jersey.

Overt Act No. 782:  On March 8, 2024, defendant RAMACHANDRAN possessed with intent to distribute methamphetamine, heroin, and

fentanyl in a vehicle that he was driving in Redondo Beach, California.

Overt Act No. 783:  On March 10, 2024, defendant ATKINSON possessed 20.61 grams of methamphetamine and 99.76 grams of fentanyl to distribute to drug customers, as well as multiple rounds of ammunition, and $2,800 in cash in Van Nuys, California.

Overt Act No. 784:  On March 11, 2024, defendant SHAPIRO, using coded language in a recorded telephone call, ordered two ounces of drugs from a drug source of supply.

Overt Act No. 785:  On March 11, 2024, defendant HAVILAND, using coded language in a recorded telephone call, told unindicted co-conspirator #37 that she and others were attempting to determine any individuals who had cooperated with federal law enforcement in unindicted co-conspirator #48's federal prosecution.

Overt Act No. 786:  On March 12, 2024, defendant SHAPIRO, using coded language in a recorded telephone call, told a drug source of supply that a customer wanted to purchase a pound of methamphetamine.

Overt Act No. 787:  On March 12, 2024, defendant SHAPIRO, using coded language in a recorded telephone call, offered to sell a pound of methamphetamine to a drug customer for $1,400.

Overt Act No. 788:  On March 12, 2024, defendant HILL, using coded language in a recorded telephone call, told unindicted co-conspirator #21 that he had spoken with unindicted co-conspirator #1 and told him that unindicted co-conspirator #21 was not AB "*secretary material*" so that unindicted co-conspirator #1 would stop calling unindicted co-conspirator #21 as much via his contraband cellular telephone.

Overt Act No. 789:  On March 13, 2024, defendant SHAPIRO, using

coded language in a recorded telephone call, agreed to supply methamphetamine to a drug customer.

Overt Act No. 790:  On March 13, 2024, defendant HILL, using coded language in a recorded telephone call, told unindicted co-conspirator #25 that unindicted co-conspirator #40, who was one of unindicted co-conspirator #1's "**top guys,**" had recently been arrested in connection with drug distribution activity.

Overt Act No. 791:  On March 13, 2024, defendant HILL, using coded language in a recorded telephone call, told unindicted co-conspirator #25 that unindicted co-conspirator #1 had "**huge, huge problems**" because unindicted co-conspirator #40 had been delivering drugs for unindicted co-conspirator #1 when he "**disappeared**" days ago.

Overt Act No. 792:  On March 13, 2024, unindicted co-conspirator #29, using coded language in a recorded telephone call, warned defendant HAVILAND that the "**alphabet guys,**" referring to federal law enforcement agents, "**got our friend.**"

Overt Act No. 793:  On March 13, 2024, defendant HAVILAND, using coded language in a recorded telephone call, told unindicted co-conspirator #26 that unindicted co-conspirator #29 had warned her that the "**dude in Georgia**" had been arrested, and defendant HAVILAND and unindicted co-conspirator #26 discussed their concerns regarding the text messages that were on his telephone.

Overt Act No. 794:  On March 13, 2024, unindicted co-conspirator #26, using coded language in a recorded telephone call, instructed defendant HAVILAND to let unindicted co-conspirator #1 know that the individual in Georgia had been arrested, and warned defendant HAVILAND not to conduct any internet searches regarding the arrest.

Overt Act No. 795:  On March 13, 2024, defendant HAVILAND sent a text message to defendant ROMERO that stated: "*Can u come here real quick please[.]  It's important.*"

Overt Act No. 796:  On March 13, 2024, defendant HAVILAND instructed defendant ROMERO to transport approximately 4,059.2 grams of fentanyl from defendant HAVILAND's residence to an alternate location where law enforcement would not locate the drugs.

Overt Act No. 797:  On March 13, 2024, defendant ROMERO, using coded language in a recorded telephone call, told defendant VITANZA that an individual "*in Georgia got busted,*" and, as a result, she and defendant HAVILAND needed to store drugs from cartel member "*L*" at defendant VITANZA's residence.

Overt Act No. 798:  On March 13, 2024, defendant ROMERO, using coded language in a recorded telephone call, told defendant HAVILAND that she was taking the drugs from "*L*" to defendant VITANZA's residence.

Overt Act No. 799:  On March 13, 2024, defendant VITANZA, using coded language in a recorded telephone call, gave defendant ROMERO the code to a safe that was in his room, and warned defendant ROMERO to be careful when putting the drugs in it as there were already "*real*" guns in the safe.

Overt Act No. 800:  On March 13, 2024, defendant ROMERO placed approximately 4,059.2 grams of fentanyl in the safe in defendant VITANZA's residence, and warned defendants CHOTARD and VITANZA not to get their fingerprints on the drugs that she was putting in the safe.

Overt Act No. 801:  On March 13, 2024, defendant ROMERO, using coded language in a recorded telephone call, told defendant HAVILAND that she had put the drugs from "*L*" in defendant VITANZA's safe.

1    <u>Overt Act No. 802:</u>  On March 13, 2024, defendant VITANZA, using
2    coded language in a recorded telephone call, told defendant
3    CHATTERTON that law enforcement officers were at his residence, and
4    asked defendant CHATTERTON to drive by the residence and report to
5    defendant VITANZA what he saw.

6    <u>Overt Act No. 803:</u>  On March 13, 2024, defendant VITANZA, using
7    coded language in a recorded telephone call, told defendant HAVILAND
8    that he needed to speak with her in person because law enforcement
9    officers had executed a search warrant at his residence.

10   <u>Overt Act No. 804:</u>  On March 13, 2024, defendant VITANZA, using
11   coded language in a recorded telephone call, told defendant HAVILAND
12   that he was sending "***Reckless***" to his residence "***to see if the cops***
13   ***are still there.***"

14   <u>Overt Act No. 805:</u>  On March 13, 2024, defendant VITANZA
15   possessed a black Ruger LCP Max, .380 caliber firearm, bearing serial
16   number 380963495, and a tan Polymer 80 pistol with an attached laser,
17   and possessed with intent to distribute approximately 49 grams of
18   methamphetamine, in his residence in Los Angeles, California.

19   <u>Overt Act No. 806:</u>  On March 14, 2024, defendant CHOTARD, using
20   coded language in a recorded telephone call, told an inmate at the
21   California Institution for Women that law enforcement had searched
22   her and defendant VITANZA's residence and seized a large quantity of
23   fentanyl and discussed changing the number to her telephone.

24   <u>Overt Act No. 807:</u>  On March 14, 2024, defendant HILL, using
25   coded language in a recorded telephone call, told unindicted co-
26   conspirator #25 that unindicted co-conspirator #1 was "***shitting his***
27   ***pants***" due to recent law enforcement activity and was going to change
28   the telephone number of his contraband cellular telephone.

1    <u>Overt Act No. 808:</u>  On March 15, 2024, defendant SHAPIRO, using
2  coded language in a recorded telephone call, agreed to supply
3  fentanyl to a drug customer.

4    <u>Overt Act No. 809:</u>  On March 15, 2024, defendant MACDONALD,
5  using coded language in a Facebook message exchange, told defendant
6  MORENO that he had identified a drug customer who wanted to purchase
7  four ounces of drugs, and sent defendant MORENO a screenshot of
8  communications related to the upcoming drug transaction.

9    <u>Overt Act No. 810:</u>  On March 15, 2024, defendant WILLS, using
10  coded language in a recorded telephone call, warned defendant B.
11  EKELUND that defendant ROMERO and unindicted co-conspirator #40 had
12  both recently been arrested by law enforcement.

13    <u>Overt Act No. 811:</u>  On March 18, 2024, defendant MACDONALD,
14  using coded language in a Facebook message exchange, told defendant
15  MORENO that he had fentanyl available for defendant MORENO and
16  instructed defendant MORENO to obtain fentanyl from him so that he
17  would get a better price for fentanyl to distribute.

18    <u>Overt Act No. 812:</u>  On March 18, 2024, defendant MORENO sent
19  defendant MACDONALD a photograph of drugs that he had available to
20  distribute to customers, depicted below.

21
22
23
24
25
26
27
28



Overt Act No. 813:  On March 23, 2024, defendant IBARRA, using coded language in a Facebook message exchange, requested to obtain heroin from defendant MUNOZ.

Overt Act No. 814:  On April 7, 2024, defendant MORENO, using coded language in a Facebook message exchange, told defendant MACDONALD that defendant MORENO had approximately 4 grams of "**crack chips**" available to distribute to customers, including a photograph, depicted below.



Overt Act No. 815:  On April 13, 2024, defendant SLAYTON sent defendant GAITHER $120 via Cash App.

Overt Act No. 816:  On April 16, 2024, defendant WILLS, using coded language in a recorded telephone call, warned defendant B. EKELUND that defendant BREWER had recently been arrested, and that law enforcement had questioned her about him, defendant HAVILAND, and unindicted co-conspirator #1.

Overt Act No. 817:  On April 20, 2024, defendant PAYER, using coded language in a recorded telephone call, told defendant FRANCIS that he was making money while in custody selling drugs that he obtained via a "happy card."

Overt Act No. 818:  On April 22, 2024, defendant FRANCIS, using coded language in a recorded telephone call, agreed to send defendant PAYER heroin to sell to drug customers in a CDCR facility.

Overt Act No. 819:  On April 22, 2024, defendant SLAYTON sent defendant GAITHER $375 via Cash App.

Overt Act No. 820:  On April 26, 2024, unindicted co-conspirator #15, using coded language in a recorded telephone call, told defendant PAYER that she and defendant FRANCIS would send drugs to defendant PAYER in a CDCR facility.

Overt Act No. 821:  On April 27, 2024, defendant FRANCIS, using coded language in a recorded telephone call, told defendant PAYER that defendant FRANCIS was pressing "bricks" of fentanyl.

Overt Act No. 822:  On April 29, 2024, defendant SLAYTON sent defendant GAITHER $200 via Cash App.

Overt Act No. 823:  On May 6, 2024, defendant SLAYTON sent defendant GAITHER $200 via Cash App.

Overt Act No. 824:  On May 10, 2024, defendant SLAYTON sent defendant GAITHER $350 via Cash App.

Overt Act No. 825:  On May 21, 2024, defendant FRANCIS, using coded language in a recorded telephone call, told defendant PAYER that unindicted co-conspirator #2 had previously instructed defendant FRANCIS to construct a drone that would be able to carry up to 20 pounds of drugs.

Overt Act No. 826:  On May 28, 2024, defendant W. POLLAY sent defendant SLAYTON $1,800 via Cash App.

Overt Act No. 827:  On June 4, 2024, defendant W. POLLAY sent defendant SLAYTON $850 via Cash App.

<u>Overt Act No. 828:</u>  On June 20, 2024, defendant EKLUND possessed fentanyl to distribute to customers, as well as a pay/owe book, a scale, and $640 cash in a vehicle that he was driving in Los Angeles, California.

<u>Overt Act No. 829:</u>  On June 20, 2024, defendant EKLUND possessed fentanyl to distribute to customers, as well as Nazi paraphernalia and a short-barreled rifle, depicted below, in his residence in Los Angeles, California.






<u>Overt Act No. 830:</u>  On June 22, 2024, unindicted co-conspirator #28 sent defendant FRANCIS $2,950 via Cash App.

<u>Overt Act No. 831:</u>  On July 27, 2024, defendant W. POLLAY sent defendant SLAYTON $450 via Cash App.

<u>Overt Act No. 832:</u>  On July 28, 2024, defendant VITANZA sent defendant POWERS $150 via Cash App.

COUNT THREE

[18 U.S.C. § 1349]

A.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown and continuing until at least in or around July 2023, in Los Angeles and Ventura Counties, within the Central District of California, and elsewhere, defendants SEAN CRAIG GLUCKMAN ("GLUCKMAN"), COLIN NICHOLAS SLACK ("SLACK"), HENISI UTSLER ("UTSLER"), AMANDA JOY RAVIN ("RAVIN"), MARIA ANNA JAMES, aka "Maria Daizy" ("JAMES"), knowingly conspired with each other and with others known and unknown to the Grand Jury to commit Bank Fraud, in violation of Title 18, United States Code, Sections 1344(1), (2).

B.    THE PAYCHECK PROTECTION PROGRAM

1.    In or about March 2020, Congress passed and the President signed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

2.    One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  PPP was implemented by the SBA with support from the Department of the Treasury.  The program provided small businesses with funds to pay up to eight weeks of payroll costs including benefits.  Funds could also be used to pay interest on mortgages, rent, and utilities.  Self-employed individuals were able to apply for and obtain PPP loans. Applicants who were self-employed individuals must have been working as a self-employed individual on February 15, 2020.

3.    The Small Business Administration ("SBA") delegated authority to third-party lenders including Benworth Capital,

1  Fountainhead SBF LLC, Harvest Small Business LLC, and Prestamos CDFI,

2  LLC, to underwrite and approve PPP loans.  If a PPP loan application

3  was approved, the participating lender would fund the PPP loan using

4  its own monies, which were guaranteed by the SBA.

5      4.   In such a PPP loan application, the applicant was required

6  to affirm, among other things that:

7         a.   The applicant was not presently incarcerated or, for

8  any felony, subject to an indictment, criminal information,

9  arraignment, or other means by which formal criminal charges are

10 brought in any jurisdiction.

11        b.   The applicant had not, within the past five years,

12 been convicted, pleaded guilty, pleaded nolo contendere, or commenced

13 any form of parole or probation (including probation before judgment)

14 for any felony involving fraud, bribery, embezzlement, or a false

15 statement in a loan application or an application for federal

16 financial assistance a qualifying business.

17        c.   The applicant was in operation on February 15, 2020,

18 had not permanently closed, and was either an eligible self-employed

19 individual, an independent contractor, or a sole proprietorship with

20 no employees.

21     5.   The authorized representative of the applicant was also

22 required to certify that "the information provided in this application

23 and the information provided in all supporting documents and forms is

24 true and accurate in material respects," and "I understand that if the

25 funds are knowingly used for unauthorized purposes, the federal

26 government may hold me legally liable, such as for charges of fraud."

27

28

C.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.    Defendants GLUCKMAN and JAMES, as well as others known and unknown to the Grand Jury, would falsify information regarding their and their co-conspirators' employment, income, and other personal identifying information ("PII") to be used in connection with fraudulent PPP loan applications.

2.    Defendant JAMES would generate false telephone numbers to be used in connection with fraudulent PPP loan applications.

3.    Defendant GLUCKMAN would provide guidance to others, including defendants SLACK, UTSLER, JAMES, unindicted co-conspirator #2, unindicted co-conspirator #16, and unindicted co-conspirator #18 regarding how to complete their fraudulent PPP loan applications.

4.    Defendants GLUCKMAN, SLACK, UTSLER, RAVIN, JAMES, unindicted co-conspirator #2, unindicted co-conspirator #16, and unindicted co-conspirator #18 would submit fraudulent PPP loan applications.

5.    Defendants GLUCKMAN and JAMES would sign fraudulent PPP loan applications on behalf of individuals incarcerated in CDCR facilities and would submit those fraudulent PPP loan applications on behalf of incarcerated co-conspirators.

6.    Defendants GLUCKMAN and JAMES would collect a portion of the proceeds from fraudulently obtained PPP loans from co-conspirators as payment for their assistance.

1    D.   OVERT ACTS

2         Overt Act No. 1:   On March 25, 2021, unindicted co-conspirator

3    #16, using coded language in a Facebook message exchange, sent a

4    picture of himself and unindicted co-conspirator #2 in CDCR custody

5    to defendant GLUCKMAN to demonstrate that defendant GLUCKMAN was

6    communicating via Facebook with unindicted co-conspirator #16 and

7    unindicted co-conspirator #2, who was serving a life-with-parole

8    sentence for a 2003 second-degree murder conviction.

9         Overt Act No. 2:   On March 31, 2021, unindicted co-conspirator

10   #43 submitted a Borrower Application Form for Schedule C Filers Using

11   Gross Income that falsely stated that he was a self-employed

12   "artist/writer" with a gross income of $249,820.

13        Overt Act No. 3:   On April 5, 2021, defendant GLUCKMAN

14   submitted a Borrower Application Form for Schedule C Filers Using

15   Gross Income that falsely stated that he was a self-employed

16   "artist/writer" with a gross income of $249,820.

17        Overt Act No. 4:   On April 6, 2021, unindicted co-conspirator

18   #43 obtained a PPP loan in the amount of $20,833.

19        Overt Act No. 5:   On April 12, 2021, defendant GLUCKMAN

20   obtained a PPP loan in the amount of $20,833.

21        Overt Act No. 6:   On April 22, 2021, defendant GLUCKMAN and

22   defendant JAMES, using coded language in a Facebook message exchange,

23   agreed to work together to submit multiple fraudulent PPP loan

24   applications and split any loan money that they received.

25        Overt Act No. 7:   On April 22, 2021, defendant JAMES, using

26   coded language in a Facebook message exchange, told defendant GLUCKMAN

27   that she would generate false telephone numbers to use in connection

28   with fraudulent PPP loan applications.

157

Overt Act No. 8:    On April 22, 2021, defendant UTSLER submitted a Borrower Application Form for Schedule C Filers Using Gross Income that falsely stated that she was a self-employed "screen writer" with a gross income of $180,498.02.

Overt Act No. 9:    On April 22, 2021, defendant SLACK submitted a Borrower Application Form for Schedule C Filers Using Gross Income that falsely stated that he was a self-employed "screen writer" with a gross income of $180,498.02, and used identical income and expense information that defendant UTSLER used on her fraudulent application.

Overt Act No. 10:    On April 23, 2021, defendant GLUCKMAN, in a Facebook message exchange, bragged to Facebook user J.L. that he was "*making $ off [of unemployment benefits] . . . ppp loans.*"

Overt Act No. 11:    On April 23, 2021, defendant GLUCKMAN, using coded language in a Facebook message exchange, told unindicted co-conspirator #17 that he was waiting to see if a PPP loan "*funded*" before he submitted additional fraudulent PPP loan applications.

Overt Act No. 12:    On April 24, 2021, defendant UTSLER, using coded language in a Facebook message exchange, reminded defendant SLACK to sign documents in connection with a fraudulent PPP loan application.

Overt Act No. 13:    On April 24, 2021, defendant GLUCKMAN, using coded language in a Facebook message exchange, sent a photograph of unindicted co-conspirator #16's driver's license as well as unindicted co-conspirator #2's social security number to defendant JAMES to use in connection with fraudulent PPP loan applications on behalf of unindicted co-conspirator #16 and unindicted co-conspirator #2 while they were in CDCR custody.

<u>Overt Act No. 14:</u>    On April 24, 2021, defendant GLUCKMAN, using coded language in a Facebook message exchange, sent unindicted co-conspirator #18's PII to defendant JAMES to use in connection with fraudulent PPP loan applications on behalf of unindicted co-conspirator #18.

<u>Overt Act No. 15:</u>    On April 24, 2021, defendant GLUCKMAN, using coded language in a Facebook message exchange, communicated with unindicted co-conspirator #2 over a contraband cellular telephone that unindicted co-conspirator #2 possessed in CDCR custody and let unindicted co-conspirator #2 know that unindicted co-conspirator #16's fraudulent PPP loan application had been successfully submitted.

<u>Overt Act No. 16:</u>    On April 24, 2021, unindicted co-conspirator #2, using coded language in a Facebook message exchange, told defendant GLUCKMAN that he was "***panicking***" because he received a prompt to upload a photo identification in connection with his fraudulent PPP loan application and reminded defendant GLUCKMAN that he had "***stabbed ppl with less stress.***"

<u>Overt Act No. 17:</u>    On April 25, 2021, unindicted co-conspirator #2, using coded language in a Facebook message exchange, told defendant GLUCKMAN that his fraudulent PPP loan had been approved.

<u>Overt Act No. 18:</u>    On April 26, 2021, defendant SLACK received a PPP loan in the amount of $20,833 from a third-party lender.

<u>Overt Act No. 19:</u>    On April 26, 2021, defendant JAMES signed and submitted a Borrower Application Form for Schedule C Filers Using Gross Income on unindicted co-conspirator #16's behalf that falsely stated that unindicted co-conspirator #16 was a self-employed individual running a halfway house in Simi Valley, California and

1  generating a gross income of $122,756, when, in fact, unindicted co-
2  conspirator #16 was incarcerated in a CDCR facility.

3      Overt Act No. 20:   On April 26, 2021, defendant GLUCKMAN, using
4  coded language in a Facebook message exchange, reminded defendant
5  JAMES that they had fraudulent PPP loan applications to complete.

6      Overt Act No. 21:   On April 27, 2021, defendant JAMES, using
7  coded language in a Facebook message exchange, told defendant GLUCKMAN
8  that she had signed a fraudulent PPP loan application for unindicted
9  co-conspirator #16, and sent defendant GLUCKMAN photographs of the
10 completed fraudulent application.

11     Overt Act No. 22:   On April 27, 2021, defendant GLUCKMAN, using
12 coded language in a Facebook message exchange, told unindicted co-
13 conspirator #17 that he could submit fraudulent PPP loan applications
14 using a driver's license, social security number, and bank account
15 number, and told unindicted co-conspirator #17 that defendant GLUCKMAN
16 could generate all those pieces of information on unindicted co-
17 conspirator #17's behalf if needed.

18     Overt Act No. 23:   On April 27, 2021, defendant GLUCKMAN, using
19 coded language in a Facebook message exchange, told unindicted co-
20 conspirator #17 that his "***model***" for generating fraudulent PPP loan
21 applications was $41,666 and that "***U get 2npayments of [$20,000].***"

22     Overt Act No. 24:   On April 29, 2021, defendant UTSLER received
23 a PPP loan in the amount of $20,833 from a third-party lender.

24     Overt Act No. 25:   On April 30, 2021, unindicted co-conspirator
25 #16 obtained a PPP loan in the amount of $20,833 from a third-party
26 lender.

27     Overt Act No. 26:   On May 3, 2021, unindicted co-conspirator
28 #18 submitted a Borrower Application Form for Schedule C Filers Using

160

Gross Income that falsely stated that he was a self-employed "food service" worker with a gross income of $204,899.

Overt Act No. 27:   On May 4, 2021, defendant GLUCKMAN, using coded language in a Facebook message exchange, told defendant JAMES that "*[t]here people in prison [that needed help with fraudulent PPP loan applications] and they have [access to]. A [contraband] cell ph[o]ne for 9!Mor min.*"

Overt Act No. 28:   On May 4, 2021, unindicted co-conspirator #2 sent defendant GLUCKMAN the following Facebook message:
*Hey its waylon I got the [contraband cellular] phone all night hit me back asap let's get some stuff done please okay.*

Overt Act No. 29:   On May 4, 2021, defendant GLUCKMAN received the following Facebook message from defendant Smith: "*hey bro can u send me a lil cheat sheet on how to do the ppp loan plz bro.*"

Overt Act No. 30:   On May 5, 2021, defendant GLUCKMAN sent defendant JAMES the following photograph via Facebook Messenger:



Overt Act No. 31:   On May 16, 2021, defendant JAMES sent
defendant GLUCKMAN the following photograph via Facebook Messenger:



Overt Act No. 32:   On May 16, 2021, defendant UTSLER sent
defendant GLUCKMAN the following Facebook message:

*Tell me why that stupid womply is saying for my second draw that I
have requested to cancel my application???*

1    Overt Act No. 33:    On May 16, 2021, defendant RAVIN submitted a

2 Borrower Application Form for Schedule C Filers Using Gross Income

3 that falsely stated that she was a self-employed and working in

4 "catering" with a gross income of $184,254.

5    Overt Act No. 34:    On May 17, 2021, defendant JAMES obtained a

6 PPP loan in the amount of $20,832 from a third-party lender.

7    Overt Act No. 35:    On May 20, 2021, defendant RAVIN obtained a

8 PPP loan in the amount of $20,833 from a third-party lender.

9    Overt Act No. 36:    On May 25, 2021, defendant SLACK sent

10 defendant GLUCKMAN the following photographs via Facebook Messenger:




1    <u>Overt Act No. 37:</u>    On May 31, 2021, unindicted co-conspirator
2    #18 obtained a PPP loan in the amount of $20,833 from a third-party
3    lender.

4    <u>Overt Act No. 38:</u>    On June 15, 2021, defendant GLUCKMAN sent
5    defendant SLACK the following photograph via Facebook Messenger:



25    <u>Overt Act No. 39:</u>    On June 15, 2021, defendant GLUCKMAN sent
26    defendant SLACK the following Facebook message: "***Your shits been in***
27    ***there bank approved since April.***"

1    Overt Act No. 40:    On September 18, 2021, defendant UTSLER

2  applied to request that the SBA forgive the $20,833 PPP loan that she

3  fraudulently obtained and falsely certified that she complied with all

4  requirements in the Paycheck Protection Program Rules.

5    Overt Act No. 41:    On November 23, 2021, defendant UTSLER

6  obtained an SBA forgiveness payment for the $20,833 PPP loan that she

7  fraudulently obtained.

8    Overt Act No. 42:    On March 23, 2022, defendant RAVIN applied

9  to request that the SBA forgive the $20,833 PPP loan that she

10  fraudulently obtained and falsely certified that she complied with all

11  requirements in the Paycheck Protection Program Rules.

12    Overt Act No. 43:    On March 30, 2022, defendant RAVIN obtained

13  an SBA forgiveness payment for the $20,833 PPP loan that defendant

14  UTSLER fraudulently obtained.

15    Overt Act No. 44:    Between December 2022 and July 2023,

16  defendant SLACK received and ignored multiple notices from a third-

17  party lender to re-pay his $20,833 PPP loan.

18

19

20

21

22

23

24

25

26

27

28

COUNTS FOUR THROUGH TEN

[18 U.S.C. § 1344(2), 2(a)]

Beginning on a date unknown to the Grand Jury, and continuing until in or around January 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant SEAN CRAIG GLUCKMAN ("GLUCKMAN"), together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to obtain moneys, funds, credits, assets, and other property owned by and in the custody and control of federally-insured financial institutions by means of material false and fraudulent pretenses, representations, and promises.

A.    CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT UNEMPLOYMENT INSURANCE

1.    The California Employment Development Department ("EDD") administered the unemployment insurance ("UI") benefits program for the State of California.

2.    On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which President Donald J. Trump signed into law on March 27, 2020. The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

3.    Prior to the enactment of the CARES Act, to be eligible for UI benefits administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of

wages from an employer in the 18 months preceding his/her UI benefits claim.  Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

4.    The CARES Act established a new program — Pandemic Unemployment Assistance ("PUA") — to provide UI benefits during the COVID-19 pandemic to people who did not qualify for regular UI benefits, including business owners, self-employed workers, independent contractors, and those with a limited work history, who were out of business or had significantly reduced their services as a direct result of the pandemic.  UI benefits provided under the PUA program were sometimes referred to as PUA benefits.

5.    Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

6.    Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications.  Claimants reported their total income for the 2019 calendar year on the application.  The stated income was used to calculate the benefits to be paid, which were at least $167 per week.

7.    A PUA benefits claimant was required to answer various questions on his/her application to establish his/her eligibility for the benefits.  The claimant was required to provide his/her name, Social Security Number, and mailing address.  The claimant was also

1  required to identify a qualifying occupational status and COVID-19
2  related reason for being out of work.

3       8.   After it approved an application for UI benefits, including
4  an application submitted pursuant to the PUA program, the EDD would
5  create a debit account ("EDD debit account") with Bank of America.  An
6  Electronic Bill Payment ("EBP") debit card linked to the EDD debit
7  account would then be mailed via the United States Postal Service from
8  Bank of America to the claimant at the address the claimant provided
9  as his/her mailing address on his/her UI benefits application.

10      9.   The EDD would deposit UI benefits, including pandemic
11 benefits, to the EDD debit account. The debit card could then be used
12 to withdraw the benefits from the EDD debit account in cash, using
13 automated teller machines ("ATMs"), including ATMs that Bank of
14 America operated, and to pay for purchases.

15      10.  Bank of America was a financial institution that was
16 insured by the Federal Deposit Insurance Corporation.

17      11.  Defendant GLUCKMAN was a resident of Los Angeles County,
18 California.

19 B.   THE FRAUDULENT SCHEME

20      12.  The fraudulent scheme operated and was carried out, in
21 substance, in the following manner:

22           a.   Defendant GLUCKMAN or another individual would submit
23 a fraudulent UI application to EDD using a victim's name and personal
24 identifying information ("PII").  The PII sometimes accurately
25 reflected that of the victim and was sometimes incorrect.

26           b.   Defendant GLUCKMAN would obtain a Bank of America
27 debit card with access to EDD UI funds.

28

13.   Defendant GLUCKMAN would use the Bank of America debit card to withdraw UI funds from an automated teller machine ("ATM") without the victim's permission.  In doing so, defendant GLUCKMAN falsely represented to Bank of America that he had the victim's authority to use the ATM card and concealed from Bank of America that he was not authorized to use the ATM card.

C.   EXECUTION OF THE SCHEME

14.   On or about the following dates, in Los Angeles and Riverside Counties, within the Central District of California, and elsewhere, defendant GLUCKMAN, together with others known and unknown to the Grand Jury, aiding and abetting each other, committed and willfully caused others to commit the following acts, each of which constituted an execution of the fraudulent scheme:

| COUNT | DATE | ACT |
|-------|------|-----|
| FOUR | 8/20/2020 | Use of an EDD debit card ending in 2603 issued in the name of W.S., at Bank of America to make a withdrawal of $1,000, in Tarzana, California. |
| FIVE | 9/06/2020 | Use of an EDD debit card ending in 6488 issued in the name of D.L., at Bank of America to make a withdrawal of $1,000, in Los Angeles, California. |
| SIX | 9/6/2020 | Use of an EDD debit card ending in 9505 issued in the name of C.J., at Bank of America to make a withdrawal of $1,000, in Los Angeles, California. |
| SEVEN | 9/6/2020 | Use of an EDD debit card ending in 0458 issued in the name of W.D., at Bank of America to make a withdrawal of $1,000, in Los Angeles, California. |

| COUNT | DATE | ACT |
|-------|------|-----|
| EIGHT | 9/6/2020 | Use of an EDD debit card ending in 8864 issued in the name of Dav.L., at Bank of America to make a withdrawal of $1,000, in Los Angeles, California. |
| NINE | 9/6/2020 | Use of an EDD debit card ending in 7312 issued in the name of S.B., at Bank of America to make a withdrawal of $1,000, in Los Angeles, California. |
| TEN | 1/21/2021 | Use of an EDD debit card ending in 2557 issued in the name of P.H., at Bank of America to make a withdrawal of $1,000, in Northridge, California. |

COUNTS ELEVEN THROUGH TWELVE

[18 U.S.C. § 1028A(a)(1)]

Paragraphs 1 through 13 of Counts Four through Ten of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant GLUCKMAN, as set forth below, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification that defendant knew belonged to other persons, namely, the names and Bank of America EDD debit account numbers of the individuals identified by initial below, during and in relation to the felony violations charged in the counts of this Indictment identified below:

| COUNT | DATE | OTHER PERSON(S) | FELONY VIOLATION |
|-------|------|-----------------|------------------|
| ELEVEN | 8/20/2020 | W.S. | 18 U.S.C. § 1344(a) as charged in Count Four ___ |
| TWELVE | 9/06/2020 | D.L. | 18 U.S.C. § 1344(a) as charged in Count Five ___ |

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about September 11, 2021, in Los Angeles County, within the Central District of California, defendant CIARA JACOBS, also known as "Simba Jay," knowingly and intentionally possessed with intent to distribute methamphetamine, a Schedule II controlled substance, a photo of which is below.



COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about January 10, 2022, in Los Angeles County, within the Central District of California, defendant WALTER HUBERT LEIMERT, also known as "Creepz," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 109.24 grams, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

## COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about January 10, 2022, in Los Angeles County, within the Central District of California, defendant WALTER HUBERT LEIMERT, also known as "Creepz," knowingly and intentionally possessed with intent to distribute heroin, a Schedule I narcotic drug controlled substance.

## COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about February 3, 2022, in Los Angeles County, within the Central District of California, defendant ALBERT ETHAN EKLUND knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 137.8 grams, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

## COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about February 3, 2022, in Los Angeles County, within the Central District of California, defendant ALBERT ETHAN EKLUND knowingly and intentionally possessed with intent to distribute heroin, a Schedule I narcotic drug controlled substance.

## COUNT EIGHTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about March 23, 2022, in Los Angeles County, within the Central District of California, defendant DANIEL YACOUB, also known as "Danny Boy," knowingly and intentionally possessed with intent to distribute heroin, a Schedule I narcotic drug controlled substance.

COUNT NINETEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about March 23, 2022, in Los Angeles County, within the Central District of California, defendant DANIEL YACOUB, also known as "Danny Boy," knowingly and intentionally possessed with intent to distribute methamphetamine, a Schedule II controlled substance.

COUNT TWENTY

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about March 23, 2022, in Los Angeles County, within the
Central District of California, defendant DANIEL YACOUB, also known
as "Danny Boy," knowingly and intentionally possessed with intent to
distribute N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide
("fentanyl"), a Schedule II controlled substance.

<u>COUNT TWENTY-ONE</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about May 24, 2022, in Los Angeles County, within the Central District of California, defendant ADAM L. RODNEY knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 83.02 grams, of methamphetamine, a Schedule II controlled substance.

## COUNT TWENTY-TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

On or about May 24, 2022, in Los Angeles County, within the Central District of California, defendant ADAM L. RODNEY knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 1,165.23 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

COUNT TWENTY-THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about February 9, 2023, in Los Angeles County, within the Central District of California, defendant KEVIN MULVIHILL, also known as "Mo," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 1,999 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

On or about February 9, 2023, in Los Angeles County, within the Central District of California, defendant KEVIN MULVIHILL, also known as "Mo," knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 743.6 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

## COUNT TWENTY-FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about February 9, 2023, in Los Angeles County, within the Central District of California, defendant KEVIN MULVIHILL, also known as "Mo," knowingly and intentionally possessed with intent to distribute cocaine base, a Schedule II narcotic drug controlled substance.

<u>COUNT TWENTY-SIX</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about February 21, 2023, in Los Angeles County, within the Central District of California, defendant KEVIN MULVIHILL, also known as "Mo," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 172 grams, of methamphetamine, a Schedule II controlled substance.

## COUNT TWENTY-SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi)]

On or about February 21, 2023, in Los Angeles County, within the Central District of California, defendant KEVIN MULVIHILL, also known as "Mo," knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 304 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

COUNT TWENTY-EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about February 21, 2023, in Los Angeles County, within the Central District of California, defendant KEVIN MULVIHILL, also known as "Mo," knowingly and intentionally possessed with intent to distribute heroin, a Schedule I narcotic drug controlled substance.

COUNT TWENTY-NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about February 27, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 195.6 grams, of methamphetamine, a Schedule II controlled substance.

## COUNT THIRTY

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about February 27, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally possessed with intent to distribute heroin, a Schedule I narcotic drug controlled substance.

## COUNT THIRTY-ONE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about March 27, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 214.1 grams, of methamphetamine, a Schedule II controlled substance.

## COUNT THIRTY-TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about March 27, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally possessed with intent to distribute heroin, a Schedule II controlled substance.

## COUNT THIRTY-THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i)]

On or about April 13, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally possessed with intent to distribute at least one kilogram, that is, approximately 1,006.5 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance,

## COUNT THIRTY-FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about April 13, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 3,726 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THIRTY-FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

On or about April 13, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 3,480.16 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

<u>COUNT THIRTY-SIX</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about June 23, 2023, in Los Angeles County, within the Central District of California, defendant DONALD EVERETT CUNNINGHAM, also known as ("aka") "DJ," aka "Monster," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 336 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THIRTY-SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

On or about June 23, 2023, in Los Angeles County, within the Central District of California, defendant DONALD EVERETT CUNNINGHAM, also known as ("aka") "DJ," aka "Monster," knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 953.5 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

<u>COUNT THIRTY-EIGHT</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about July 20, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 53.90 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THIRTY-NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i)]

On or about July 20, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally possessed with intent to distribute at least 100 grams, that is, approximately 185.3 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

<u>COUNT FORTY</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about July 20, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally distributed N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

COUNT FORTY-ONE

[21 U.S.C. §§ 841(a)(1), (b)(2)]

On or about July 20, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly and intentionally possessed with intent to distribute alprazolam, a Schedule IV controlled substance.

1

COUNT FORTY-TWO

2

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

3

On or about August 17, 2023, in Los Angeles County, within the

4

Central District of California, defendant KENNETH RICHARD MACDONALD,

5

also known as ("aka") "Misfit," aka "Kenny Mac," knowingly and

6

intentionally possessed with intent to distribute N-phenyl-N-[1-(2-

7

phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II

8

controlled substance, pictured below.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



COUNT FORTY-THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about September 26, 2023, in Los Angeles County, within the Central District of California, defendant BRIAN GLENN EKELUND, also known as ("aka") "Rascal," GUY MANNING WILLS, aka "FedEx," unindicted co-conspirator #35, and unindicted co-conspirator #36, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 3,122.8 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FORTY-FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i); 18 U.S.C. § 2(a)]

On or about September 26, 2023, in Los Angeles County, within the Central District of California, defendant BRIAN GLENN EKELUND, also known as ("aka") "Rascal," GUY MANNING WILLS, aka "FedEx," unindicted co-conspirator #35, and unindicted co-conspirator #36, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute at least 100 grams, that is, approximately 619.7 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

## COUNT FORTY-FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii); 18 U.S.C. § 2(a)]

On or about September 26, 2023, in Los Angeles County, within the Central District of California, defendant BRIAN GLENN EKELUND, also known as ("aka") "Rascal," GUY MANNING WILLS, aka "FedEx," unindicted co-conspirator #35, and unindicted co-conspirator #36, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 552.6 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

<u>COUNT FORTY-SIX</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about October 24, 2023, in Los Angeles County, within the Central District of California, defendant PAGET GARY EKELUND knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 135.3 grams, of methamphetamine, a Schedule II controlled substance.

## COUNT FORTY-SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

On or about October 24, 2023, in Los Angeles County, within the Central District of California, defendant PAGET GARY EKELUND knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 982.2 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

<u>COUNT FORTY-EIGHT</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about November 15, 2023, in Los Angeles County, within the Central District of California, defendant MICHAEL ANTHONY CHATTERTON, also known as "Reckless," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 27.96 grams, of methamphetamine, a Schedule II controlled substance, depicted in the photo below.

1

## COUNT FORTY-NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about November 28, 2023, in Los Angeles County, within the Central District of California, defendant MICHAEL ANTHONY CHATTERTON, also known as "Reckless," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 10.26 grams, of methamphetamine, a Schedule II controlled substance.

<u>COUNT FIFTY</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about January 1, 2024, in Los Angeles County, within the Central District of California, defendant RYAN SCOTT HARBAND knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 217.85 grams, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

<u>COUNT FIFTY-ONE</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi)]

On or about January 1, 2024, in Los Angeles County, within the Central District of California, defendant RYAN SCOTT HARBAND knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 82.89 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>COUNT FIFTY-TWO</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about January 3, 2024, in Los Angeles County, within the Central District of California, defendant CLAIRE PATRICIA HAVILAND, also known as ("aka") "Trish," aka "SFV Mama," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 26.1 grams, of methamphetamine, a Schedule II controlled substance, depicted in the photo below.



COUNT FIFTY-THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about January 8, 2024, in Los Angeles County, within the Central District of California, defendant KEVIN D. FRANCIS knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 31.18 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FIFTY-FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi)]

On or about January 8, 2024, in Los Angeles County, within the Central District of California, defendant KEVIN D. FRANCIS knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 86.23 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>COUNT FIFTY-FIVE</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about January 10, 2024, in Los Angeles County, within the Central District of California, defendant CLAIRE PATRICIA HAVILAND, also known as ("aka") "Trish," aka "SFV Mama," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 19.1 grams, of methamphetamine, a Schedule II controlled substance, depicted in the photo below.



<u>COUNT FIFTY-SIX</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about January 31, 2024, in Los Angeles County, within the Central District of California, defendant ROBERT ANTHONY BAKER knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 443.8 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FIFTY-SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about March 10, 2024, in Los Angeles County, within the Central District of California, defendant PAUL ERIC ATKINSON, also known as ("aka") "Pork Chop," aka "Chops," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 20.61 grams, of methamphetamine, a Schedule II controlled substance.

## COUNT FIFTY-EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi)]

On or about March 10, 2024, in Los Angeles County, within the Central District of California, defendant PAUL ERIC ATKINSON, also known as ("aka") "Pork Chop," aka "Chops," knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 99.76 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

1              COUNT FIFTY-NINE

2        [21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

3      On or about March 18, 2024, in Los Angeles County, within the

4  Central District of California, defendant JOHN MICHAEL REED, also

5  known as "Johnny Boi," knowingly and intentionally possessed with

6  intent to distribute at least 50 grams, that is, approximately 86.13

7  grams, of a mixture or substance containing a detectable amount of

8  methamphetamine, a Schedule II controlled substance, depicted in the

9  photo below.



COUNT SIXTY

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi); 18 U.S.C. § 2(a)]

On or about March 13, 2024, in Los Angeles County, within the Central District of California, defendants MICHAEL VITANZA, also known as ("aka") "Suspect," CLAIRE PATRICIA HAVILAND, aka "Trish," aka "SFV Mama," CHARISSA MARIE CHOTARD, aka "Brat," and JULIE ANN ROMERO, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 4,059.2 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

<u>COUNT SIXTY-ONE</u>

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about March 13, 2024, in Los Angeles County, within the Central District of California, defendant MICHAEL VITANZA, also known as "Suspect," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 49.0 grams, of methamphetamine, a Schedule II controlled substance.

## COUNT SIXTY-TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about March 18, 2024, in Los Angeles County, within the Central District of California, defendant JOHN MICHAEL REED, also known as "Johnny Boi," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 86.13 grams, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

COUNT SIXTY-THREE

[18 U.S.C. § 922(g)(1)]

On or about June 23, 2023, in Los Angeles County, within the Central District of California, defendant DONALD EVERETT CUNNINGHAM, also known as ("aka") "DJ," aka "Monster," ("CUNNINGHAM") knowingly possessed the following firearms, in and affecting interstate and foreign commerce:

1.    a Sterling Arms .25 caliber pistol, bearing serial number 058339;

2.    an HS Produkt, Hellcat, 9mm pistol, bearing serial number BB540124;

3.    a Kel-Tec, PF-9, 9mm pistol, bearing serial number RVK24;

4.    a Kimber, Stainless Pro Carry II, .45 caliber pistol, bearing serial number KR292302;

5.    a Sturm, Ruger & Co., GP100, .357 revolver, bearing serial number 1742248;

6.    a Beretta, 950, .22 caliber pistol, bearing serial number 87529CC;

7.    an A.A. Arms, AP9, 9mm pistol, bearing an obliterated serial number;

8.    a High Standard, Model 30, .22 caliber rifle, bearing no serial number; and

9.    a Mauser, P08, 9mm pistol, bearing no serial number.

Defendant CUNNINGHAM possessed such firearms knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by imprisonment for a term exceeding one year:

1          1.    Possession of a Controlled Substance for Sale, in violation

2    of California Health and Safety Code Section 11378, in the Superior

3    Court for the State of California, County of Los Angeles, case number

4    LA060537, on or about December 12, 2008;

5          2.    Possession of a Dangerous Weapon, in violation of

6    California Penal Code Section 29800(a)(1), in the Superior Court for

7    the State of California, County of Los Angeles, case number LA060537,

8    on or about December 12, 2008;

9          3.    Possession of Methamphetamine, in violation of California

10   Health and Safety Code Section 11377(a), in the Superior Court for the

11   State of California, County of Los Angeles, case number LA066458, on

12   or about May 20, 2011;

13         4.    Possession of Methamphetamine, in violation of California

14   Health and Safety Code Section 11377(a), in the Superior Court for the

15   State of California, County of Los Angeles, case number PA074960, on

16   or about May 6, 2013;

17         5.    Possession of a Controlled Substance, in violation of

18   California Health and Safety Code Section 11350(a), in the Superior

19   Court for the State of California, County of Los Angeles, case number

20   LA073726, on or about June 4, 2013;

21         6.    Possession of Methamphetamine, in violation of California

22   Health and Safety Code Section 11377(a), in the Superior Court for the

23   State of California, County of Los Angeles, case number LA073659, on

24   or about June 4, 2013; and

25         7.    Felon in Possession of a Firearm, in violation of

26   California Penal Code Section 29800(a)(1), in the Superior Court for

27   the State of California, County of Los Angeles, case number BA444115,

28   on or about March 24, 2016.

<u>COUNT SIXTY-FOUR</u>

[18 U.S.C. § 922(g)(1)]

On or about July 20, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY ("RILEY") knowingly possessed the following firearm, in and affecting interstate and foreign commerce: a Taurus, Model PT-38S, .380 caliber semi-automatic pistol, bearing serial number LBM31379.

Defendant RILEY possessed such firearms knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by imprisonment for a term exceeding one year:

1.    Possession of a Firearm by a Felon, in violation of California Penal Code Section 12021(A)(1), in the Superior Court for the State of California, County of Los Angeles, case number LA067081, on or about March 21, 2011;

2.    Transportation or Sale of Methamphetamine, in violation of California Health and Safety Code Section 11379(A)), in the Superior Court for the State of California, County of Los Angeles, case number LA067081, on or about March 21, 2011;

3.    Possession of Methamphetamine for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court for the State of California, County of Los Angeles, case number LA067071, on or about March 21, 2011.

COUNT SIXTY-FIVE

[18 U.S.C. § 922(g)(1)]

On or about October 24, 2023, in Los Angeles County, within the Central District of California, defendant SCOTT JOSHUA VENNUM ("VENNUM") knowingly possessed the following firearms, in and affecting interstate and foreign commerce:

1.    a Glock model 22, 40 caliber, semi-automatic pistol, bearing serial number AAFF852; and

2.    a Smith & Wesson model MP 15, 5.56 caliber, semi-automatic rifle, bearing serial number TH32357.

Defendant VENNUM possessed such firearms knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by imprisonment for a term exceeding one year:

1.    Possession of Methamphetamine for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court for the State of California, County of Orange, case number 03CF2251, on or about April 2, 2004;

2.    Possession of Methamphetamine for Sale, in violation of California Health and Safety Code Section 11377, in the Superior Court for the State of California, County of Orange, case number 06HF1776, on or about November 27, 2006;

3.    Accessory after the Fact, in violation of California Penal Code Section 2, in the Superior Court for the State of California, County of Orange, case number 06NF4421, on or about April 16, 2007;

4.    False Impersonation, in violation of California Penal Code Section 529(3), in the Superior Court for the State of California, County of Orange, case number 09WF1762, on or about May 17, 2010;

225

5.      Unauthorized Use of Another Person's Personal Identifying Information, in violation of California Penal Code 530.5(a) in violation of California Penal Code 484e(a) in the Superior Court for the State of California, County of Orange, case number 09HF1173, on or about May 17, 2010;

6.      Petty Theft, in violation of California Penal Code 484e(a) in the Superior Court for the State of California, County of Orange, case number 09HF1173, on or about May 17, 2010.

COUNT SIXTY-SIX

[18 U.S.C. § 922(g)(1)]

On or about October 24, 2023, in Los Angeles County, within the Central District of California, defendant PAGET GARY EKELUND ("P. EKELUND") knowingly possessed the following firearms, in and affecting interstate and foreign commerce:

1.    a Smith & Wesson model M&P 9C, 9mm caliber, semi-automatic pistol, bearing serial number HUJ4144;

2.    a Remington Arms model 700, 7-08 caliber, bolt action rifle, bearing serial number G6821774;

3.    a Remington Arms model 742, 30-06 caliber, bolt action rifle, bearing serial number 37032;

4.    a Weatherby model Vanguard, 30-06 caliber, bolt action rifle, bearing serial number VB226525; and

5.    a Sig Sauer model P220, 45 caliber, semi-automatic pistol, bearing serial number 37A005830.

Defendant P. EKELUND possessed such firearms knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by imprisonment for a term exceeding one year:

1.    Receiving Stolen Property, in violation of California Penal Code Section 496(a), in the Superior Court for the State of California, County of Los Angeles, case number PA029769, on or about July 24, 1998; and

2.    Vehicle Theft, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, case number LA094157, on or about August 19, 2022.

227

## COUNT SIXTY-SEVEN

[18 U.S.C. § 922(g)(1)]

On or about March 13, 2024, in Los Angeles County, within the Central District of California, defendant MICHAEL VITANZA, also known as "Suspect," knowingly possessed the following firearm, in and affecting interstate and foreign commerce: a black Ruger LCP Max, .380 caliber firearm, bearing serial number 380963495, knowing that he had previously been convicted of the following felony crime punishable by a term of imprisonment exceeding one year: Criminal Threats, in violation of California Penal Code Section 422, in the Superior Court for the State of California, County of Los Angeles, case number PA858256, on or about June 25, 2008.

<u>COUNT SIXTY-EIGHT</u>

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about April 13, 2023, in Los Angeles County, within the Central District of California, defendant RICHARD KEVIN RILEY knowingly possessed firearms, namely: (1) a SIG Sauer P226 pistol, bearing serial number U833548; (2) a Sten MKII rifle, bearing serial number 49873; (3) a Palmetto State Armory M4 rifle, bearing serial number LW184316; (4) a Beretta ARX 100 semi-automatic rifle, bearing serial number SX03106; (5) two Polymer80 firearms, bearing no serial numbers; (6) a Beretta Tomcat pistol, bearing serial number DAA096925; and (7) a Hi-Point Haskell JHP45 pistol, bearing serial number X4120545, in furtherance of a drug trafficking crime, namely, conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 846, as charged in Count Two of this Indictment.

1

<u>COUNT SIXTY-NINE</u>

2

[18 U.S.C. § 924(c)(1)(A)(i)]

3       On or about June 23, 2023, in Los Angeles County, within the

4   Central District of California, defendant DONALD EVERETT CUNNINGHAM,

5   also known as ("aka") "DJ," aka "Monster," knowingly possessed

6   firearms, namely: (1) a Sterling Arms .25 caliber pistol, bearing

7   serial number 058339; (2) an HS Produkt, Hellcat, 9mm pistol, bearing

8   serial number BB540124; (3) a Kel-Tec, PF-9, 9mm pistol, bearing

9   serial number RVK24; (4) a Kimber, Stainless Pro Carry II, .45

10  caliber pistol, bearing serial number KR292302; (5) a Sturm, Ruger &

11  Co., GP100, .357 revolver, bearing serial number 1742248; (6) a

12  Beretta, 950, .22 caliber pistol, bearing serial number 87529CC;

13  (7) an A.A. Arms, AP9, 9mm pistol, bearing an obliterated serial

14  number; (8) a High Standard, Model 30, .22 caliber rifle, bearing no

15  serial number; and (9) a Mauser, P08, 9mm pistol, bearing no serial

16  number, in furtherance of a drug trafficking crime, namely,

17  conspiracy to possess with intent to distribute and to distribute

18  controlled substances, in violation of Title 21, United States Code,

19  Section 846, as charged in Count Two of this Indictment.

20

21

22

23

24

25

26

27

28

COUNT SEVENTY

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about July 20, 2023, in Los Angeles County, within the
Central District of California, defendant RICHARD KEVIN RILEY
knowingly possessed a firearm, namely a Taurus, Model PT-38S, .380
caliber semi-automatic pistol, bearing serial number LBM31379 in
furtherance of a drug trafficking crime, namely, conspiracy to
possess with intent to distribute and to distribute controlled
substances, in violation of Title 21, United States Code, Section
846, as charged in Count Two of this Indictment.

COUNT SEVENTY-ONE

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about October 24, 2023, in Los Angeles County, within the Central District of California, defendant PAGET GARY EKELUND knowingly possessed firearms, namely (1) a Smith & Wesson model M&P 9C, 9mm caliber, semi-automatic pistol, bearing serial number HUJ4144; (2) a Remington Arms model 700, 7-08 caliber, bolt action rifle, bearing serial number G6821774; (3) a Remington Arms model 742, 30-06 caliber, bolt action rifle, bearing serial number 37032; (4) a Weatherby model Vanguard, 30-06 caliber, bolt action rifle, bearing serial number VB226525; and (5) a Sig Sauer model P220, 45 caliber, semi-automatic pistol, bearing serial number 37A005830 in furtherance of a drug trafficking crime, namely, conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 846, as charged in Count Two of this Indictment.

## COUNT SEVENTY-TWO

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about March 13, 2024, in Los Angeles County, within the Central District of California, defendant MICHAEL VITANZA, also known as "Suspect," knowingly possessed firearms, namely (1) a black Ruger LCP Max, .380 caliber firearm, bearing serial number 380963495; and (2) a tan Polymer 80 pistol with attached laser with no serial number, in furtherance of a drug trafficking crime, namely, conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 846, as charged in Count Two of this Indictment.

COUNT SEVENTY-THREE

[18 U.S.C. § 1029(a)(3)]

On or about February 17, 2022, in Los Angeles County, within the Central District of California, defendant BRIANNE BREWER, also known as "Bri," ("BREWER") knowingly and with intent to defraud, possessed at least fifteen unauthorized access devices (as defined in Title 18, United States Code, Sections 1029(e)(1) and (3)), namely, approximately one social security number, fourteen credit account numbers, and five dates of birth all belonging to persons other than defendant BREWER, with said possession affecting interstate and foreign commerce.

## COUNT SEVENTY-FOUR

[18 U.S.C. § 1028A(a)(1)]

On or about February 17, 2022, in Los Angeles County, within the Central District of California, defendant BRIANNE BREWER, also known as "Bri," ("BREWER") knowingly possessed, without lawful authority, a means of identification that defendant BREWER knew belonged to another person, namely, the name, date of birth, and driver's license number of victim N.B., during and in relation to the offense of Possession of Fifteen or More Unauthorized Access Devices, a felony violation of Title 18, United States Code, Section 1029(a)(3), as charged in Count Seventy-Three of this Indictment.

COUNT SEVENTY-FIVE

[18 U.S.C. § 1029(a)(3)]

On or about March 28, 2024, in Los Angeles County, within the Central District of California, defendant CORY DANIEL SIMS, also known as "Sicko," ("SIMS") knowingly and with intent to defraud, possessed at least fifteen unauthorized access devices (as defined in Title 18, United States Code, Sections 1029(e)(1) and (3)), namely, approximately four social security numbers, five credit account numbers, seven bank account numbers, and five dates of birth all belonging to persons other than defendant SIMS, with said possession affecting interstate and foreign commerce.

## COUNT SEVENTY-SIX

[18 U.S.C. § 1028A(a)(1)]

On or about March 28, 2024, in Los Angeles County, within the Central District of California, defendant CORY DANIEL SIMS, also known as "Sicko," knowingly possessed, without lawful authority, a means of identification that defendant SIMS knew belonged to another person, namely, the name, date of birth, and social security number of victim M.N., during and in relation to the offense of Possession of Fifteen or More Unauthorized Access Devices, a felony violation of Title 18, United States Code, Section 1029(a)(3), as charged in Count Seventy-Five of this Indictment.

1                        FORFEITURE ALLEGATION ONE

2    [18 U.S.C. § 1963, 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c)]

3          1.    Pursuant to Federal Rule of Criminal Procedure 32.2, notice

4    is hereby given to the defendants charged in Count One of the

5    Indictment that the United States of America will seek forfeiture as

6    part of any sentence, pursuant to Title 18, United States Code,

7    Section 1963, Title 18, United States Code, Section 981(a)(1)(C), and

8    Title 28, United States Code, Section 2461(c), in the event of any

9    such defendant's conviction under Count One of the Indictment.

10         2.    Any defendant so convicted shall forfeit to the United

11   States of America the following:

12             (a)   Any interest the convicted defendant has acquired or

13   maintained in violation of section 1962;

14             (b)   Any interest in, security of, claim against, or

15   property or contractual right of any kind affording a source or

16   influence over, any enterprise which the convicted defendant has

17   established, operated, controlled, conducted, or participated in the

18   conduct of, in violation of section 1962;

19             (c)   Any property constituting, or derived from, any

20   proceeds which the person obtained, directly or indirectly, from

21   racketeering activity in violation of section 1962; and

22             (d)   To the extent such property is not available for

23   forfeiture, a sum of money equal to the total value of the property

24   described in subparagraphs (a), (b), and (c).

25         3.    Pursuant to Title 21, United States Code, Section 853(p),

26   as incorporated by Title 28, United States Code, Section 2461(c), and

27   Title 18, United States Code, Section 1963(m), any defendant so

28   convicted shall forfeit substitute property, up to the total value of

                                    238

the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1

FORFEITURE ALLEGATION TWO

2

[21 U.S.C. § 853, 18 U.S.C. § 924(d)(1), 21 U.S.C. § 881(a)(6) and

3

(a)(11), and 28 U.S.C. § 2461(c)]

4      1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

5  Procedure, notice is hereby given to the defendants charged in Count

6  Two of the Indictment that the United States of America will seek

7  forfeiture as part of any sentence, pursuant to Title 21, United

8  States Code, Section 853, Title 21, United States Code, Section

9  881(a)(6) and (a)(11), Title 18, United States Code, Section

10 924(d)(1), and Title 28, United States Code, Section 2461(c), in the

11 event of any such defendant's conviction under Count Two of the

12 Indictment.

13     2.    Any defendant so convicted shall forfeit to the United

14 States of America the following:

15         (a)   All right, title, and interest in any and all

16 property, real or personal, constituting or derived from, any

17 proceeds which the defendant obtained, directly or indirectly, from

18 any offense set forth in Count Two of the Indictment;

19         (b)   All right, title, and interest in any and all

20 property, real or personal, used, or intended to be used, in any

21 manner or part, to commit, or to facilitate the commission of any

22 offense set forth in Count Two of the Indictment;

23         (c)   All right, title, and interest in any firearm or

24 ammunition involved in or used in any such offense; and

25         (d)   To the extent such property is not available for

26 forfeiture, a sum of money equal to the total value of the property

27 described in subparagraphs (a), (b), and (c).

28

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1

FORFEITURE ALLEGATION THREE

2

[18 U.S.C. § 982(a)(2)(A), 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C.

3

§ 2461(c)]

4      1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

5   Procedure, notice is hereby given to the defendants charged in any of

6   Counts Three through Twelve of the Indictment that the United States

7   of America will seek forfeiture as part of any sentence, pursuant to

8   Title 18, United States Code, Section 982(a)(2)(A), Title 18, United

9   States Code, Section 981(a)(1)(C), and Title 28, United States Code,

10  Section 2461(c), in the event of any such defendant's conviction under

11  any of Counts Three through Twelve of the Indictment.

12     2.    Any defendant so convicted shall forfeit to the United

13  States of America the following:

14          (a)    All right, title, and interest in any and all

15  property, real or personal, constituting, or derived from, any

16  proceeds traceable to any offense set forth in any of Counts Three

17  through Twelve of the Indictment; and

18          (b)    To the extent such property is not available for

19  forfeiture, a sum of money equal to the total value of the property

20  described in subparagraph (a).

21     3.    Pursuant to Title 21, United States Code, Section 853(p),

22  as incorporated by Title 28, United States Code, Section 2461(c) and

23  Title 18, United States Code, Section 982(b), any defendant so

24  convicted shall forfeit substitute property, up to the total value of

25  the property described in the preceding paragraph if, as the result

26  of any act or omission of said defendant, the property described in

27  the preceding paragraph or any portion thereof (a) cannot be located

28  upon the exercise of due diligence; (b) has been transferred, sold to

or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1

FORFEITURE ALLEGATION FOUR

2   [21 U.S.C. § 853, 18 U.S.C. § 924(d)(1), 21 U.S.C. § 881(a)(6) and

3                  (a)(11), and 28 U.S.C. § 2461(c)]

4       1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

5   Procedure, notice is hereby given to the defendants charged in any of

6   Counts Thirteen through Sixty-Two of the Indictment that the United

7   States of America will seek forfeiture as part of any sentence,

8   pursuant to Title 21, United States Code, Section 853, Title 18,

9   United States Code, Section 924(d)(1), Title 21, United States Code,

10  Section 881(a)(6) and (a)(11), and Title 28, United States Code,

11  Section 2461(c), in the event of any such defendant's conviction

12  under any of Counts Thirteen through Sixty-Two of the Indictment.

13      2.   Any defendant so convicted shall forfeit to the United

14  States of America the following:

15          (a)   All right, title, and interest in any and all

16  property, real or personal, constituting or derived from, any

17  proceeds which the defendant obtained, directly or indirectly, from

18  any offense set forth in any of Counts Thirteen through Sixty-Two of

19  the Indictment for which defendant is convicted;

20          (b)   All right, title, and interest in any and all

21  property, real or personal, used, or intended to be used, in any

22  manner or part, to commit, or to facilitate the commission of any

23  offense set forth in any of Counts Thirteen through Sixty-Two of the

24  Indictment for which defendant is convicted;

25          (c)   All right, title, and interest in any firearm or

26  ammunition involved in or used in any such offense; and

27

28

244

(d)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FIVE

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant CUNNINGHAM that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of such defendant's conviction under any of Counts Sixty-Three or Sixty-Nine of the Indictment.

2.    Defendant CUNNINGHAM shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any firearm or ammunition involved in or used in the offense set forth in any of Counts Sixty-Three or Sixty-Nine of the Indictment; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant CUNNINGHAM shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FORFEITURE ALLEGATION SIX

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant RILEY that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of such defendant's conviction under any of Counts Sixty-Four, Sixty-Eight, or Seventy of the Indictment.

2.    Defendant RILEY shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any firearm or ammunition involved in or used in the offense set forth in any of Counts Sixty-Four, Sixty-Eight, or Seventy of the Indictment; and

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant RILEY shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>FORFEITURE ALLEGATION SEVEN</u>

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant VENNUM that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of such defendant's conviction under Count Sixty-Five of the Indictment.

2.    Defendant VENNUM shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any firearm or ammunition involved in or used in the offense set forth in Count Sixty-Five of the Indictment; and

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant VENNUM shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION EIGHT

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant P. EKELUND that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of such defendant's conviction under any of Counts Sixty-Six or Seventy-One of the Indictment.

2.    Defendant P. EKELUND shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any firearm or ammunition involved in or used in the offense set forth in any of Counts Sixty-Six or Seventy-One of the Indictment; and

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant P. EKELUND shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

249

1

FORFEITURE ALLEGATION NINE

2

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

3    1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4 Procedure, notice is hereby given to defendant VITANZA that the

5 United States of America will seek forfeiture as part of any

6 sentence, pursuant to Title 18, United States Code, Section

7 924(d)(1), and Title 28, United States Code, Section 2461(c), in the

8 event of such defendant's conviction under any of Counts Sixty-Seven

9 or Seventy-Two of the Indictment.

10    2.    Defendant VITANZA shall forfeit to the United States of

11 America the following:

12        (a)    All right, title, and interest in any firearm or

13 ammunition involved in or used in the offense set forth in any of

14 Counts Sixty-Seven or Seventy-Two of the Indictment; and

15        (b)    To the extent such property is not available for

16 forfeiture, a sum of money equal to the total value of the property

17 described in subparagraph (a).

18    3.    Pursuant to Title 21, United States Code, Section 853(p),

19 as incorporated by Title 28, United States Code, Section 2461(c),

20 defendant VITANZA shall forfeit substitute property, up to the value

21 of the property described in the preceding paragraph if, as the

22 result of any act or omission of said defendant, the property

23 described in the preceding paragraph or any portion thereof (a)

24 cannot be located upon the exercise of due diligence; (b) has been

25 transferred, sold to, or deposited with a third party; (c) has been

26 placed beyond the jurisdiction of the court; (d) has been

27 substantially diminished in value; or (e) has been commingled with

28 other property that cannot be divided without difficulty.

<u>FORFEITURE ALLEGATION TEN</u>

[18 U.S.C. § 982(a)(2)(A), 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 1029, and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant BREWER that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2)(A), Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 1029(c)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of such defendant's conviction under any of Counts Seventy-Three or Seventy-Four of the Indictment.

2.    Defendant BREWER shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any offense set forth in any of Counts Seventy-Three or Seventy-Four of the Indictment;

(b)    All personal property used or intended to be used to commit the offense set forth in any of Counts Seventy-Three or Seventy-Four of the Indictment; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b), and Title 18, United States Code, Section 1029(c)(2), defendant BREWER shall forfeit substitute property, up to the value of the property described in the

preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION ELEVEN

[18 U.S.C. § 982(a)(2)(A), 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 1029, and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant SIMS that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2)(A), Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 1029(c)(1()C), and Title 28, United States Code, Section 2461(c), in the event of such defendant's conviction under any of Counts Seventy-Five or Seventy-Six of the Indictment.

2.   Defendant SIMS shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any offense set forth in any of Counts Seventy-Five or Seventy-Six of the Indictment;

(b)   All personal property used or intended to be used to commit the offense set forth in any of Counts Seventy-Five or Seventy-Six of the Indictment; and

(c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), and (b).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b), and Title 18, United States Code, Section 1029(c)(2), defendant BREWER shall forfeit substitute property, up to the value of the property described in the

253

preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/
Foreperson

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

DAVID T. RYAN
Assistant United States Attorney
Chief, Terrorism and Export
Crimes Section

REEMA M. EL-AMAMY
Assistant United States Attorney
Terrorism and Export Crimes
Section

JEREMIAH LEVINE
Assistant United States Attorney
Violent and Organized Crime
Section