MICHAEL M. CRAIN
California State Bar No. 045083
P.O. Box 3730
Santa Monica, California 90408
Tel:   (310) 571-3324
Cell:   (213) 379-2790
Fax:   (310) 494-0750
Email: michaelmcrain@aol.com

Attorney for Defendant Michael Vitanza

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PATRICIA HAVILAND, et al.,<br><br>MICHAEL VITANZA,<br><br>Defendant (#12) | Case No. CR 24-570-WLH-12<br><br>**DEFENDANT MICHAEL VITANZA'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO QUASH SEARCH WARRANT**<br><br>Date: September 26, 2025<br>Time: 2:30 p.m.<br>Courtroom: 9B |

TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

List of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Defendant Michael Vitanza's Supplemental Brief in Support of Motion to Quash
Search Warrant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Points and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    The Search Warrant is Not Supported by the Required Underlying Facts
          and Therefore Lacks Probable Cause . . . . . . . . . . . . . . . . . . . . . . . . . 4

    III.   The Search Warrant Cannot Be Saved by the Good Faith
          Exception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    IV.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

TABLE OF AUTHORITIES

Federal Cases

*Aguilar v. Texas,* 378 U.S. 108 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,7

*Nathanson v. United States,* 290 U.S. 41 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Jefferson Electric Mfg. Co.,* 291 U.S. 386 (1934). . . . . . . . . . . . . . . 4

*United States v. Underwood,* 725 F.3d 1076 (2013) . . . . . . . . . . . . . . . . . 3,4,5,7,8,9

*Woods Const. Co. v. Pool Const. Co,* 314 F.2d 405 (10th Cir. 1963) . . . . . . . . . . . . . 4

## LIST OF EXHIBITS

Exhibit D:   08/22/2025 Reporter's Transcript of hearing on defendant Michael Vitanza's Motion to Quash Search Warrant; Charissa Chotard's Joinder in Motion to Quash Search Warrant, USA v. Vitanza, et al., Case Number 2:24-CR-00570-WLH-AB

MICHAEL M. CRAIN
California State Bar No. 045083
P.O. Box 3730
Santa Monica, California 90408
Tel:    (310) 571-3324
Cell:   (213) 379-2790
Fax:    (310) 494-0750
Email: michaelmcrain@aol.com

Attorney for Defendant Michael Vitanza

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PATRICIA HAVILAND, et al., ) <br> ) <br> ) <br> MICHAEL VITANZA, ) <br> ) <br> Defendant (#12) ) <br> ) <br> _____ ) | Case No. CR 24-570-WLH-12 <br><br> **DEFENDANT MICHAEL VITANZA'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO QUASH SEARCH WARRANT** <br><br> Date: September 26, 2025 <br> Time: 2:30 p.m. <br> Courtroom: 9B |

Defendant Michael Vitanza, by his counsel Michael M. Crain, hereby submits his Supplemental Brief in Support of Motion to Quash Search Warrant.

This reply is based upon the following Points and Authorities.


Dated: September 12, 2025                    */s/ Michael M. Crain*
                                             MICHAEL M. CRAIN
                                             Attorney for Defendant
                                             Michael Vitanza

1

**POINTS AND AUTHORITIES**

**I.**

**Introduction**

On July 21, 2025, Mr. Vitanza, through his counsel, filed his Notice of Motion and Motion to Quash Search Warrant and Suppress Seized Evidence. (Dkt. 1349). Attached to the Motion were three exhibits. (Dkt. 1349-1). Exhibit A consisted of the 13 page search warrant itself. The search warrant contained the following sections: a four page introduction, a two page statement of the location, persons and vehicle to be searched, a two page list of items, and a five page "Statement of Probable Cause," or affidavit, which itself is comprised of a three page statement by the affiant, Detective Capa, and a two page sealed Hobbs portion of the affidavit relating to information that Capa allegedly received from a Detective Reed.

On July 28, 2025, the government filed its opposition. (Dkt. 1378). On August 4, 2025, the defense filed its opposition. (Dkt. 1395). Thereafter, on August 22, 2025, the Court held a hearing on the motion. (Dkt. 1463). The reporter's transcript of the hearing ("RT") is attached to this pleading as Exhibit D.[1]

At the outset of the hearing, the Court listed the documents which it had read and considered. This list included the defense's Motion to Quash, the government's Opposition, and the defense's Reply. One of the documents thus considered was the search warrant itself, which was attached as Exhibit A to the defense's Motion to Quash and also lodged separately by the government. RT 4-5.

///

///

---

[1] Because the original Motion to Quash attached Exhibits A-C, to avoid confusion the exhibit attached to this pleading is designated Exhibit D. References in this pleading to Exhibit A are to Exhibit A of the Motion to Quash.

2

Next, the Court announced its tentative ruling, which was that the Court was inclined to grant the motion, because the warrant was not supported by a showing of probable cause and it could not be saved by the good faith exception. The Court appeared to find the present case indistinguishable, but "now it's worse," from *United States v. Underwood,* 725 F.3d 1076 (2013), a case from this district, where the Ninth Circuit upheld an order quashing a search warrant because it lacked a showing of probable cause and could not be saved by the good faith exception, because "the officers executing the warrant could have relied on good faith with the meaning of that statute." RT 6-8.

At that point, after hearing a brief argument from the government, the Court stated that it had changed its mind. The Court stated that the Hobbs Act portion of the affidavit supported the warrant, because it "puts forth - I mean, it's not a lot. But it's - sufficient." RT 9-10. The Court now stated that *Underwood* was distinguishable, and that the warrant in the present case did present "facts, not conclusions" and therefore showed probable cause. RT 17-19.

An examination of *Underwood* shows that the reason that both the District Court and the Ninth Circuit found the warrant in *Underwood* lacked probable cause was because the affiant's representations were not supported by a showing of supporting underlying facts. For example, in *Underwood,* the affidavit's reference to "intercepted conversations over TT #1-4, #6-7" and to the affiant's "surveillance operations" were held to be unsupported conclusions, because the "affidavit does not provide factual details about the 'intercepted conversations' or (the affiant's) 'surveillance operations' or explain what 'TT #1-4, #6-7' means." Id. at 1080, 1084. This demonstrates that, at the very least, *Underwood* is indistinguishable from the present case and should be considered controlling.

Respectfully, it is submitted that, after initially correctly analyzing the present search warrant, the Court then mixed conclusions and facts, and what were clearly mere conclusions stated in the affidavit, including the Hobbs portion, became

3

"facts." For example, during argument the Court stated that such assertions in the present affidavit - similar to the conclusions in *Underwood*  - as "there were communications" were statements of fact, and not conclusions. RT 14-15. This is incorrect, for the reasons which follow.

## II.

## The Search Warrant is Not Supported by
## the Required Underlying Facts and Therefore Lacks Probable Cause

In both civil and criminal cases, courts draw a distinction between conclusions and underlying facts which support a conclusion. Nearly one hundred years ago, the Supreme Court distinguished between a mere "conclusion" and "a finding of the underlying facts." *United States v. Jefferson Electric Mfg. Co.,* 291 U.S. 386, 408-409 (1934). In another civil case, *Woods Const. Co. v. Pool Const. Co,* 314 F.2d 405, 406 (10th Cir. 1963), judgment was reversed because "(a) conclusion of fact without any subsidiary or basic findings of fact upon which such conclusion is based is insufficient compliance with (Fed.R.Civ.P.) Rule 52."

The same distinction between a conclusion and supporting underlying facts holds forth in the criminal law context as well.

In the leading case of *Aguilar v. Texas,* 378 U.S. 108, 109, 114 (1964), the Supreme Court held that a search warrant lacked a showing of probable cause and was therefor invalid because it failed to provide the issuing magistrate the "underlying circumstances" from which an informant obtained his information about the location of narcotics and the underlying reasons as to why the affiant believed the informant to be credible or reliable. The warrant had merely stated a conclusion - that the affiant had received what he believed to be credible information that drugs were

4

located at a certain residence. It did not provide underlying facts to support the conclusion.[2]

This Court's initial conclusion that the search warrant in this case is defective for the reasons stated in *United States v. Underwood,* 725 F.3d 1076 (9th Cir. 2103) was correct. *Underwood* is based on the fundamental principles set forth in *Aguilar, supra. Underwood* , at 725 F.3d 1081, reiterates that *"(c)onclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause"* (emphasis added).

Although the deficiencies in the bare-bones search warrant in the present case were addressed in the Motion to Quash, which is hereby incorporated by reference, it seems prudent to restate them here:

The affidavit's "Statement of Probable Cause," pp. 9-12, states that the affiant, Detective Capa, has been a police officer for over 26 years and has been involved in hundreds of narcotics investigations. Detective Capa then alleges that on March 13, 2024, he received information from Detective Reed that "narcotics were being transported" to 7522 Madora Avenue by a woman named Julie Romero who was driving a gold-colored truck and that Detective Reed "believed" the narcotics to be fentanyl. These are but conclusions which lack supporting underlying facts. At some unidentified time Detective Capa drove by the location and saw a gold-colored truck in the driveway. Exhibit A, p. 9.

In the "Hobbs Attachment Sealed Portion," Exhibit A, pp. 11-12, it states that Detective Reed has been involved in hundreds of narcotics investigations and is participating in a "Federal wiretap investigation."

///

///

---

[2] *Aguilar* hardly created new constitutional law. See, *Nathanson v. United States,* 290 U.S. 41, 47 (1933), holding a search warrant invalid where the affiant believed that unlawful liquor was located within certain premises, but failed to state "supporting facts or circumstances."

The remainder of the affidavit is merely a series of wholly conclusory allegations, as follows:

1. In January 2024 a parcel mailed by Patricia Haviland "was intercepted" in Alabama.

2. The parcel "was discovered" to contain about two ounces of methamphetamine.

3. On March 12, 2024 "there were communications" between Haviland and Catherine Elbaz in which Haviland offered to pay Elbaz to pick "something up for L" in Santa Ana and that Elbaz confirmed in a "later call" that she had done so and was at Haviland's residence.

4. On March 13, 2024 "there were communications" between Haviland and Bob Christy in which he told her that the "alphabet guys" got "our friend in Georgia" and that shortly thereafter there were communications between Haviland and Kenneth Holmes in which she referred to her conversation with Christy and asked Holmes if he thought "they could come after her?" Haviland "described" having text communications with the person in Georgia and Holmes told Haviland to "dump her phone and make sure her house was clean."

5. A "short time later" "there were communications between Julie Romero and Michael Vitanza."

6. "Romero seemed panicked and told Vitanza she needed to put something in his house." She said it was risky and Vitanza said he would do anything for "you and Trish." She said that the item was only supposed to be at Haviland's residence for 24 hours.

7. Vitanza's residence "had been previously identified" as 7522 Madora Avenue.

The affidavit then states, `"Based on Detective Reed's experience and knowledge of this investigation," she "believed" that Haviland was concerned about

6

the arrest of an unknown person in Georgia and that she directed Romero to move narcotics from her residence to Vitanza's. During this time Romero "had communications" with Vitanza who gave her instructions to place the items in a safe and gave her the code to the safe. Exhibit A to Motion to Quash, pp. 11-12.

A close examination of the affidavit shows the following. Capa, the affiant, merely repeated what he heard from Reed. All Capa did was drive by the residence on Madora and see a gold truck. The rest of what was supplied to the issuing judge came from Reed through Capa. Everything Reed told Capa is set forth in the Hobbs portion of the affidavit. Everything attributed to Reed is a conclusion lacking in the required statement of underlying facts and therefore deficient to establish probable cause. Each of those matters will now be examined.

a.     Reed was participating in a "Federal wiretap investigation." While this may be a fact, nowhere is it stated that the "Federal wiretap investigation" had any connection at all to the remainder of what is alleged in the Hobbs portion of the affidavit. To conclude otherwise would require the issuing judge to guess or speculate.

b.     As to the supposed interception of the parcel in Alabama, this too is a conclusion lacking in supporting facts. For example, who "intercepted" the parcel and under what circumstances? Who "discovered" that it contained drugs, and under what circumstances was it found to contain methamphetamine? Such matters are the necessary "underlying circumstances" or "underlying facts," *Aguilar v. Texas, supra* at 109, 114; *United States v. Underwood, supra* at 1081, which are wholly lacking.

c.     The affidavit goes on to state four times that "there were communications" between Patricia Haviland and Catherine Elbaz, Haviland and Bob Christy, Haviland and Kenneth Holmes, and Julie Romero and Mr. Vitanza and briefly sets forth what was allegedly said.

7

The problem for the government is that nowhere does the affidavit state how these supposed "communications" were obtained. An issuing judge would not know whether they came from a wiretap, surveillance, eavesdropping, social media or from some unidentified unreliable source. Again, the issuing judge would have to guess or speculate. In short, there are none of the "underlying facts" or "underlying circumstances" which are required for there to be a valid search warrant. An issuing judge following the law would want to ask the affiant, "Where did you get this information? "How did you get this information?" "What is the type of the communications?" Those questions were never asked and the affidavit is silent as to any answers. All that is left is the repeated conclusion, "there were communications."

d.  As was stated in the Motion to Quash, "(n)owhere does it state what Vitanza was being asked to do or that it was illegal or that some illegal substance was involved or would be found in his residence." The affidavit contains Reed's speculation as to the meaning of the "communications," but they are not based on the required "underlying circumstances" or "underlying facts."

e.  There is an insufficient showing that the residence on Madora was in fact Mr. Vitanza's, because the affidavit merely states the conclusion that it "had been previously identified" as his, without a showing of how that supposed identification was made.

A conclusion is never a fact unless it is supported by the "underlying circumstances" or "underlying facts." The affidavit in the present case contains conclusions, not facts. These conclusions are no different than the conclusions - "intercepted conversations," "surveillance operations" - discussed in *Underwood* at 1080-1084, which were found to be lacking in supporting underlying circumstances or facts.

8

The affidavit, for the search of a private residence, is shockingly lacking in a showing of probable cause that would justify that search.

### III.

### The Search Warrant Cannot Be Saved by the Good Faith Exception

At the previous hearing, the Court, in its tentative ruling, agreed that the good faith exception could not save the warrant, and relied on *United States v. Underwood, supra.* It is submitted that the Court's analysis and conclusion were correct. Part VI of the Motion to Quash is hereby incorporated by reference.

### IV.

### Conclusion

For the foregoing reasons, it is respectfully submitted that the search warrant be quashed and that all evidence seized or obtained as a result of the search of the residence be suppressed.

Dated: September 12, 2025          */s/ Michael M. Crain*
                                   MICHAEL M. CRAIN
                                   Attorney for Defendant
                                   Michael Vitanza

9